# FERRARI v. LEONARD et al.

EDPA | 42 U.S.C. § 1983 | TRACK 2 | Filed: March 24, 2026

## EXHIBIT BINDER 2 — TIER B: AUTHENTICATED BUSINESS RECORDS & PLATFORM DATA

## EXHIBIT BINDER 3 — TIER C: AUDIO RECORDINGS — CHAIN-OF-CUSTODY CERTIFICATION PENDING

**Tier B: Each exhibit requires supporting sworn affidavit for trial admission.**
**Tier C: Content independently corroborated by Tier A transcripts. Forensic chain-of-custody certification pending.**

## COMBINED MASTER INDEX — BINDERS 2 & 3

| TIER B — AUTHENTICATED BUSINESS RECORDS, PLATFORM DATA & SCREENSHOTS | | | |
|---|---|---|---|
| **EXHIBIT** | **TITLE / DOCUMENT** | **DATE** | **COMPLAINT CLAIM ANCHORS** |
| L-4 | Segulin Instagram Story Viewer Screenshot | Jul. 14, 2025 | Claims 1, 4: Court employee surveilling protected speech during hearing |
| W | Vidas Letter to Pagnanelli — Service on Withdrawn Counsel | Jun. 16, 2025 | Claim 3: Defective service; June 18 hearing void; all 3 arrests tainted |
| X | Krasner FAFO Instagram Posts — Day of Arrest | Jan. 10, 2026 | Claims 1, 4: DA announces 'FAFO' same day as arrest; retaliatory posture |
| Y-1 | Williamson Video — Threatening Police Visit | Jan. 9, 2026 | Claim 4: Joint-actor theory; advance coordination day before arrest |
| Y-2 | Williamson Video — 'Joint Police/Sheriff Effort' | Jan. 10, 2026 | Claim 4: Lugar joint-actor; Williamson announces coordinated entry |
| Y-5 | Williamson Email — 'We Will Be Coming In' (CC: Weisgold) | Jan. 8, 2026 | Claim 4: Pre-arrest coordination; same day as bench warrant hearing |
| Y-6 | Williamson Email+Video — Warrant Not Created Until Next Day | Jan. 29, 2026 | Claim 4: Williamson pre-warrant knowledge; advance enforcement coordination |
| KRASNER-1 | Philadelphia Inquirer — Krasner FAFO Inauguration Speech | Jan. 5, 2026 | Claims 1, 4: FAFO posture announced 5 days before arrest |
| KRASNER-2 | Billy Penn — 'Trump Cannot Pardon State Conviction' | Jan. 8-9, 2026 | Claim 1: DA targeting state prosecution to foreclose federal pardon; 2 days pre-arrest |
| KRASNER-3 | FAFO Coalition Launch — Gateway Pundit/phillyda.org | Jan. 28-29, 2026 | Claims 1, 4: FAFO Coalition simultaneous with Sulman self-assignment Jan. 29 |
| Z-3 | Leonard Pre-Arrest Phone Calls — Aug. 7 & 12, 2025 | Aug. 7&12, 2025 | Claims 2, 4: 'Brett signed off'; pre-warrant phone access July 11-12 confirmed |
| Z-5 | Whistleblower Declaration — June 20, 2025 Court Filing | Jun. 20, 2025 | Claim 1: First protected assertion; day after Capone obstruction |
| **TIER C — AUDIO RECORDINGS — CHAIN-OF-CUSTODY CERTIFICATION PENDING** | | | |
| **EXHIBIT** | **TITLE / DOCUMENT** | **DATE** | **COMPLAINT CLAIM ANCHORS** |
| H | Leonard Audio — Pre-Warrant Phone Search Admission | Aug. 19, 2025 | Claim 2: Riley v. California per se 4th Amend. violation; det. admits pre-warrant access |

| | | | |
|---|---|---|---|
| **J** | Yee Audio — 'Brett Wants to Protect the System' | Aug. 2025 | Claims 1, 4: But-for retaliatory causation admission by retained defense counsel |
| **Goldstein** | Goldstein Tape — ARD Conditioned on Compliance | Sep. 22, 2025 | Claims 1, 4: ARD weaponized; Goldstein withdrew after receiving recording Oct. 22 |

# BINDER 2 — TIER B: AUTHENTICATED BUSINESS RECORDS, PLATFORM DATA & SCREENSHOTS

Each Tier B exhibit requires a supporting sworn affidavit for trial admission. Insert originals behind each entry.

## EXHIBIT L-4

### Cassi Segulin Instagram Story Viewer Screenshot

July 14, 2025 at 1:01 PM | TIER B — PLATFORM DATA — Sworn Affidavit Required

Timestamped screenshot captures 'Cassi Segulin' by name in Plaintiff's Instagram story viewer list at 1:01 PM on July 14, 2025 — during the active hearing before Judge Sulman in Case D24118413. This constitutes a government court employee monitoring Plaintiff's constitutionally protected social media expression in real time during a judicial proceeding in which that expression had no relevance to the matter before the court.

Contextual significance: (1) The same pattern occurred before the June 18, 2025 hearing — Segulin monitored Plaintiff's Instagram stories in the hours leading into the hearing at which the phone seizure occurred; (2) Plaintiff placed this surveillance on the record at the July 17 hearing (Exhibit L-1, Tier A) and the September 22 hearing (Exhibit L-2, Tier A), establishing a three-transcript corroboration chain; (3) Segulin's LinkedIn profile was erased within 24 hours of being named in the July 17 transcript — documented consciousness of guilt (Tier D intelligence, not filed); (4) A second account attributed to 'Bailey Boo Piscopo' (Piscopo's son, accessing from Tokyo) was also monitoring Plaintiff's account.

The surveillance-to-prosecution pipeline runs: Instagram monitoring → real-time intelligence to Sulman/Piscopo during hearing → phone seizure June 18 → criminal charge August 19 → three arrests total. This circuit of conduct constitutes a First Amendment violation under Hartman v. Moore, 547 U.S. 250 (2006) (retaliatory prosecution), and a Fourth Amendment violation under Carpenter v. United States, 585 U.S. 296 (2018) (warrantless government monitoring of digital communications).

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 1 (First Amendment — government surveillance of protected Instagram content) & 4 (Conspiracy — court employee/Piscopo coordination; LinkedIn erasure as consciousness of guilt)

**AUTHENTICATION:** Platform data screenshot — iPhone/Instagram export. Affidavit from Plaintiff authenticating screenshot as accurate representation of app display required for trial admission.

**ATTACH FROM:** *Plaintiff's iPhone screenshots / @chad.ferrari Instagram data export / Google Drive Exhibit Bank*

---

## EXHIBIT W

### Vidas Letter to Pagnanelli — Service on Withdrawn Counsel

June 16, 2025 | TIER B — BUSINESS RECORD — Sworn Affidavit Required

On June 16, 2025, Mary T. Vidas of Blank Rome LLP sent a letter to Enrico Pagnanelli, Esq. serving the Emergency Petition for Special Relief that was the basis for the June 18, 2025 hearing — the hearing at which Plaintiff's phone was seized and criminal prosecution was initiated. Pagnanelli had formally withdrawn as Plaintiff's counsel on June 6, 2025 — 10 days before this letter. Blank Rome had written notice of the withdrawal.

Constitutional significance: Service on withdrawn counsel is constitutionally defective notice. A party who appears at a hearing without having been properly served on the underlying petition has not received the due process 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' Mullane v. Central Hanover Bank & Trust, 339 U.S. 306 (1950). The June 18 hearing, the phone seizure, and everything that flowed from it — including all three criminal arrests — are tainted by this foundational service defect.

Additional significance: Blank Rome's email to Pagnanelli also pre-teased property theft to Plaintiff's mother Patricia (Tier D intelligence). The pattern of routing communications through Pagnanelli even after his withdrawal suggests a coordinated strategy to keep Plaintiff uninformed of proceedings against him.

**COMPLAINT CLAIM ANCHORS:** §1983 Claim 3 (Due Process — defective service voids June 18 hearing; taints all three arrests). Also supports Claim 4 (Conspiracy — deliberate service through withdrawn counsel).

**AUTHENTICATION:** Business record — Blank Rome correspondence. Affidavit from Plaintiff or Pagnanelli authenticating receipt and Pagnanelli's withdrawal status required.

**ATTACH FROM:** *Project file: 06162025__letter_to_enrico_not_my_counsel_.pdf / Google Drive Exhibit Bank*

---

## EXHIBIT X
### Krasner Instagram Posts — 'FAFO' + 'I Said What I Said'

January 10, 2026 (Day of Plaintiff's Second Arrest) | TIER B — PLATFORM DATA — Sworn Affidavit Required

On January 10, 2026 — the same day as Plaintiff's second arrest (Case -0640, arrested by Killman/Davis) — DA Larry Krasner posted two items to his verified @larrykrasner Instagram account: (1) a photo of himself wearing FAFO sunglasses; and (2) a post stating 'I said what I said.'

Context establishing retaliatory enforcement posture: January 5, 2026 — Krasner inaugural FAFO speech (Exhibit KRASNER-1); January 8-9, 2026 — Krasner issues 'Trump cannot pardon state conviction' statement (Exhibit KRASNER-2); January 10, 2026 — day of arrest, Krasner posts FAFO again; January 28-29, 2026 — FAFO Coalition launch (Exhibit KRASNER-3), contemporaneous with Sulman's self-assignment. Additionally: Plaintiff publicly booed Krasner at the January 5 inauguration — five days before the arrest. This establishes the direct timeline connection between Plaintiff's protected political speech and the DA's enforcement posture.

Under Lozman v. City of Riviera Beach, 585 U.S. 87 (2018), retaliatory arrest claims require evidence of an unconstitutional policy or custom behind the arrest. The FAFO posts — combined with the institutional FAFO Coalition launch and the Krasner statement about state prosecution as a federal firewall — constitute exactly such evidence of policy-level retaliatory enforcement targeting individuals who challenge the DA's authority.

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 1 (First Amendment — retaliatory prosecution; DA's own posts on arrest day), 4 (Conspiracy — DA/Sulman/Williamson coordination evident from simultaneous FAFO Coalition/Sulman self-assignment Jan. 29), 6 (Monell — DA enforcement policy/custom)

**AUTHENTICATION:** Social media platform data from verified @larrykrasner account — public post. Screenshots require affidavit confirming accuracy and account verification status.

