**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CHAD MARK FRANCO FERRARI, Plaintiff,**
v.
**DANIEL LEONARD, et al., Defendants.**

Civil Action No. 2:26-cv-01866-GAW
Hon. Gail A. Weilheimer, U.S.D.J.

---

# PLAINTIFF'S EMERGENCY MOTION TO ENJOIN BAD-FAITH STATE PROSECUTIONS

**UNDER 42 U.S.C. 1983, Dombrowski v. Pfister, AND Mitchum v. Foster**

With Alternative Petition for Removal Under 28 U.S.C. 1443(1)

## I. WHAT THIS MOTION ASKS

Plaintiff asks this Court to enjoin three state criminal prosecutions -- MC-51-CR-0015343-2025, MC-51-CR-0000640-2026, and CP-51-CR-0004295-2026 -- because they were brought and are maintained in bad faith to punish him for exercising First Amendment rights and for filing this action. The prosecuting attorney is a defendant in this case. The judge who produced the arrests has confessed the coordination under oath. The DA's own supervisors have told a federal judge the office is conflicted. This is the case *Dombrowski* was written for.

## II. THE FEDERAL RIGHTS AT STAKE

This motion rests on the following federal rights, each independently sufficient:

(1) **42 U.S.C. 1983** -- deprivation of rights under color of state law. The prosecutor, the police officers who executed the arrests, the court staff who monitored Plaintiff's social media, and the sheriff's deputies who removed him from the courthouse are all state actors.

(2) **42 U.S.C. 1985(2)** -- conspiracy to obstruct justice in federal court. The CR3 "retaliation" charge, filed after Plaintiff sued the prosecutors in this Court, is an effort to

"deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying." 1985(2), cl. 1.

(3) **42 U.S.C. 1985(3)** -- conspiracy to deprive equal protection. Williamson's texts -- "my jewish sister Julie," "We stick together" -- and the coordinated eviction, arrests, and prosecution establish class-based animus toward Plaintiff as a Catholic father and political dissenter. *Griffin v. Breckenridge,* 403 U.S. 88 (1971).

(4) **42 U.S.C. 1986** -- neglect to prevent. Every official who knew of the 1985 conspiracy and had power to prevent it -- including the judges to whom recusal was presented -- is liable for failing to act.

(5) **First Amendment** -- petition, speech, and press. Recording a public proceeding (*Fields*), filing a federal lawsuit, and publishing on Substack are protected. Each was followed by a charge or arrest.

(6) **Second Amendment via 18 U.S.C. 922(g)(8)** -- a PFA entered without the notice and hearing 922(g)(8)(A) requires cannot lawfully impose the federal firearm disability. *Rahimi,* 602 U.S. 680.

(7) **Fourth Amendment** -- three custodial arrests on warrants issued from proceedings Plaintiff was never served with. A warrant issued on a listing the defendant had no notice of is not supported by the "reasonable notice" the Fourth Amendment requires before a bench warrant. *Wilson v. Russo,* 212 F.3d 781, 786 (3d Cir. 2000). Separately: Detective Leonard seized Plaintiff's phone June 18, 2025; the search warrant was not executed until July 2, 2025; Leonard accessed the device in the interval, on audio. *Riley v. California,* 573 U.S. 373 (2014). The recording that is the entire basis of CR1 was obtained by a warrantless search of the device that recorded it.

(8) **Fourteenth Amendment -- procedural due process** -- the MHE order entered at an unrecorded, unnoticed listing without the 50 P.S. 7402(d) hearing, and vacated for that reason; the PFA served on a third party, held, and backdated; the 180-day prompt-trial deadline exceeded without extension.

(9) **Fourteenth Amendment -- substantive due process, family integrity** -- the custody blackout since Christmas Eve 2024, built on a fabricated diagnosis the treating physician disavowed. *Troxel v. Granville*, 530 U.S. 57 (2000).

(10) **18 U.S.C. 241 and 242** -- conspiracy against rights and deprivation of rights under color of law. Plaintiff does not assert a private cause of action under these criminal statutes; he cites them because the conduct described here is the conduct they criminalize, and because they inform the bad-faith analysis under *Dombrowski*.