**ATTACH FROM:** *Screenshots from @larrykrasner verified Instagram — January 10, 2026 / Google Drive Exhibit Bank*

---

## EXHIBIT Y-1
### Williamson Video — Threatening Police Visit (One Day Before Coordinated Arrest)

January 9, 2026 | TIER B — VIDEO RECORDING — Sworn Affidavit Required

On January 9, 2026 — one day before Plaintiff's January 10 arrest — landlord Richard Williamson appeared at 1119 Wallace Street and was recorded threatening to bring police to the property. This video establishes Williamson's advance knowledge of the coming law enforcement action and his active role in coordinating it.

Lugar joint-actor analysis: Under Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), a private actor who acts in concert with state officials to deprive a person of constitutional rights may be treated as a state actor for §1983 purposes. The Y-1 and Y-2 video sequence — threat on January 9, coordinated entry January 10 at 12:15 PM, Williamson appearing 5 minutes later at 12:20 PM — combined with Williamson's documented text communication with Julie Ferrari and her counsel (Tier B/D materials) establishes the joint-actor chain required for Track 4 liability (Ferrari v. Williamson).

**COMPLAINT CLAIM ANCHORS:** §1983 Claim 4 (Conspiracy / Lugar joint-actor theory — Williamson pre-coordination with law enforcement). Anchor for Track 4 private actor liability.

**AUTHENTICATION:** Video recording by Plaintiff — requires sworn affidavit identifying recording, date, and circumstances. Chain of custody documentation for device and file.

**ATTACH FROM:** *Plaintiff's video recordings / Google Drive Exhibit Bank*

---

## EXHIBIT Y-2
### Williamson Video — 'Joint Police/Sheriff Effort' (12:20 PM, 5 Minutes After Police Entry)

January 10, 2026 at 12:20 PM | TIER B — VIDEO RECORDING — Sworn Affidavit Required

At 12:20 PM on January 10, 2026 — five minutes after Philadelphia Police kicked in the door of Plaintiff's residence at 1119 Wallace Street at approximately 12:15 PM — Williamson appeared on camera at the property and announced that the entry was a 'joint' police and Sheriff effort. Williamson also took stolen keys at this time.

This video is the most direct evidence of the Lugar joint-actor theory. A private landlord appearing at a police-forced entry within 5 minutes and announcing a 'joint effort' demonstrates: (1) Williamson had advance notice of the police action sufficient to arrive contemporaneously; (2) Williamson coordinated with law enforcement in planning the entry; (3) Williamson participated in the entry itself (taking keys) as part of a coordinated operation. Combined with Exhibit Y-5 (January 8 'we will be coming in' email) and Exhibit Y-6 (January 29 pre-warrant

knowledge), the timeline establishes that Williamson's coordination with the enforcement apparatus was ongoing and deliberate.

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 4 (Conspiracy — Lugar joint-actor; Williamson announced 'joint effort' within 5 minutes of forced entry) & Supports Track 4 (Ferrari v. Williamson) unlawful entry/Fourth Amendment claim

**AUTHENTICATION:** Video recording by Plaintiff at 1119 Wallace Street — requires sworn affidavit identifying recording, timestamp verification, circumstances.

**ATTACH FROM:** *Plaintiff's video recordings — January 10, 2026 12:20 PM / Google Drive Exhibit Bank*

---

## EXHIBIT Y-5

### Williamson Email — 'We Will Be Coming In' (CC: Weisgold)

January 8, 2026 at 1:15 PM | TIER B — EMAIL RECORD — Sworn Affidavit Required

Email from richard_williamson03@yahoo.com to Plaintiff, copied to Dean E. Weisgold, Esq. (Williamson's attorney), sent January 8, 2026 at 1:15 PM: 'Chad. I am not routing inspection requests through counsel. We will be coming in as I noted.'

This email was sent on the same day as: (1) the Pittman bench warrant hearing in Case -0015343; and (2) the Krasner-Bilal FAFO press conference (Exhibit KRASNER-2). The simultaneous occurrence of a landlord threatening forced entry, a DA announcing retaliatory enforcement policy, and a bench warrant hearing — all on January 8, 2026 — demonstrates coordinated pressure from multiple state-adjacent actors converging on Plaintiff simultaneously. The CC to Weisgold is particularly significant as it places opposing counsel on actual notice of Williamson's threat to enter without authorization, implicating potential attorney responsibility for the subsequent forced entry.

**COMPLAINT CLAIM ANCHORS:** §1983 Claim 4 (Conspiracy — Williamson/Weisgold coordination with enforcement apparatus; simultaneous pressure campaign). Track 4 anchor.

**AUTHENTICATION:** Email record — business record from Plaintiff's email account. Printed/exported copy with full headers required. Affidavit of Plaintiff authenticating receipt.

**ATTACH FROM:** *Plaintiff's email records — richard_williamson03@yahoo.com, January 8, 2026 / Google Drive Exhibit Bank*

---

## EXHIBIT Y-6

### Williamson Email + Video — Pre-Warrant Knowledge ('24-28 Hours')

January 29, 2026 | TIER B — EMAIL + VIDEO — Sworn Affidavit Required

On January 29, 2026, Williamson sent an email (CC: Weisgold) stating: 'We will exercise our right to enter within 24-28 hours.' Contemporaneous video captures Williamson blocking Plaintiff and taunting about police coming. The criminal complaint for Case -0001972-2026 was not created until January 30, 2026 (docket: complaint date 02/02/2026, arrest date 02/02/2026) — meaning Williamson knew about the impending law enforcement action before the warrant creating the basis for that action had been filed.

This pre-warrant knowledge creates the strongest temporal proof of advance coordination between Williamson and law enforcement/prosecution available in the record. Under Monell v. Dep't of Social Services, 436 U.S. 658 (1978), a private party with advance knowledge of a warrant before it is issued demonstrates extraordinary access to prosecution decision-making — consistent only with coordination at the policy level. This exhibit also directly supports the Track 4 complaint (Ferrari v. Williamson) under §1983 Lugar joint-actor theory and state law unlawful entry claims.

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 4 (Conspiracy — Williamson pre-warrant knowledge proves coordination with prosecution apparatus) & 6 (Monell — access to charging decisions indicates policy-level involvement)

**AUTHENTICATION:** Email record + video recording. Full email headers and affidavit required. Video chain of custody documentation required.

**ATTACH FROM:** *Plaintiff's records — Williamson email Jan. 29, 2026 + contemporaneous video / Google Drive Exhibit Bank*

---

## EXHIBIT KRASNER-1

### Philadelphia Inquirer — Krasner FAFO Inauguration Speech

January 5, 2026 | TIER B — NEWS RECORD — Sworn Affidavit / URL Preservation Required

DA Larry Krasner's January 5, 2026 inauguration speech, as reported by the Philadelphia Inquirer, publicly announced the 'FAFO' (Fuck Around and Find Out) enforcement posture — five days before Plaintiff's January 10 arrest. The speech was Krasner's official announcement of his enforcement priorities for his new term and constitutes a public declaration by the chief prosecutorial officer of the county of his intent to use state criminal prosecution as a tool for political enforcement.

On the same day — January 5, 2026 — Plaintiff was present at the Krasner inauguration and publicly booed Krasner, constituting protected political speech and expressive conduct under Snyder v. Phelps, 562 U.S. 443 (2011). The temporal sequence (protected speech January 5, FAFO announcement January 5, arrest January 10) establishes the retaliatory nexus required under Hartman v. Moore, 547 U.S. 250 (2006).

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 1 (First Amendment — FAFO announcement 5 days before arrest; Plaintiff booed Krasner same day), 4 (Conspiracy — DA institutional posture establishes retaliatory enforcement environment), 6 (Monell — chief policymaker statement as policy evidence)

**AUTHENTICATION:** Published news article — public record. Preserved URL with timestamp; affidavit confirming article accuracy and publication.

**ATTACH FROM:** *Philadelphia Inquirer archive — January 5-6, 2026 / Google Drive Exhibit Bank*

---

## EXHIBIT KRASNER-2

### Billy Penn — 'Trump Cannot Pardon a State Court Conviction'

January 8-9, 2026 (Two Days Before Plaintiff's Arrest) | TIER B — NEWS RECORD — Sworn Affidavit / URL Preservation Required

On January 8-9, 2026 — two days before Plaintiff's first arrest under Krasner's authority — DA Krasner publicly declared: 'You will be arrested. You will stand trial. You will be convicted. Donald Trump cannot pardon you for a state court conviction.' This statement was reported by Billy Penn and represents the DA's explicit public announcement that state criminal prosecution would be used as a deliberate mechanism to prevent federal relief (including potential pardons) for individuals targeted by the DA's office.

Constitutional significance: Under Bordenkircher v. Hayes, 434 U.S. 357 (1978), charging decisions motivated by the desire to prevent a defendant from exercising constitutional rights constitute prosecutorial misconduct. Krasner's explicit public statement that the purpose of state prosecution is to foreclose federal constitutional remedies (including executive clemency) crosses from aggressive prosecution into unconstitutional viewpoint discrimination — particularly where, as here, the defendant has publicly challenged the DA and engaged in federal whistleblowing activity (Exhibit Z-5, Tier B).

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 1 (First Amendment — prosecution designed to foreclose federal constitutional remedies), 4 (Conspiracy — DA-level statement of retaliatory purpose), 6 (Monell — chief policymaker statement as policy)

**AUTHENTICATION:** Published news article — public record. Preserved URL with timestamp; affidavit confirming publication and quote accuracy.

**ATTACH FROM:** *Billy Penn archive — January 8-9, 2026 / Google Drive Exhibit Bank*

---

## EXHIBIT KRASNER-3

### FAFO Coalition Launch — Gateway Pundit / phillyda.org

January 28-29, 2026 | TIER B — GOVERNMENT/NEWS RECORD — Sworn Affidavit Required

On January 28-29, 2026, DA Krasner officially launched the 'FAFO Coalition' — a public institutional declaration that state prosecution will be used as a tool to foreclose federal accountability mechanisms. The timing is not coincidental: January 29, 2026 is the same date Sulman filed his 'Court Request for Continuance Judicial Recusal' in Case -0640 (Exhibit SA, Tier A; Exhibit Docket2, Tier A). The convergence of the FAFO Coalition launch and Sulman's self-assignment on the same calendar date establishes the operational connection between the DA's enforcement posture and the judicial misconduct track.

19 days after Plaintiff's first arrest (January 10), the DA launches a formal coalition institutionalizing the prosecutorial posture under which Plaintiff was arrested. This sequence — arrest first, formal policy launch weeks later — is consistent with Plaintiff's arrest being a test case for the FAFO enforcement model, used to demonstrate capability before the institutional structure was formally announced. Under Monell and Connick v.

Thompson, 563 U.S. 51 (2011), this post-arrest institutionalization of the policy that produced the arrest supports Claim 6 (Monell liability).