## III. THE LAW OF ABSTENTION

*Younger v. Harris*, 401 U.S. 37 (1971), directs federal abstention from state prosecutions -- except where the prosecution is "brought in bad faith or is only one of a series of repeated prosecutions to which [the defendant] is being subjected." Id. at 49; *Dombrowski v. Pfister,* 380 U.S. 479, 490 (1965). Section 1983 is an "expressly authorized" exception to the Anti-Injunction Act. *Mitchum v. Foster*, 407 U.S. 225, 243 (1972). The Third Circuit applies the bad-faith exception where the prosecution was initiated "to retaliate for or to deter constitutionally protected conduct." *Lewellen v. Raff*, 843 F.2d 1103, 1109 (8th Cir. 1988); *see Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994) (same). Retaliatory prosecution violates the First Amendment. *Hartman v. Moore*, 547 U.S. 250 (2006); *Nieves v. Bartlett*, 587 U.S. 391 (2019).

## IV. THE RETALIATORY TIMELINE

Each charge followed protected activity. The Commonwealth's own conduct supplies the causal link:

(1) **October 22, 2025 -- the quid pro quo.** The Commonwealth conditioned its ARD offer on Plaintiff abandoning his custody claims and his civil-rights claims against Judge Sulman. Plaintiff declined. The offer was withdrawn the same day. His attorney, contemporaneously recorded: "They can arrest you for no reason if they want to. It's that

bad." Ex. M. A prosecution offer conditioned on surrender of a federal civil-rights claim is bad-faith harassment as a matter of law. *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974); *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).

(2) **February 2, 2026 -- arrest for announcing intent to sue.** Plaintiff told Defender Association staff, in the courthouse, that he intended to sue the City and Judge Sulman. Minutes later he was arrested on CR2. The Commonwealth's own email acknowledges the arrest. Ex. C. The CR2 predicate had been manufactured: PFA served on Plaintiff's mother December 11, 2024, held until January 8, 2025, violation dated December 24. Ex. H.

(3) **March 23, 2026 -- the federal suit; then the "retaliation" charge.** Plaintiff filed this action naming Corrigan, Krasner, and Zakeosian. After filing, the Commonwealth brought CR3: "retaliation against a prosecutor," 18 Pa.C.S. 4953.1 -- against the person who had just sued the prosecutors. *Blackledge v. Perry*, 417 U.S. 21, 28 (1974) (charge escalation after defendant exercises a legal right raises a presumption of vindictiveness).

(4) **June 18, 2025 -- the recording charge.** Plaintiff recorded a hearing at which the court's own reporter was monitoring his Instagram -- a fact Judge Sulman stated on the record. *Fields v. City of Philadelphia*, 862 F.3d 353 (3d Cir. 2017). Charged two months later. Ex. A.

**The bridge to the DA's office.** On January 13, 2026, ADA Corrigan filed a motion in MC-51-CR-0015343-2025 designating Judge Sulman a material witness. The DA reached into the family case to name the recused judge -- the same judge who, five months later, testified under oath that he had contact with Williamson and Weisgold (Ex. E). The family-court coordination and the criminal prosecution share an actor: Corrigan named Sulman; Sulman confessed the coordination; Corrigan prosecutes the man who exposed it.

## V. BAD FAITH -- SEVEN FACTS FROM THE STATE SYSTEM'S OWN RECORDS

**1. The DA's own supervisors say the office is conflicted.** July 20, 2026, ADAs Ernst and Wildberger, Notice of Conflict, EDPA (Diamond, J.): the DAO "has at least an apparent conflict of interest" and "should not be representing the Respondents"; Krasner warned of "consequences." ADA Mason resigned June 2 rather than participate; testified she was told to "protect the office." Ex. D.

**2. The recused judge confessed the coordination under oath.** June 29, 2026, CR3 preliminary hearing: former Judge Sulman -- recused October 30, 2025 -- testified he had contact with both Williamson and Weisgold. Ex. E. Eleven months earlier, on July 14, 2025, Blank Rome attorney Piscopo had volunteered, unprompted: "Blank Rome has never paid off a judge in this Court." Ex. I.

**3. The prosecutor is a defendant here.** Corrigan served June 29, 2026. Response due July 20. In default 43 days. On August 18 he wrote to Judge Sprecher that Plaintiff "was unable to abide by the conditions of the program" -- when the Commonwealth withdrew ARD before any enrollment. Ex. C. Represented by ADA Nelson, a subordinate of co-defendant Krasner. *Young v. Vuitton*, 481 U.S. 787 (1987).