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 1, 4, 6 (Monell — DA chief policymaker launches institutional enforcement coalition contemporaneous with Sulman's self-assignment; pattern evidence of coordinated enforcement)

**AUTHENTICATION:** Government press release (phillyda.org) + news coverage. URL preservation with timestamp; affidavit confirming publication.

**ATTACH FROM:** *Gateway Pundit / phillyda.org press releases — January 28-29, 2026 / Google Drive Exhibit Bank*

---

## EXHIBIT Z-3
### Leonard Pre-Arrest Phone Calls — August 7 & 12, 2025

August 7 and 12, 2025 | TIER B — RECORDED PHONE CALLS — Sworn Affidavit Required

Two pre-arrest phone calls with Det. Daniel Leonard contain critical admissions corroborating Exhibit H (Tier C — Leonard Audio, pre-warrant search admission).

AUGUST 7, 2025 call: Leonard states (1) 'Brett was the one that signed off on it' — identifying ADA Zakeosian as the directing authority for the arrest decision; (2) 'July 11-12, someone went through and looked through year-old text messages' — confirming pre-warrant access to Plaintiff's phone on July 11-12, 2025; (3) 'I don't know how the technology actually works' — admission of ignorance about the mechanism of access while confirming the access occurred. The June 18, 2025 hearing transcript (Exhibit U, Tier A) shows Sulman stating 'I'm going to call the detective' on the same day the phone was seized — establishing the Sulman-to-Leonard chain of custody for the unlawful phone access.

AUGUST 12, 2025 call: Leonard states 'People were at your place at 924 Newmarket this morning' — confirming pre-arrest physical surveillance of Plaintiff's residence. This constitutes warrantless physical surveillance of Plaintiff's home (Fourth Amendment — Kyllo v. United States, 533 U.S. 27 (2001)) combined with the digital surveillance of his phone and Instagram account.

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 2 (Fourth Amendment — pre-warrant phone access July 11-12 confirmed; 'Brett signed off' = ADA direction), 4 (Conspiracy — Zakeosian directing police investigation; Sulman-to-Leonard phone seizure chain)

**AUTHENTICATION:** Recorded phone calls — Plaintiff's recordings of calls with Det. Leonard. Affidavit identifying Plaintiff as the recorder, Leonard as the other party, and accuracy of content. Chain of custody for recording device required.

**ATTACH FROM:** *Plaintiff's recorded phone calls — August 7 and 12, 2025 / Google Drive Exhibit Bank*

---

## EXHIBIT Z-5
### Whistleblower Declaration — June 20, 2025 Family Court Filing

June 20, 2025 | TIER B — COURT FILING — Self-Authenticating Government Record

On June 20, 2025 — one day after Marco Capone (11th floor intake clerk) obstructed Plaintiff's preservation filing attempt and called sheriffs — Plaintiff filed a formal 'Protected Whistleblower Declaration and Federal Rights Notice' in Family Court. This was the first of four formal whistleblower assertions made by Plaintiff between June 20 and July 17, 2025.

The whistleblower declaration is critical to the §1983 retaliatory prosecution claim for three reasons: (1) It establishes the specific protected activity that preceded the arrests — formal government whistleblowing under 42 U.S.C. § 1983 and related federal statutes; (2) It was filed one day after Capone's obstruction, creating a documented causal sequence of retaliation: Capone obstruction (June 19) → formal whistleblower filing (June 20) → phone seizure hearing (June 18, preceding these events) → arrest August 19; (3) Under Crawford-El v. Britton, 523 U.S. 574 (1998), the protected activity need only be a substantial or motivating factor in the adverse action — the formal whistleblower assertion immediately followed by progressive escalation of adverse actions satisfies this standard.

**COMPLAINT CLAIM ANCHORS:** §1983 Claim 1 (First Amendment — formal whistleblower declaration as protected activity predicate for retaliatory arrests). NOTE: This exhibit may be self-authenticating as a filed court document.

**AUTHENTICATION:** Court filing — filed document in Family Court record. Self-authenticating if certified from court records. Affidavit may be required to connect filing to broader whistleblower sequence.

**ATTACH FROM:** *Family Court filing record — June 20, 2025 / Google Drive Criminal Court folder*

# BINDER 3 — TIER C: AUDIO RECORDINGS — CHAIN-OF-CUSTODY CERTIFICATION PENDING

Content of each Tier C exhibit is independently corroborated by Tier A certified transcripts as noted per exhibit. Forward originals to forensic examiner for SHA-256 chain-of-custody certification before trial admission.

*These recordings are not offered for admissibility in their current form. They are preserved as evidence and corroborated intelligence pending certification.*

## EXHIBIT H
## Leonard Audio — August 19, 2025 — Pre-Warrant Phone Search Admission

August 19, 2025 | TIER C — CHAIN-OF-CUSTODY CERTIFICATION PENDING

**! TIER C — CHAIN-OF-CUSTODY CERTIFICATION PENDING. Content corroborated by Tier A (Exhibit U, June 18 Tr.) and Tier B (Exhibit Z-3, Aug. 7 & 12 calls).**

Recording of Det. Daniel Leonard made on August 19, 2025 — the date of Plaintiff's first arrest. Leonard admits on this recording that he searched Plaintiff's phone before a warrant was obtained.

LEGAL SIGNIFICANCE — RILEY v. CALIFORNIA: In Riley v. California, 573 U.S. 373 (2014), the Supreme Court held unanimously that police generally may not, without a warrant, search digital information on a cell phone seized incident to an arrest. Because the phone was seized on June 18, 2025 (two months before the August 19 arrest), and accessed on July 11-12, 2025 (confirmed in Exhibit Z-3 August 7 call: 'July 11-12, someone went through and looked through year-old text messages'), the access cannot be justified as incident to arrest at all — the arrest had not yet occurred. This is a per se Fourth Amendment violation regardless of any exigent circumstances argument.

TIER A CORROBORATION: (1) June 18 transcript (Exhibit U) — Sulman states 'I'm going to call the detective... they're going to secure this and find out what's on there' at moment of seizure; (2) August 7 Leonard call (Exhibit Z-3) — Leonard confirms 'July 11-12, someone went through and looked through year-old text messages' and identifies 'Brett' (Zakeosian) as having 'signed off'; (3) Criminal docket Docket1 — records Arrest Date 08/19/2025 on charges arising from the June 18 recording.

CHAIN-OF-CUSTODY REQUIREMENTS: Forensic examiner must: (1) generate SHA-256 hash of original audio file; (2) verify metadata (creation date, device ID, file format integrity); (3) execute chain-of-custody certification attestation. Forward original recording device and file to examiner before any copying or transfer.

**COMPLAINT CLAIM ANCHORS:** §1983 Claim 2 (Fourth Amendment — Riley v. California per se violation; pre-warrant search of seized phone July 11-12, 2025, six weeks before arrest)

**CERTIFICATION STATUS:** Chain-of-custody certification PENDING. Content independently corroborated by Tier A (Exhibits U, Docket1) and Tier B (Exhibit Z-3).

**ATTACH FROM:** *Plaintiff's recording device — original file — August 19, 2025. Do not copy until forensic chain of custody is established.*

---

## EXHIBIT J
## Yee Audio — August 2025 — 'Brett Wants to Protect the System'

August 2025 | TIER C — CHAIN-OF-CUSTODY CERTIFICATION PENDING

**! TIER C — CHAIN-OF-CUSTODY CERTIFICATION PENDING. Content corroborated by Tier A (Dockets 1, 2) and Tier B (Exhibits Z-3, KRASNER-1 through KRASNER-3).**

Recording of retained defense attorney Adam Sequoyah Yee, made by Plaintiff in August 2025. The recording contains two statements of extraordinary evidentiary significance:

Statement 1 — Retaliatory Causation Admission: 'You would have eventually gotten the phone back. But because you made noise about it, he had to arrest you.' This is a but-for causation admission by Plaintiff's own retained attorney: the arrest was a direct consequence of Plaintiff's protected activity in challenging the unlawful seizure. Under Nieves v. Bartlett, 587 U.S. 391 (2019), direct admissions by actors with knowledge of the retaliatory purpose are probative evidence of the causal nexus required for a §1983 retaliation claim.

Statement 2 — System Protection Admission: 'Brett wants to protect the system.' This identifies ADA Zakeosian as having a protective (rather than prosecutorial) institutional motive for the criminal charges — consistent with Yee audio in Exhibit Z-3 where Leonard identifies 'Brett' as having 'signed off' on the phone access. Combined with Krasner's public statements (KRASNER-1, 2, 3), 'protecting the system' is a documented institutional motive for the prosecution.

UNDISCLOSED CONFLICT: Yee had an undisclosed prior working relationship with ADA Zakeosian that he failed to disclose to Plaintiff. This relationship, when discovered, created a potential Sixth Amendment ineffective assistance claim and explains the extraordinary communications Yee made to Plaintiff (preserved in this recording) that effectively confessed the retaliatory nature of the prosecution.

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 1 (First Amendment — 'because you made noise about it, he had to arrest you' = direct but-for causation of retaliatory prosecution), 4 (Conspiracy — Yee undisclosed relationship with Zakeosian; 'Brett wants to protect the system')

**CERTIFICATION STATUS:** Chain-of-custody certification PENDING. Content corroborated by Tier A (Exhibit U, all three dockets) and Tier B (Exhibit Z-3).

**ATTACH FROM:** *Plaintiff's recording of Adam Sequoyah Yee calls — August 2025. Original device forward to forensic examiner.*

---

## EXHIBIT Goldstein

### Goldstein Tape — September 22, 2025 — ARD Conditioned on Compliance

September 22, 2025 | TIER C — CHAIN-OF-CUSTODY CERTIFICATION PENDING

**! TIER C — CHAIN-OF-CUSTODY CERTIFICATION PENDING. Content corroborated by Tier A (Oct. 22 Litwin transcript and Docket1 — Goldstein withdrawal 11/14/25 confirmed).**

Recording of Plaintiff's retained defense attorney Zak Taylor Goldstein (Goldstein & Weinstein), made by Plaintiff in September 2025. The recording contains two statements:

Statement 1 — ADA Contact Admission: Goldstein states 'Got a call from Brett? Yeah.' — confirming Zakeosian was directly contacting Plaintiff's defense counsel. Under the Rules of Professional Conduct, a prosecutor may contact defense counsel but not in a manner that interferes with the attorney-client relationship or conditions charging decisions on conduct by the defendant. The question — phrased as a confirmation of contact from 'Brett' — establishes that ADA Zakeosian's communications with Goldstein were of a nature that required Goldstein to disclose them to his client.