**4. The evidence was fabricated.** Blank Rome filed nine sworn representations that Plaintiff had bipolar disorder requiring inpatient treatment. The treating physician, May 16, 2025: "At no point was bipolar disorder the diagnosis." Ex. N. The MHE competency order built on that fabrication was requested by the DA -- Johnson on the May 21 record: "it was Mr. Corrigan who brought that up. And that's how it got ordered" (Ex. O) -- and vacated by Judge Sprecher April 24, 2026 because the statutory hearing never occurred. Ex. B.

**5. The state recusal mechanism is broken.** Judge Roberts, presiding over the landlord's civil case, has denied recusal three times in the Zantac litigation on the identical ground -- his wife's

partnership at the adverse firm -- calling it "ridiculous" and "unreasonable." That denial is on appeal to the Superior Court now. Ex. F. His wife joined Blank Rome in February 2025, one month after the Christmas Eve eviction, as a healthcare litigation partner; she chaired this Court's Merit Selection Panels through 2024. Ex. G.

**6. The defective PFA imposed a federal constitutional disability without process.** A Pennsylvania PFA under 23 Pa.C.S. 6108 triggers the federal firearm prohibition of 18 U.S.C. 922(g)(8). *United States v. Rahimi,* 602 U.S. 680 (2024), upheld that prohibition -- but only for orders entered "after a hearing of which such person received actual notice, and at which such person had an opportunity to participate." 922(g)(8)(A). PFA3 was served on Plaintiff's mother December 11, 2024, held until January 8, 2025, with the violation dated December 24 (Ex. H). Plaintiff had no notice and no hearing before the order that stripped him of a constitutional right and became the predicate for CR2. A state order that imposes a federal disability without the notice 922(g)(8)(A) requires is void as applied; a prosecution for violating it is a prosecution for violating a nullity. This is not a Second Amendment claim on its own terms -- it is proof that the CR2 predicate lacks the process the federal statute itself demands. The same defective order left Plaintiff unable to lawfully possess a firearm during the period in which he was arrested three times on process he was never served with.

**7. The recused judge kept directing the case.** Sulman was recused October 30, 2025. On January 15, 2026 -- seventy-seven days later -- Marco Capone, head of judicial clerks at the 11th-floor intake at 1501 Arch Street, refused to accept Plaintiff's filing, called the sheriffs, and consulted Judge Sulman before refusing. On January 29, 2026 -- ninety-one days post-recusal -- Sulman self-assigned a listing in the family case and re-recused the same day. A judge who is recused does not get consulted on whether a litigant's filings are accepted, and does not assign

himself listings. That he did both, after recusal, and then testified under oath in June to contact with the landlord and the landlord's lawyer, is the through-line of this motion: the recusal was on paper; the control was not.

## VI. THE PROSECUTIONS ARE SHAMS -- NOT MERELY RETALIATORY

*Dombrowski* requires more than retaliatory motive; it requires that the prosecution lack a genuine expectation of conviction or be maintained for a purpose other than conviction. Three facts show the Commonwealth is not prosecuting to convict:

(1) **CR1 has never been listed for trial in 378 days.** The Commonwealth's own August 18 email states: "The matter is not scheduled for trial." Ex. C. This is not resource constraint: the same office found time to file the Jan 13 material-witness motion, the Jul 13 administrative continuance, the Aug 18 opposition, and the Sept 1 federal extension request. It has resources to litigate; it has chosen not to try. A prosecution that has not sought trial in over a year, with no extension under Rule 1013(C)(1), is not being prosecuted -- it is being held.

(2) **The ARD offer was withdrawn when Plaintiff refused to drop civil claims -- not because of any conduct related to the charge.** The condition had nothing to do with the alleged offense. Its purpose was leverage in the family and federal cases. Ex. M. A prosecution used as leverage in unrelated litigation is the definition of a sham.

(3) **Discovery ordered May 21, 2026 has never been produced.** The warrant affidavit and affiant identity in CR1 were demanded in August 2025, ordered by Judge Sprecher May 21, 2026, acknowledged outstanding at the July 30 CR3 pretrial conference, and remain unproduced. A Commonwealth prepared to convict produces its warrant. This one has not, in thirteen months.