Statement 2 — ARD Conditioned on Compliance: 'You're not gonna get ARD, and it's gonna be a problem.' This establishes that Accelerated Rehabilitative Disposition (ARD) — a diversion program to which Plaintiff may have been entitled — was being conditioned on something related to Zakeosian's 'call.' Under Brady v. Maryland, 373 U.S. 83 (1963), conditioning diversion programs on silence or compliance constitutes an unconstitutional condition on the exercise of constitutional rights.

GOLDSTEIN WITHDRAWAL SEQUENCE: The October 22, 2025 Litwin certified transcript shows Goldstein received a recording (passed from opposing counsel to Goldstein during a recess in the Litwin hearing) and ARD was withdrawn mid-hearing. This sequence — Goldstein received something from opposing counsel; ARD was immediately withdrawn — is confirmed by the criminal docket (Docket1), which shows Goldstein's Motion to Withdraw filed November 14, 2025, approximately three weeks after the October 22 hearing. The inference — that Goldstein's receipt of the recording during the Litwin hearing created an undisclosed conflict requiring withdrawal — is supported by both the Tier A transcript and the Tier A docket entry.

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 1 (First Amendment — ARD conditioned on compliance with Zakeosian's demands = unconstitutional condition on rights), 4 (Conspiracy — ADA-to-defense-counsel contact conditioning diversion; cross-proceeding coordination between Litwin and Goldstein)

**CERTIFICATION STATUS:** Chain-of-custody certification PENDING. Content corroborated by Tier A (Oct. 22 Litwin transcript, Case D24118413; Docket1 Goldstein withdrawal 11/14/25).

**ATTACH FROM:** *Plaintiff's recording of Zak Taylor Goldstein calls — September-October 2025. Original device forward to forensic examiner.*

---

# CERTIFICATION — BINDERS 2 & 3

I, Chad Mark Franco Ferrari, hereby certify under penalty of law that the foregoing Exhibit Binders 2 and 3 accurately identify and describe the documents and recordings referenced herein. Each Tier B document is an authenticated business record, platform data export, or official filing as described, and each Tier C recording is an original recording made by Plaintiff as identified. I further certify that the Tier C recordings are preserved in their original unmodified form pending forensic chain-of-custody certification.

I further certify that the key facts identified for each exhibit are accurately drawn from the documents and recordings themselves, that no claim of admissibility is made for Tier C exhibits absent forensic certification, and that each Tier B exhibit identified for trial admission will be accompanied by a supporting sworn affidavit as required.

______________________________

Chad Mark Franco Ferrari, Pro Se
1119 Wallace Street, 1st Floor, Philadelphia, PA 19123
chadferrari@me.com
Dated: March 23, 2026

# FERRARI v. LEONARD et al.

EDPA | 42 U.S.C. § 1983 | TRACK 2 | Filed: March 24, 2026

**EXHIBIT BINDER 1 — TIER A: CERTIFIED TRANSCRIPTS, GOVERNMENT FILINGS & PUBLIC RECORD**

**Self-authenticating — Fed. R. Evid. 901 | Judicial notice available — Fed. R. Evid. 201(b)**

12 Exhibits — All Tier A — Filed as Filed Documents with Complaint

## MASTER EXHIBIT INDEX

| EXHIBIT | TITLE / DOCUMENT | DATE | COMPLAINT CLAIM ANCHORS |
|---|---|---|---|
| **C** | Wahl Hearing Transcript p.15 — Vidas PFA Admission | Feb. 7, 2025 | Claims 3, 5: Void probable cause; PFA instrumentalized for possession |
| **K** | DA Corrigan Motion — Sulman Named Material Witness | Jan. 13, 2026 | Claims 3, 4: Brady anchor; out-of-county judge; conspiracy nexus |
| **L-1** | July 17 Transcript pp.18-19 — Segulin Surveillance on Record | Jul. 17, 2025 | Claims 1, 4: 1st Amend. retaliation; court employee surveillance pipeline |
| **L-2** | Sept. 22 Transcript pp.17-24 — Sulman Self-Contradiction | Sep. 22, 2025 | Claims 1, 4: Sulman denies then admits ignorance of monitoring |
| **U** | June 18 Transcript pp.54-55, 61-63 — Phone Seizure Origin | Jun. 18, 2025 | Claims 1, 2, 4: Origin of all 3 criminal cases; 4th Amend. seizure |
| **Docket1** | Criminal Docket MC-51-CR-0015343-2025 | Filed 8/20/2025 | Claims 1, 5: Case 1 arrest; Rule 600 speedy trial clock; recording charge |
| **Docket2** | Criminal Docket MC-51-CR-0000640-2026 | Filed 1/11/2026 | Claims 4, 5: Case 2 arrest; void PFA predicate; Sulman self-assignment |
| **Docket3** | Criminal Docket MC-51-CR-0001972-2026 | Filed 2/2/2026 | Claims 4, 5: Case 3 arrest; serial arrest same predicate; 5-charge escalation |
| **McFadden** | McFadden Billing Records — F43.25 Diagnosis | Oct. 2, 2024 | Claims 3, 5: Contradicts PFA mental health characterization; billing fraud |
| **PFA** | Dec. 24, 2024 PFA Petition — DVU Judge Fanning | Dec. 24, 2024 | Claim 5: Void predicate document; Fanning arrested 3/10/26 same conduct |
| **Stip** | Jan. 3, 2025 Stipulation for Temporary Custody Order | Jan. 3, 2025 | Claims 3, 5: Agreed custody baseline existed; PFA unnecessary for safety |
| **SA** | Sulman Self-Assignment Supporting Document | Jan. 29, 2026 | Claims 3, 4: 91 days post-recusal; 16 days after DA named him witness |

## EXHIBIT C

### Wahl Hearing Transcript — Page 15 — Vidas PFA Admission

February 7, 2025 | TIER A — CERTIFIED / SELF-AUTHENTICATING

### KEY FACT FOR COMPLAINT

During the February 7, 2025 hearing before Hon. Betsy Wahl, Blank Rome attorney Mary T. Vidas admitted on the record the true purpose of the December 24, 2024 PFA petition. When Judge Wahl pressed Vidas on why the prior PFA had been vacated, Vidas stated:

> ***"Because she got exclusive possession of the house."***

This on-record admission by opposing counsel constitutes direct evidence that the PFA was filed to obtain residential possession rather than personal protection. Under Malley v. Briggs, 475 U.S. 335 (1986), a warrant application that no reasonably competent officer would have made lacks probable cause. Where the charging instrument's own predicate was admittedly filed for improper purpose, probable cause for all three resulting arrests is undermined.

### LEGAL NEXUS TO COMPLAINT

This is the single most powerful Tier A anchor for Claim 5 (malicious prosecution). Vidas's admission is made by opposing counsel in open court, is self-authenticating from the certified transcript, and collapses the probable-cause predicate for arrests on January 10, 2026 (Case -0640) and February 2, 2026 (Case -1972), both of which arise from alleged violations of the void PFA. Combined with Exhibit Stip (Jan. 3, 2025 stipulation) — which shows functional agreed custody existed within days of the PFA — the record establishes the PFA was unnecessary for child safety and was instrumentalized for litigation advantage.

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 3 (Due Process — void predicate) & 5 (Malicious Prosecution — Malley v. Briggs); also supports Claim 4 (conspiracy — Vidas-Sulman coordination)

**AUTHENTICATION:** Certified transcript — CRS Court Reporting System, Catalog ID 25020801 — self-authenticating under Fed. R. Evid. 901

**TRANSCRIPT PAGES:** Pages 14–16, Case OC2402084 (Custody), February 7, 2025

**ATTACH FROM:** *Certified transcript in project file: 02072025_WAHL_TRANSCRIPT.pdf / Google Drive Transcripts folder*

---

## EXHIBIT K

### DA Corrigan Motion — Commonwealth's Motion to Appoint Out-of-County Judge

January 13, 2026 | TIER A — CERTIFIED / SELF-AUTHENTICATING

### KEY FACT FOR COMPLAINT

On January 13, 2026, ADA Vincent Corrigan filed the Commonwealth's Motion to Appoint an Out-of-County Judge in Case MC-51-CR-0015343-2025. The motion expressly states at Paragraph 2: 'A witness in the above captioned matter is Hon Daniel Sulman duly elected and sitting Court of Common Pleas for the City and County of Philadelphia, assigned to Family Court at 1501 Arch Street.'

This filing was transmitted only to defense attorney Kevin Yao at the Defender Association and was suppressed from Plaintiff for approximately 20 days — disclosed by public defender Matt Nelson in the courthouse hallway minutes before the February 2, 2026 arrest on Case -1972. This creates a Brady violation: the DA's own institutional acknowledgment that Sulman is a material witness in Plaintiff's criminal case was withheld from the defendant during a critical period in which Sulman was self-assigning to that same case (January 29, 2026) and related proceedings.

### DUAL LEGAL SIGNIFICANCE

First, the motion is itself a Brady anchor: the Commonwealth cannot simultaneously name Sulman as a material witness in a criminal proceeding and defend his continued involvement in related civil proceedings without triggering judicial estoppel. Second, the motion documents the out-of-county appointment process that resulted in Judge Sprecher's assignment — confirming the structural conflict that the Commonwealth itself recognized required removal of all Philadelphia judges.

### SULMAN SELF-ASSIGNMENT TIMING

The DA filed this motion naming Sulman as a witness on January 13, 2026. On January 29, 2026 — 16 days later — Sulman filed a 'Court Request for Continuance Judicial Recusal' in Case -0640 at 9:00 AM (docket entry 3, Docket2), the same day trial had been set before him. This sequence — DA names him witness, Sulman then self-assigns to the proceeding — constitutes the highest-value Tier A conspiracy anchor across all tracks.

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 3 (Brady/Due Process — suppression of Corrigan motion ~20 days) & 4 (Conspiracy — Sulman self-assignment 16 days after named witness)

**AUTHENTICATION:** DA Office filing — government document, self-authenticating. Signed by ADA Vincent Corrigan, dated January 13, 2026. Verified under 18 Pa.C.S.A. §4904

**CASE:** MC-51-CR-0015343-2025, Criminal Division

**ATTACH FROM:** *Project file: 021326_DA_krasner_corrigan_motion_to_appt_out_of_county_Judge.pdf*

---

## EXHIBIT L-1
### July 17, 2025 Certified Hearing Transcript — Pages 18-19 — Segulin Surveillance

July 17, 2025 | TIER A — CERTIFIED / SELF-AUTHENTICATING

### KEY FACT FOR COMPLAINT

At the July 17, 2025 motion hearing in Case D24118413 before Hon. Daniel Sulman, Plaintiff placed the following statement on the certified record (pp. 18-19):

> *"Prior to both previous hearings, I received activity notifications on my Instagram showing that Ms. Cassi Segulin, Court Digital Recorder, was reviewing my Instagram stories up until real time, before we came in here."*

Sulman's response (p. 19): 'I don't know that, sir. I'm not — I don't know that they're allowed to. They shouldn't be giving me any information about it, if they are.' This response — neither confirming nor denying whether Segulin reported to him — is a Tier A admission of possible receipt of surveillance intelligence and forms the self-contradiction anchor for Exhibit L-2.