These are not arguments. They are the docket. The Commonwealth cannot say it intends to try a case it has not listed, on evidence it has not produced, after conditioning its own diversion offer on the surrender of federal claims.

## VII. MIDDLESEX -- WHY ABSTENTION FAILS ELEMENT BY ELEMENT

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982), requires (1) ongoing state proceedings, (2) implicating important state interests, (3) affording an adequate opportunity to raise federal claims. Bad faith vitiates all three:

(1) **Ongoing proceedings:** CR1 exceeded its 180-day prompt-trial deadline February 16, 2026 -- 198 days ago -- with no extension sought. A Rule 1013(E) discharge motion is pending. Proceedings that should have terminated by operation of law are not "ongoing" in the sense *Middlesex* contemplates.

(2) **Important state interest:** The state has no legitimate interest in a prosecution its own supervisory ADAs have declared conflicted (Ex. D), brought by a prosecutor in default in the federal case arising from it (Ex. C), on a predicate manufactured by backdated service (Ex. H).

(3) **Adequate opportunity:** Plaintiff has sought recusal from eleven judges; five or more denials. The presiding criminal judge orally declared all delay "excludable" without findings. The CCP judge has three appealed recusal denials on the identical ground and calls the concern "ridiculous" (Ex. F). There is no adequate state forum.

## VIII. REQUEST FOR EVIDENTIARY HEARING

Bad-faith findings require record evidence. Plaintiff proffers live testimony from: former Judge Daniel Sulman (coordination with Williamson and Weisgold, already sworn June 29); Michelle Piscopo, Esq. (the unprompted July 14, 2025 denial, Ex. I); the Defender Association attorney present February 2, 2026 (Plaintiff's statement of intent to sue, followed by arrest); ADA Vincent

Corrigan (the January 13 material-witness designation; the August 18 ARD statement); Marco Capone (the January 15 consultation with Sulman before refusing Plaintiff's filing); and Detective Daniel Leonard (pre-warrant device access, June 18 to July 2, 2025). Plaintiff requests a hearing within 14 days.

## IX. ALTERNATIVE -- REMOVAL UNDER 1443(1)

In the alternative, Plaintiff petitions for removal of CR2 and CR3 under 28 U.S.C. 1443(1). These two dockets are the retaliation counts: CR2 rests on a manufactured PFA predicate (Ex. H); CR3 charges "retaliation against a prosecutor" against the person who sued the prosecutors. *Georgia v. Rachel,* 384 U.S. 780 (1966) (removal proper where "the prosecution itself is the instrument of denial"). Plaintiff acknowledges the *Peacock* standard and does not seek removal of CR1, which is separately subject to the pending Rule 1013(E) discharge motion.

## X. RELIEF

(1) Enjoin the Commonwealth from proceeding in MC-51-CR-0015343-2025, MC-51-CR-0000640-2026, and CP-51-CR-0004295-2026 pending resolution of this action;

(2) In the alternative, accept removal of MC-51-CR-0000640-2026 and CP-51-CR-0004295-2026 under 1443(1) and stay those proceedings under 1446(d);

(3) Set an evidentiary hearing on bad faith within 14 days;

(4) Take judicial notice of Exhibits A through R;

(5) Grant such other relief as this Court deems just.

**This is not a separate case.** This motion, the contemporaneous TRO against Defendant Williamson, and the disqualification motion pending before Judge Roberts in CCP No. 260303340 describe one coordinated deprivation across three fora. The same actors -- Sulman,

Williamson, Weisgold, Blank Rome, Corrigan -- appear in each. The Court is asked to see them as one.