### SURVEILLANCE PIPELINE SIGNIFICANCE

This exhibit establishes that Plaintiff formally placed Segulin's surveillance conduct on the certified judicial record during the hearing itself. It is the predicate for: (1) Segulin's LinkedIn erasure within 24 hours of being named (Exhibit L-4, Tier B); (2) Sulman's September 22 self-contradiction (Exhibit L-2); and (3) the documented surveillance-to-prosecution pipeline running from Instagram monitoring through the June 18 phone seizure to all three criminal charges.

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 1 (First Amendment — retaliation for recording/protected speech; government surveillance of protected Instagram content) & 4 (Conspiracy — court employee/judge coordination)

**AUTHENTICATION:** Certified transcript — CRS Court Reporting System, Catalog ID 25070801, Case D24118413

**TRANSCRIPT PAGES:** Pages 18-20, Motion Volume 1, July 17, 2025, Case D24118413

**ATTACH FROM:** *Project file: 07172025Julie_Ferrari_Vs__Chad_Ferrari.pdf / Google Drive Transcripts folder*

---

## EXHIBIT L-2
### September 22, 2025 Certified Hearing Transcript — Pages 17-24 — Sulman Self-Contradiction

September 22, 2025 | TIER A — CERTIFIED / SELF-AUTHENTICATING

### KEY FACT FOR COMPLAINT

At the September 22, 2025 motion hearing in Case D24118413, Plaintiff again raised Segulin's Instagram surveillance, naming both Segulin and Piscopo's connection to the monitoring. Sulman stated at page 18:

> ***"I had nobody monitor anything — ex parte, sir."***

Three lines later, at the same page, when Plaintiff pressed further, Sulman stated:

> ***"I don't know, sir. And it doesn't concern me."***

The same transcript documents: Piscopo identifying Segulin as having a 'public Instagram'; Plaintiff alleging Segulin monitored his account 24 hours leading up to June 18 and July 14 hearings; Sulman threatening Plaintiff with 'six months' criminal contempt for recording; and Sulman refusing to recuse despite Plaintiff's formal demand on the record.

### SELF-CONTRADICTION ANALYSIS

The sequence — active denial ('I had nobody monitor anything') immediately followed by professed ignorance ('I don't know') — constitutes a logical self-contradiction on the certified record. A party cannot simultaneously claim to have affirmatively directed no one to monitor AND disclaim knowledge of whether monitoring occurred. Both

statements are captured in the same certified transcript on the same page, making this the strongest Tier A credibility impeachment available against Sulman's 'no ex parte contact' defense.

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 1 (First Amendment surveillance) & 4 (Conspiracy — Sulman denial/concealment of monitoring coordination with Blank Rome)

**AUTHENTICATION:** Certified transcript — CRS Court Reporting System, Catalog ID 25090770, Case D24118413

**TRANSCRIPT PAGES:** Pages 17-24, Motion Volume 1, September 22, 2025, Case D24118413

**ATTACH FROM:** *Project file: 09222025__Julie_Ferrari_Vs__Chad_Ferrari.pdf / Google Drive Transcripts folder*

---

## EXHIBIT U

### June 18, 2025 Certified Hearing Transcript — Pages 54-55, 61-64 — Phone Seizure Origin

June 18, 2025 | TIER A — CERTIFIED / SELF-AUTHENTICATING

### KEY FACT FOR COMPLAINT — ORIGIN OF ALL THREE CRIMINAL CASES

The June 18, 2025 hearing before Hon. Daniel Sulman in Case OC2402084 is the origin event for all three criminal prosecutions. Pages 61-64 of the certified transcript document the following sequence:

Page 61: Court Officer discovers Plaintiff has phone recording. Piscopo: 'He is recording. I can see it, Your Honor.' Sulman: 'You're recording this hearing, sir?' Phone is seized by court order.

Page 62: Sulman states on the record: 'I'm going to call the detective. And they're going to secure this and find out what's on there.' And: 'You're likely going to be prosecuted.' Within the same page, Piscopo immediately pivots — 'unless Your Honor suspends his custody time' — linking the phone seizure directly to custody leverage.

Pages 54-55 document the Tobey email-ban exchange establishing pre-existing pattern of judicial access restriction against Plaintiff, providing context for the retaliatory purpose of the phone seizure.

### RETALIATORY CAUSAL CHAIN

The June 18 transcript establishes the complete causal chain under §1983 retaliatory prosecution: (1) protected activity (recording court proceedings; filing preservation motions); (2) adverse action (phone seizure, announcement of criminal prosecution, custody suspension leverage); (3) but-for causation (Sulman states prosecution follows from recording, same page as custody threat). Under Nieves v. Bartlett, 587 U.S. 391 (2019), direct on-record statements of retaliatory intent by the judicial actor ordering the seizure satisfy the causation element.

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 1 (First Amendment — retaliatory phone seizure/prosecution), 2 (Fourth Amendment — Riley v. California pre-warrant search), 4 (Conspiracy — Sulman/Piscopo/Leonard coordination)

**AUTHENTICATION:** Certified transcript — CRS Court Reporting System, Catalog ID 25060930, Case OC2402084

**TRANSCRIPT PAGES:** Pages 54-55, 61-64, Hearing Volume 1, June 18, 2025, Case OC2402084

**ATTACH FROM:** *Project file: 06182025__Julie_Ferrari_Vs__Chad_Ferrari_61825.pdf / Google Drive Transcripts folder*

---

## EXHIBIT Docket1

### Criminal Docket — MC-51-CR-0015343-2025 (Case 1 — Recording Charge)

Filed August 20, 2025 / Arrest August 19, 2025 | TIER A — CERTIFIED / SELF-AUTHENTICATING

### KEY FACT FOR COMPLAINT

Case 1 (the recording charge) is the direct result of the June 18, 2025 phone seizure documented in Exhibit U. Det. Daniel Leonard is identified as Arresting Officer. The docket confirms: Arrest Date 08/19/2025; Complaint Date 08/19/2025; Charge 18 § 5103.1 (Unlawful Use of Audio or Video Device in Court), Offense Date 06/18/2025.

Rule 600 clock: Complaint filed August 19, 2025. The Joint Request for Continuance filed February 2, 2026 by Lewandowski raises contested tolling issues. The March 16, 2026 Trial Cancelled docket entry, with no successor date set as of filing date, raises serious Rule 600 speedy trial issues requiring adjudication before the court can reach the merits.

The docket further confirms: Zak Goldstein entered appearance September 18, 2025 (9/18/2025); withdrew November 14, 2025 (motion to withdraw filed 11/14/2025) — immediately after Plaintiff shared recording at the October 22, 2025 Litwin hearing, corroborating the Goldstein Tape (Tier C Exhibit Goldstein).

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 1 (First Amendment — recording charge as retaliatory prosecution for constitutionally protected activity) & 5 (Malicious Prosecution — all three cases traceable to June 18 seizure)

**AUTHENTICATION:** Official court docket — self-authenticating government record; Fed. R. Evid. 901(b)(7)

**DOCKET:** MC-51-CR-0015343-2025, Municipal Court of Philadelphia County, Criminal Division

**ATTACH FROM:** *Project file: 02202026_Criminal_1_Docket.pdf*

---

## EXHIBIT Docket2
### Criminal Docket — MC-51-CR-0000640-2026 (Case 2 — Contempt / Terroristic Threats)

Filed January 11, 2026 / Arrest January 10, 2026 | TIER A — CERTIFIED / SELF-AUTHENTICATING

### KEY FACT FOR COMPLAINT

Case 2 is the January 10, 2026 arrest by Det. Robert A. Killman and Det. Davis. Charges: Count 1 — 23 § 6114 (Contempt for Violation of Order or Agreement), Offense Date 12/24/2024; Count 2 — 18 § 2706 (Terroristic Threats), Offense Date 12/24/2024. Both charges are predicated on conduct alleged to violate the December 24, 2024 PFA signed by DVU Judge Fanning — whose own arrest on March 10, 2026 for strangulation and aggravated assault of his domestic partner (Exhibit PFA) taints the validity of the predicate instrument.

CRITICAL DOCKET ENTRY: Entry 3, filed 01/29/2026 — 'Court Request for Continuance Judicial Recusal' filed by 'Sulman, Daniel.' This confirms Sulman's January 29, 2026 self-assignment to Case -0640, 91 days after his October 31, 2025 recusal in the family court matter and 16 days after ADA Corrigan's January 13, 2026 motion named Sulman as a material witness (Exhibit K). This is the highest-value Tier A conspiracy anchor in the case.

The calendar events also show: Trial set for 01/29/2026 9:00 AM Courtroom 6G before 'Administrative Judge — Family Division Daniel Sulman' (initial assignment); then Waiver Trial 04/02/2026 9:00 AM Courtroom 6G before Judge Tiffany Palmer (current VP of Cipriani Family Law Inn of Court — raises recusal issue).

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 4 (Conspiracy — Sulman self-assignment docket entry is Tier A proof), 5 (Malicious Prosecution — void PFA predicate + Fanning arrest), 3 (Due Process — Sulman acting after named material witness)

**AUTHENTICATION:** Official court docket — self-authenticating government record; Fed. R. Evid. 901(b)(7)

**DOCKET:** MC-51-CR-0000640-2026, Municipal Court of Philadelphia County, Criminal Division

**ATTACH FROM:** *Project file: 02202026_Criminal_2_docket.pdf*

---

## EXHIBIT Docket3
### Criminal Docket — MC-51-CR-0001972-2026 (Case 3 — Five-Charge Escalation)

Filed February 2, 2026 / Arrest February 2, 2026 | TIER A — CERTIFIED / SELF-AUTHENTICATING

### KEY FACT FOR COMPLAINT

Case 3 is the February 2, 2026 arrest by Det. Robert Scarpello — filed 5 minutes after Brady disclosure in the courthouse hallway by public defender Matt Nelson (who had suppressed ADA Corrigan's January 13, 2026 motion for approximately 20 days). This timing constitutes direct retaliatory prosecution triggered by Plaintiff's receipt of the Brady material.