**EXHIBIT INDEX**

| Ex. | Document | Proves |
|---|---|---|
| A | CPCMS Docket, MC-51-CR-0015343-2025 (current) | Arraignment date, all listings, no (C)(1) petition |
| B | Sprecher Order, April 24, 2026 | MHE order VACATED under 50 P.S. 7402(d) |
| C | Corrigan email, Aug. 18, 2026, 3:39 PM | False ARD statement; acknowledges Jan 10 and Feb 2 arrests |
| D | Ernst/Wildberger Notice of Conflict, July 20, 2026, EDPA (Diamond, J.) | DA office "has at least an apparent conflict"; Krasner threatened "consequences" |
| E | CR3 Preliminary Hearing Transcript, June 29, 2026 (certified copy ordered; Plaintiff was present) | Sulman under oath: contact with Williamson AND Weisgold |
| F | Roberts Zantac Recusal Order, April 15, 2026; Keller Postman Notice of Appeal, April 23, 2026 | Three denials on spouse's-firm ground; "ridiculous"; Superior Court pending |
| G | Blank Rome press release, Feb. 4, 2025; Chambers profile | McClure joined Feb 2025; healthcare specialty; EDPA Merit Selection Chair 2020-24 |
| H | DeFinis PFA service documents | Served Dec 11, 2024; held to Jan 8, 2025; violation dated Dec 24 |
| I | Sulman Hearing Transcript, July 14, 2025 (certified), pp. 30-31 | Piscopo unprompted: "Blank Rome has never paid off a judge" |
| J | Weisgold email, Aug. 20, 2026, 1:10 PM, with 8 CCP orders | "There is no stay of execution" |
| K | Williamson text messages (Ex. E to Aug. 31 stay motion) | "my jewish sister Julie"; "We stick together" |
| L | Weilheimer Dkt. 22 (sealed) and Dkt. 26 (Corrigan extension, Sept. 1, 2026) | Selective attention pattern |
| M | Goldstein recording, Oct. 22, 2025 (SHA-256 authenticated) | "They can arrest you for no reason if they want to" |
| N | McFadden email, May 16, 2025 | "At no point was bipolar disorder the diagnosis" |
| O | Sprecher Hearing Transcript, May 21, 2026 (Goffredo, certified, in hand) | Johnson: "it was Mr. Corrigan who brought that up" (MHE); Sprecher: "we already did that" (vacatur) |
| P | Control Order 74, Aug. 20, 2026 (Roberts) | "no writ of possession shall issue" only until the Sept. 4 trial |
| Q | Aug. 18, 2026 motions (1013(E) discharge + continuance) with Rule 576 service | Prompt-trial rights preserved in writing; Commonwealth response at Ex. C |
| R | Weisgold Response to Recusal, June 4, 2026 | "arrested at least three times"; Penn/Larry Weilheimer admission; "never met Judge Garcia" |

Respectfully submitted,

**Chad Mark Franco Ferrari**
Plaintiff, Pro Se
1119 Wallace Street, 1st Floor, Philadelphia, PA 19123

(215) 483-1985 | chadferrari@me.com
Dated: 9/2/26, 2026

**PROPOSED ORDER**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CHAD MARK FRANCO FERRARI, Plaintiff,**
v.
**DANIEL LEONARD, et al., Defendants.**

Civil Action No. 2:26-cv-01866-GAW
Hon. Gail A. Weilheimer, U.S.D.J.

---

AND NOW, this ______ day of ________________, 2026, upon consideration of Plaintiff's Emergency Motion to Enjoin Bad-Faith State Prosecutions, it is ORDERED:

(1) The Court finds, on the record presented, that the state prosecutions in MC-51-CR-0015343-2025, MC-51-CR-0000640-2026, and CP-51-CR-0004295-2026 present a substantial question of bad faith under *Dombrowski v. Pfister* sufficient to warrant an evidentiary hearing.

(2) The Commonwealth of Pennsylvania, the Philadelphia District Attorney, and their agents are ENJOINED from proceeding in the above-captioned state prosecutions pending further order.

(3) An evidentiary hearing is scheduled for _______________, 2026, at ______ AM/PM.

BY THE COURT:

________________________________
Hon. Gail A. Weilheimer, U.S.D.J.

**CERTIFICATE OF SERVICE**

I certify that on 9/2, 2026, I filed the foregoing via CM/ECF and served copies by email on: ADA Vincent Corrigan (vincent.corrigan@phila.gov); ADA Steven Nelson (steven.nelson@phila.gov); Dean Weisgold, Esq. (dean@weisgoldlaw.com); Scott Sigman, Esq. (scott@scottsigman.com); J.R. Deiley (jr.deiley@courts.phila.gov); and the Clerks of the Municipal Court and Court of Common Pleas of Philadelphia County.

Respectfully submitted,

**Chad Mark Franco Ferrari**
Plaintiff, Pro Se
1119 Wallace Street, 1st Floor, Philadelphia, PA 19123
(215) 483-1985 | chadferrari@me.com
Dated: 9/2, 2026