Five charges: Count 1 — 18 § 2710 (Ethnic Intimidation); Count 2 — 18 § 4953 (Retaliation Against Witness or Victim); Count 3 — 18 § 2706 (Terroristic Threats); Count 4 — 18 § 2709.1 (Stalking); Count 5 — 18 § 2709 (Harassment). All five carry Offense Date 12/24/2024 — the same date as the void PFA. This means the same single predicate communication on December 24, 2024 was used to generate charges in both Case -0640 (January 10) and Case -1972 (February 2) — serial arrests on identical predicate conduct.

Ethnic Intimidation charge (§ 2710) is particularly significant: its elements require that the underlying offense was motivated by race, color, or other protected class. The DA's January 13, 2026 motion (Exhibit K) references Plaintiff's communications allegedly containing antisemitic content as the basis. This reframes the charging structure as content-based viewpoint suppression — a First Amendment violation of the highest order under Matal v. Tam, 582 U.S. 218 (2017).

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 1 (First Amendment — content-based/viewpoint-based prosecution via Ethnic Intimidation charge), 4 (Conspiracy — Brady suppression-to-arrest timing), 5 (Malicious Prosecution — serial arrest on identical void predicate)

**AUTHENTICATION:** Official court docket — self-authenticating government record; Fed. R. Evid. 901(b)(7)

**DOCKET:** MC-51-CR-0001972-2026, Municipal Court of Philadelphia County, Criminal Division

**ATTACH FROM:** *Project file: 02202026_Criminal_3_Docket.pdf*

---

## EXHIBIT McFadden

### McFadden Billing Records — F43.25 Diagnosis

October 2 & 21, 2024 | TIER A — CERTIFIED / SELF-AUTHENTICATING

### KEY FACT FOR COMPLAINT

Dr. Robert F. McFadden, M.D. (McFadden Mental Health, 1315 Walnut Street Suite 1619, Philadelphia, NPI: 1790162725) issued two billing statements for Plaintiff: (1) 10/02/2024 — Procedure 90791 (psychiatric diagnostic evaluation) — Diagnosis Code F43.25 (Adjustment Disorder with Mixed Disturbance of Emotions and Conduct), $475.00; (2) 10/21/2024 — Procedure 99214 (office visit) — F43.25, $200.00.

The chart notes from the October 2 intake state: 'Appearance: neat, casual. Mood: I think I'm okay.' This contemporaneous clinical record — generated approximately six to eight weeks before Julie Ferrari's December 24, 2024 PFA petition — directly contradicts the PFA petition's characterization of Plaintiff as 'manic, emotionally dysregulated and psychotic.'

### PROBATIVE VALUE TO COMPLAINT

The Blank Rome submissions and expert reports used throughout the family court proceedings characterize Plaintiff in terms consistent with serious psychiatric pathology. Dr. McFadden's records — from Plaintiff's own treating psychiatrist, whom Blank Rome has attempted to discredit — establish a contemporaneous clinical baseline that refutes those characterizations. Additionally, Vidas's on-record statement to Judge Wahl on February 7, 2025 that Plaintiff's 'own psychiatrist' and 'own psychologist' stated they would not let Plaintiff watch the children is directly contradicted by these records and by Dr. McFadden's subsequent formal letter to the court.

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 3 (Due Process — false PFA characterizations used to deprive liberty), 5 (Malicious Prosecution — clinical evidence refuting psychiatric basis for arrests)

**AUTHENTICATION:** Medical billing records from treating provider — authenticated business record; Fed. R. Evid. 803(6). Affidavit of custodian required for trial admission.

**PROVIDER:** Robert F. McFadden, M.D., License MD422714, Tax ID 38-3916265, NPI 1790162725

**ATTACH FROM:** *Project file: 11012024_Chad_Ferrari_Dr_McFadden_receipt_and_dx.pdf / Google Drive Exhibit Bank*

---

## EXHIBIT PFA

### December 24, 2024 PFA Petition — DVU Judge Fanning — Void Predicate

December 24, 2024 | TIER A — CERTIFIED / SELF-AUTHENTICATING

### KEY FACT FOR COMPLAINT

The original predicate document for all three criminal arrests. Julie B. Ferrari filed Petition for Protection from Abuse (DVU Case No. 2412V7349) on December 24, 2024. Emergency Duty Judge Michael Fanning signed the Temporary Protection from Abuse Order the same day (Order Effective Date: December 24, 2024). The order protects Julie B. Ferrari, Caia R. Ferrari (DOB 11/13/2020), and Calvin J. Ferrari (DOB 10/29/2022).

CRITICAL SUBSEQUENT FACT: DVU Judge Michael Fanning was arrested on or about March 10, 2026 on charges of strangulation and aggravated assault of his domestic partner — the precise category of conduct that PFA proceedings are designed to address. Fanning was suspended by the First Judicial District. This subsequent arrest: (1) reflects on the integrity of Fanning's December 24 emergency determination; (2) places his credibility as issuing authority before the jury; and (3) creates a ground for post-conviction review of the predicate instrument's validity.

### DEFECTS IN THE PREDICATE INSTRUMENT

As documented across multiple subsequent proceedings: (1) the December 24, 2024 PFA was preceded by a Stipulation for Temporary Custody signed January 3, 2025 (Exhibit Stip), establishing that functional custody arrangements existed without PFA protection; (2) Vidas admitted on February 7, 2025 that the PFA's purpose was residential possession (Exhibit C); (3) PFA2 (October 27, 2025) was dismissed November 7, 2025 by Judge Kristiansson after service to wrong address; (4) PFA3 (November 14, 2025) is the operative predicate for Case -0640.

**COMPLAINT CLAIM ANCHORS:** §1983 Claim 5 (Malicious Prosecution — void predicate document; Fanning arrest taints issuing authority); supports Claims 3 & 4

**AUTHENTICATION:** Court-issued official order — self-authenticating government record. DVU Case No. 2412V7349, Court of Common Pleas, Philadelphia County.

**ATTACH FROM:** *Project file: 12242024_Fraud_PFA_FIling_Fanning.pdf / Google Drive Exhibit Bank*

---

## EXHIBIT Stip

**January 3, 2025 Stipulation for Entry of Temporary Custody Order — NUCLEAR EXHIBIT**

January 3, 2025 | TIER A — CERTIFIED / SELF-AUTHENTICATING

### KEY FACT FOR COMPLAINT

Ten days after Julie Ferrari filed the December 24, 2024 PFA, the parties — represented by Blank Rome (Vidas/Piscopo) for Julie and Enrico Pagnanelli for Chad — entered into a Stipulation for Entry of Temporary Custody Order Without Prejudice in Case OC2402084. The stipulation was signed by: Julie B. Ferrari (signature blank/undated); Chad Mark Franco Ferrari (signed, dated 1-3-25); Mary T. Vidas, Esq.; Michelle Piscopo; and Enrico Pagnanelli, Esq.

The stipulation establishes: (1) Mother shall have primary physical custody until Feb. 7, 2025 hearing; (2) Father shall have supervised visitation Tues/Thurs and every other Sat/Sun through his mother Patricia Ferrari as supervisor; (3) Patricia Ferrari to sign Supervisor's Affidavit of Accountability; (4) Visits at Patricia Ferrari's home; (5) The supervised visits 'shall not be considered a violation of the Temporary Protection from Abuse Order dated December 24, 2024.' This last provision is critical: if the PFA required absolute no-contact, the parties could not have stipulated to supervised visitation. The PFA's own practical construction by both parties confirms it was not a genuine no-contact protection order.

### NUCLEAR EXHIBIT STATUS

This document is the single most powerful counter to the entire theory of Plaintiff as PFA violator. A party cannot simultaneously: (a) obtain a 'genuine' PFA based on fear of domestic abuse; and (b) agree 10 days later to structured visitation with the alleged abuser supervised by his mother. The stipulation, signed by Blank Rome attorneys, constitutes a binding admission that the PFA's protective function did not require zero parental contact — fatally undermining the probable cause for any contempt-based arrest predicated on alleged PFA violation.

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 3 (Due Process — void probable cause for contempt charges), 5 (Malicious Prosecution — Blank Rome-signed admission of PFA's limited scope)

**AUTHENTICATION:** Signed stipulation filed as court order — self-authenticating. Both parties' signatures with counsel attestations. Case OC2402084, Philadelphia CCP Family Division.

**ATTACH FROM:** *Project file: Jan03_2025Stipulation_for_Entry_of_Temporary_Custody_Order_without_Prejudice_signed_1325.pdf*

---

## EXHIBIT SA

**Sulman Self-Assignment — Court Request for Continuance Judicial Recusal (Case -0640, Docket Entry 3)**

January 29, 2026 | TIER A — CERTIFIED / SELF-AUTHENTICATING

### KEY FACT FOR COMPLAINT

On January 29, 2026, at 9:00 AM — the time Case -0640 was originally calendared for trial — the criminal docket for Case MC-51-CR-0000640-2026 records docket entry 3: 'Court Request for Continuance Judicial Recusal' filed by 'Sulman, Daniel.' This constitutes documentary proof that Judge Sulman personally filed a recusal/continuance request in a criminal case in which the DA's own motion (filed January 13, 2026) had named him as a material witness 16 days earlier.

### TIMELINE ESTABLISHING CONSPIRACY

The sequence is as follows: October 31, 2025 — Sulman recuses from family court case OC2402084; January 10, 2026 — Case -0640 arrest (Killman/Davis); January 13, 2026 — DA Corrigan files motion naming Sulman as material witness; January 13, 2026 12:47 PM — DA motion received by court; January 29, 2026 — Sulman files his own recusal/continuance request in the criminal case, 91 days after his family court recusal, on the day the trial was set.

The significance is precise: Sulman filed in the criminal case (which he had no legitimate authority over, given his witness status) to trigger a continuance on the trial date. This procedural maneuver — by a recused judge who was himself a named witness — constitutes unauthorized judicial action in a proceeding in which he had a direct personal interest. Under 28 U.S.C. § 455(b)(5) (federal disqualification), a judge must recuse when they are likely to be a material witness. Sulman's self-filing in the criminal case raises an independent basis for §1983 liability under Dennis v. Sparks, 449 U.S. 24 (1980).

**COMPLAINT CLAIM ANCHORS:** §1983 Claims 3 (Due Process — unauthorized judicial action by recused witness-judge), 4 (Conspiracy — Tier A documentary proof of Sulman acting in criminal proceeding despite named witness status)

**AUTHENTICATION:** Official court docket entry — self-authenticating government record. Entry 3, Case MC-51-CR-0000640-2026, filed 01/29/2026, Filed By: Sulman, Daniel.

**ATTACH FROM:** *See Exhibit Docket2 above (page 3 of MC-51-CR-0000640-2026 docket)*

# CERTIFICATION

I, Chad Mark Franco Ferrari, hereby certify under penalty of law that the foregoing Exhibit Binder 1 (Tier A) accurately identifies and describes the documents attached herein, that each document is what it is purported to be, that each Tier A document is a certified transcript, official government filing, or court-issued order as described, and that the key facts identified for each exhibit are accurately drawn from the documents themselves.

______________________________

Chad Mark Franco Ferrari, Pro Se
1119 Wallace Street, 1st Floor, Philadelphia, PA 19123
chadferrari@me.com
Dated: March 23, 2026

# FERRARI v. LEONARD et al.

EDPA | 42 U.S.C. § 1983 | TRACK 2 | Filed: March 24, 2026

**DOCUMENT 3 — MASTER EXHIBIT CROSS-REFERENCE & LITIGATION ROADMAP**

This document provides: (1) a master exhibit-to-claim cross-reference matrix; (2) a complete chronological causal chain tying every exhibit to dated events in the retaliatory prosecution sequence; (3) a priority-ranked pending action register with exhibit anchors for each action. This document is a litigation tool — it does not contain the exhibits themselves. See Binder 1 (Tier A) and Binders 2 & 3 (Tier B/C) for exhibit content.

---

## SECTION 1 — §1983 CLAIM ARCHITECTURE: WHAT EACH CLAIM REQUIRES AND WHICH EXHIBITS PROVE IT

Track 2 (Ferrari v. Leonard et al.) advances six interconnected §1983 claims. Each claim has distinct legal elements. The following section maps every exhibit to the specific element it proves.

### CLAIM 1 — First Amendment Retaliation (Hartman v. Moore, 547 U.S. 250; Nieves v. Bartlett, 587 U.S. 391)

ELEMENTS REQUIRED: (1) Plaintiff engaged in constitutionally protected activity; (2) adverse action (arrest/prosecution) was taken; (3) protected activity was a substantial or motivating factor.

- Protected Activity: Recording in court (Exh. U — Sulman's own statements confirm recording was the trigger); formal whistleblower filings (Z-5); public booing of Krasner (KRASNER-1); formal motions challenging surveillance (L-1, L-2)
- Adverse Action: Arrests August 19, 2025 (Docket1); January 10, 2026 (Docket2); February 2, 2026 (Docket3)
- Causal Nexus: Sulman on-record 'I'm going to call the detective' same moment as phone seizure (Exh. U); Yee audio 'because you made noise about it, he had to arrest you' (Exh. J); Krasner FAFO posts day of arrest (Exh. X)
- Viewpoint discrimination: Ethnic intimidation charge (Docket3 — §2710) targets content of Plaintiff's speech; requires proof of viewpoint-based motive (Matal v. Tam, 582 U.S. 218)

### CLAIM 2 — Fourth Amendment (Riley v. California, 573 U.S. 373; Carpenter v. United States, 585 U.S. 296)

ELEMENTS REQUIRED: (1) Government accessed Plaintiff's phone or digital communications; (2) without a warrant; (3) not justified by any exception.

- Pre-warrant phone access July 11-12, 2025: Leonard August 7 call (Z-3): 'July 11-12, someone went through and looked through year-old text messages'; Leonard audio (Exh. H): admits pre-warrant search
- Phone seizure June 18 without warrant: Exh. U pp. 61-63 — seized at hearing on Sulman order before any warrant or probable cause hearing
- Instagram surveillance: L-4 (screenshot); L-1 (certified record); L-2 (Sulman denial/contradiction) — government monitoring protected digital expression
- Physical surveillance at residence: Z-3 (August 12 call — 'People were at your place at 924 Newmarket this morning') — warrantless home surveillance

### CLAIM 3 — Fourteenth Amendment Due Process (Mullane v. Central Hanover, 339 U.S. 306; Brady v. Maryland, 373 U.S. 83)

ELEMENTS REQUIRED: Notice, fair hearing, non-fabricated evidence used in charging decisions.

- Service defect: Exh. W — June 16 Vidas letter to withdrawn counsel Pagnanelli; June 18 hearing and all consequences tainted
- Brady violation: Exh. K — DA Corrigan motion naming Sulman as witness, suppressed ~20 days; disclosed minutes before third arrest
- False mental health characterization: McFadden (F43.25 dx Oct. 2024) vs. PFA petition's 'manic, psychotic' characterization — direct contradiction in charging record
- Sulman unauthorized action: SA — self-filing by named witness 91 days post-recusal = due process violation per Dennis v. Sparks
- Stip — agreed custody existed; PFA's scope limited by Blank Rome-signed stipulation; probable cause for contempt charges undermined

### CLAIM 4 — §1983 Conspiracy (Dennis v. Sparks, 449 U.S. 24; Lugar v. Edmondson Oil, 457 U.S. 922)

ELEMENTS REQUIRED: Two or more actors; agreement; deprivation of constitutional right under color of law.

- Sulman-Leonard chain: Exh. U (Sulman: 'I'm going to call the detective' at phone seizure) → Z-3 ('Brett signed off'; July 11-12 access) → H (Leonard admission)
- Sulman self-assignment: SA (Tier A docket entry: 'Sulman, Daniel' files in criminal case 16 days after named material witness)
- Williamson joint-actor: Y-1, Y-2, Y-5, Y-6 — private landlord with advance knowledge of warrants; announces 'joint effort'; coordinates with Weisgold
- Krasner/DA enforcement posture: X, KRASNER-1, 2, 3 — institutionalized FAFO posture coincident with Plaintiff's arrests; FAFO Coalition launches day of Sulman's self-assignment
- Segulin surveillance pipeline: L-4, L-1, L-2 — court employee monitoring feeds information into hearing process; LinkedIn erasure = consciousness of guilt
- Goldstein-Zakeosian: Goldstein (Tier C) — 'Got a call from Brett'; undisclosed relationship; ARD conditioned; opposing counsel passes recording during hearing recess

### CLAIM 5 — Malicious Prosecution (Malley v. Briggs, 475 U.S. 335; Manuel v. City of Joliet, 580 U.S. 357)

ELEMENTS REQUIRED: Criminal proceeding initiated against Plaintiff; without probable cause; with malice; terminated in Plaintiff's favor (or ongoing without valid basis).

- Void predicate: Exh. C (Vidas admission: PFA for possession, not protection) + PFA (Fanning arrested for same conduct) + Stip (Blank Rome stipulated PFA's limited scope)
- Serial arrest: Dockets 2 & 3 — same December 24 predicate offense date for both January 10 and February 2 arrests = re-arrest on identical void conduct
- McFadden records contradict psychiatric characterization in PFA — false predicate for emergency measure
- Docket1 Rule 600 issue — speedy trial violation may require dismissal; constitutes ongoing deprivation of liberty without valid judicial basis

### CLAIM 6 — Monell Liability (Monell v. Dep't Social Services, 436 U.S. 658; Connick v. Thompson, 563 U.S. 51)

ELEMENTS REQUIRED: Constitutional violation; caused by official policy, custom, or practice of government entity.

- FAFO policy: KRASNER-1, 2, 3 — chief policymaker statements announcing enforcement posture; institutionalized through coalition launch
- Contemporaneous with Plaintiff's arrests: KRASNER-1 (Jan. 5 inauguration → Jan. 10 arrest); KRASNER-3 (Jan. 28-29 coalition launch → Feb. 2 arrest)
- Y-6 (Williamson pre-warrant knowledge) — indicates policy-level access to prosecution decisions by private actor, consistent with pattern/practice of coordination

---

## SECTION 2 — COMPLETE CHRONOLOGICAL CAUSAL CHAIN (JUNE 2025 — MARCH 2026)

Every exhibit is anchored to a specific dated event. This table is the evidentiary spine of the complaint. The retaliatory prosecution causal chain runs: June 18 phone seizure → July surveillance → August arrest → January/February arrests → ongoing.

| DATE | EVENT | EXHIBIT(S) | §1983 SIGNIFICANCE |
|---|---|---|---|
| Jun. 18, 2025 | **Phone seizure in family court; Sulman: 'I'm going to call the detective'** | Exh. U (A) | Origin event — all 3 criminal cases trace to this hearing; retaliatory intent on record |
| Jun. 19, 2025 | **Capone obstructs preservation filing; sheriffs called** | Exh. Z-5 (B) | Court administration obstruction preceding whistleblower filing |
| Jun. 20, 2025 | **Plaintiff files formal Whistleblower Declaration in Family Court** | Exh. Z-5 (B) | Protected activity established under §1983 First Amendment |
| Jul. 11-12, 2025 | **Pre-warrant access to Plaintiff's phone text messages** | Exh. H (C); Z-3 (B) | Riley v. California per se 4th Amendment violation |

| | | | |
|---|---|---|---|
| Jul. 14, 2025 | **Segulin monitors Plaintiff's Instagram at 1:01 PM during hearing** | Exh. L-4 (B) | Real-time government surveillance of protected expression during proceeding |
| Jul. 17, 2025 | **Plaintiff places Segulin surveillance on certified record (pp.18-19)** | Exh. L-1 (A) | Protected activity — formal court challenge to unconstitutional conduct |
| Aug. 7, 2025 | **Leonard: 'Brett signed off'; confirms July 11-12 phone access** | Exh. Z-3 (B) | Zakeosian identified as authorizing officer; pre-warrant access confirmed |
| Aug. 12, 2025 | **Leonard confirms physical surveillance at Plaintiff's residence** | Exh. Z-3 (B) | Warrantless home surveillance preceding arrest |
| Aug. 19, 2025 | **ARREST 1 — Det. Leonard — Recording charge** | Docket1 (A) | Case 1 retaliatory arrest; Rule 600 clock starts |
| Aug. 19, 2025 | **Leonard admits pre-warrant phone search on recording** | Exh. H (C) | Direct admission of Riley violation on arrest day |
| Sep. 18, 2025 | **Goldstein enters appearance as defense counsel** | Docket1 (A) | Undisclosed Goldstein-Zakeosian relationship; ARD conditioning follows |
| Sep. 22, 2025 | **Goldstein: 'Got a call from Brett? Yeah.' ARD conditioned** | Goldstein (C) | ADA-to-defense direct contact; ARD as unconstitutional condition |
| Sep. 22, 2025 | **Sulman: 'I had nobody monitor anything'; then: 'I don't know'** | Exh. L-2 (A) | Self-contradiction on certified record; Sulman's credibility impeached |
| Oct. 22, 2025 | **Goldstein receives recording from opposing counsel at Litwin recess; ARD withdrawn** | Goldstein (C); Docket1 (A) | Mid-hearing pass of evidence through defense counsel; conflict materializes |
| Oct. 27, 2025 | **PFA2 filed — dismissed Nov. 7 (wrong address service)** | PFA (A) | Serial PFA filing pattern; constitutional defects accumulate |
| Oct. 31, 2025 | **Sulman recuses from family court OC2402084** | Docket2 (A) | Clock starts — 91 days to Jan. 29 self-assignment in criminal case |
| Nov. 7, 2025 | **PFA2 dismissed (Kristiansson) — improper service** | Dockets (A) | Service defect pattern consistent with Exhibit W (June 16 defective service) |
| Nov. 14, 2025 | **PFA3 filed (predicate for Case -0640)** | Docket2 (A) | Third PFA in series; operative predicate for Jan. 10 arrest |
| Nov. 14, 2025 | **Goldstein files Motion to Withdraw — 23 days after ARD withdrawn** | Docket1 (A) | Withdrawal confirms conflict of interest materialized Oct. 22 |
| Dec. 24, 2024 | **PFA offense dates on Cases -0640 and -1972** | PFA (A); Dockets (A) | Both Case 2 and Case 3 predicated on same Dec. 24 PFA conduct — serial arrest same predicate |
| Jan. 3, 2025 | **Parties execute Stipulation for Temporary Custody — supervised visits OK under same PFA** | Stip (A) | Nuclear exhibit — PFA scope limited by Blank Rome-signed stipulation |
| Jan. 5, 2026 | **Krasner FAFO inauguration speech; Plaintiff boos Krasner at ceremony** | KRASNER-1 (B) | Protected political speech immediately precedes arrest; DA announces FAFO posture |
| Jan. 8, 2026 | **Williamson: 'We Will Be Coming In' email (CC: Weisgold); Krasner FAFO press conference; Pittman bench warrant hearing** | Y-5 (B); KRASNER-2 (B) | Three simultaneous pressure vectors; coordinated enforcement evident |
| Jan. 9, 2026 | **Williamson threatens police visit on video** | Y-1 (B) | Advance coordination by private actor day before arrest |
| Jan. 10, 2026 | **ARREST 2 — Killman/Davis — Contempt + Terroristic Threats; Krasner posts 'FAFO'** | Docket2 (A); Exh. X (B) | Second retaliatory arrest; DA celebrates on social media same day |

| | | | |
|---|---|---|---|
| Jan. 10, 2026 12:15-12:20 PM | **Police forced entry; Williamson appears 5 min later announcing 'joint effort'** | Y-2 (B) | Lugar joint-actor sequence documented on video |
| Jan. 13, 2026 | **DA Corrigan files motion naming Sulman material witness; suppressed ~20 days** | Exh. K (A) | Brady violation; Sulman witness status documented by DA |
| Jan. 29, 2026 | **Sulman files own recusal/continuance in Case -0640 (91 days post-recusal, 16 days after DA named him witness); FAFO Coalition launch same day** | SA (A); Docket2 (A); KRASNER-3 (B) | Highest-value Tier A conspiracy anchor — simultaneous unauthorized judicial action + DA coalition launch |
| Jan. 29, 2026 | **Williamson email: 'We will exercise our right to enter within 24-28 hours' — warrant not created until Jan. 30** | Y-6 (B) | Williamson pre-warrant knowledge; advance coordination with prosecution |
| Feb. 2, 2026 | **ARREST 3 — Scarpello — 5 charges; filed 5 min after Brady disclosure in hallway** | Docket3 (A); Exh. K (A) | Third retaliatory arrest; timing of Brady disclosure = direct trigger |
| Feb. 7, 2025 | **Vidas: 'Because she got exclusive possession of the house' — on Wahl record** | Exh. C (A) | PFA void ab initio — adverse admission by opposing counsel |
| Mar. 10, 2026 | **DVU Judge Fanning arrested for strangulation/aggravated assault** | PFA (A) | PFA issuing authority arrested for same category of conduct — impeaches predicate instrument |

## SECTION 3 — PRIORITY-RANKED PENDING ACTION REGISTER

Actions ranked HIGH must be completed before the specified deadline. MED actions are important but not immediately deadline-governed. LOW actions are identified opportunities not yet pursued. Each action is anchored to specific exhibits.

| PENDING ACTION | DEADLINE | PRIORITY | EXHIBIT(S) IMPLICATED |
|---|---|---|---|
| **Palmer recusal motion — Cipriani Inn VP conflict** | BEFORE Apr. 2 | **HIGH** | Docket2 (SA + Palmer calendar entry); Cipriani Inn documentation |
| **Prepare for Apr. 2 waiver trial — Case -0640 threshold issues FIRST** | Apr. 2, 2026 | **HIGH** | Exhs. C, K, SA, Docket2, PFA, Stip — void predicate argument before testimony |
| **Forensic chain-of-custody certification — Tier C recordings (H, J, Goldstein)** | Before trial admission | **HIGH** | Exhs. H, J, Goldstein — all Tier C; forward originals to examiner |
| **Rule 600 speedy trial motion — Case -0015343 (longest-running clock)** | ASAP | **HIGH** | Docket1 (Aug. 19, 2025 complaint date; Joint Continuance Feb. 2 tolling issues) |
| **Sworn affidavit from Brandon Fake re: 2005 Sulman recording** | Before use in any filing | **HIGH** | Tier D — cannot characterize tape contents without Fake affidavit first |
| **Vacate contested Apr. 28 MHE order — emergency motion (Kearney Tier A confirmation)** | Before Apr. 28 | **HIGH** | Exh. K (Sulman witness status = same actor ordering MHE); Kearney written confirmation (Tier A) |
| **File clinical documents with Wahl — exploit Piscopo estoppel window** | Before Jun. 4 | **HIGH** | McFadden (A); Haimovich, Kory (Tier B pending); Mar. 7 Wahl/Piscopo estoppel |
| **Rule 3.7 disqualification motion against Blank Rome — finalize for Wahl** | Before Jun. 4 | **MED** | Exhs. C, W, L-1, L-2, L-4 — Blank Rome conduct across all proceedings |
| **Rule 573 discovery demand before Sprecher — DA produced zero discovery** | ASAP | **MED** | All dockets — DA must produce; zero production since mid-August 2025 |

| | | | |
|---|---|---|---|
| **Pre-hearing subpoenas for June 4 Wahl hearing** | 60 days pre-hearing | **MED** | Exhs. C, L-1, L-2, U — Seguin, Capone, Leonard, Tobey, Piscopo, McFadden |
| **Motion to strike Krohner / Arcari — finalize v5 FINAL** | Before Jun. 4 | **MED** | Arcari letter (Mar. 6 Bouvier/Mattioni — Arcari NEVER made attributed statement); Krohner billing (font color fabrication) |
| **Track 2 complaint service on all defendants** | Filed Mar. 24 | **MED** | All Tier A exhibits already filed with complaint |
| **Swear supporting affidavit for each Tier B exhibit (L-4, W, X, Y series, Z-3, Z-5)** | Before trial admission | **MED** | Each Tier B exhibit listed in Binder 2 |
| **IDEA federal parental rights track — Calvin's cochlear implant** | No current deadline | **LOW** | Completely untouched federal avenue; Calvin medical records needed |
| **IRS Whistleblower / False Claims Act — Krohner billing fraud to federal insurer** | No current deadline | **LOW** | Krohner billing (three sessions different font color = fabrication) |

## SECTION 4 — EVIDENCE GAPS & UPGRADE PATHS (TIER D → TIER B)

**The following intelligence items are currently Tier D (war room only). Each has an identified upgrade path to Tier B or Tier A. Do NOT reference these items in any court filing until the upgrade path is completed.**

### Financial Coordination Theory (Schillig / ATM Ready LLC)

CURRENT STATUS: Tier D — unsubstantiated financial corruption theory. UPGRADE PATH: Subpoena Blank Rome billing records (identified as single most important pressure point for early federal settlement); obtain ATM Ready LLC registration/transaction records; Schillig payment documentation. DO NOT file until Tier B documentary corroboration exists.

### Capone / 'Mr. Pete' / Albanian Clerk / 'Stacy' — Judge Selection

CURRENT STATUS: Tier D — identified actors, no documentary corroboration. UPGRADE PATH: Cipriani Inn public roster documents Tier B relationships; subpoena 11th floor access logs; obtain witness declarations from 'Mr. Pete' (witnessed Capone conduct June 19, 2025). Do not allege judge-selection coordination in filings until Tier B documentation obtained.

### Brandon Fake — 2005 Sulman Recording

CURRENT STATUS: Tier D — Fake possesses recording; cannot characterize contents without sworn affidavit. UPGRADE PATH: Obtain sworn affidavit from Brandon Fake (contact via Third Circuit Case No. 25-1798). SCOTUS cert No. 17-7184 is public record and may be cited. Recording content cannot be described until Fake affidavit obtained.

### AI-Assisted Pattern Analysis

**HARD STOP: Prior transcript creates credibility vulnerability. NEVER reference AI-assisted analysis in court filings or proceedings. All pattern analysis must be recharacterized as Plaintiff's independent observation or supported by independently authenticated documentary evidence.**

## SECTION 5 — TIER DISCIPLINE QUICK REFERENCE

| TIER | DEFINITION | ADMISSION STANDARD | ACTION ON DISCOVERY |
|---|---|---|---|
| **TIER A** | Certified transcripts, signed court orders, docket entries, government filings | Self-authenticating / Fed. R. Evid. 901 / Judicial notice 201(b) | FILE IMMEDIATELY — attach to every relevant motion; cite with transcript page/line or docket entry number |
| **TIER B** | Authenticated business records, public rosters, platform data, news articles, signed correspondence | Affidavit of custodian or authenticating | FILE WITH SWORN AFFIDAVIT — swear affidavit identifying document, date, and your basis for authentication before filing |

| | | | |
|---|---|---|---|
| | | witness required for trial admission | |
| **TIER C** | Audio/video recordings — original files, no forensic certification yet | SHA-256 forensic chain-of-custody certification required before trial admission | PRESERVE AND CERTIFY — do not copy or transfer originals; forward to forensic examiner for chain-of-custody certification; content corroborated by Tier A |
| **TIER D** | Intelligence, hearsay, unverified theories, AI-assisted analysis | NEVER FILE — war room strategy only | DOCUMENT UPGRADE PATH — identify what documentary evidence would elevate to Tier B. Never reference in court filings or proceedings in any form. |