**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CHAD MARK FRANCO FERRARI,
Plaintiff,

Civil Action No. 2:26-cv-01866-GAW
Hon. Gail A. Weilheimer

v.

DANIEL LEONARD, et al.,
Defendants.

# PLAINTIFF'S SUPPLEMENT TO HIS EMERGENCY MOTION TO ENJOIN BAD-FAITH STATE PROSECUTIONS (ECF 29) AND MOTION FOR AN EXPEDITED EVIDENTIARY HEARING, FOR PROCESS TO SECURE THE ATTENDANCE OF SIX WITNESSES, AND TO CORRECT THE RECORD

*Dombrowski v. Pfister, 380 U.S. 479 (1965); Kugler v. Helfant, 421 U.S. 117 (1975); Cain v. Darby Borough, 7 F.3d 377 (3d Cir. 1993) (en banc); Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700 (3d Cir. 2004); Fed. R. Civ. P. 26(d)(1), 43(c), 45, 52(a)(2), 65; Fed. R. Evid. 502(c)–(d)*

## I. WHAT HAS CHANGED SINCE ECF 29 WAS FILED

1. On September 8, 2026 — six days after ECF 29 was filed — the Office of Attorney General of Pennsylvania, appearing as amicus in *Johnson v. Nickelson*, No. 2:15-cv-04965 (E.D. Pa.) (Diamond, J.), filed Proposed Findings of Fact and Conclusions of Law asking that the Philadelphia District Attorney's Office be disqualified from that case. Plaintiff has not yet obtained the CM/ECF copy and pleads its contents only as reported the same day by the journalist who has covered those hearings (Exhibit B). As so reported, the Attorney General submits that the District Attorney "has an actual conflict of interest"; that he "placed his personal interest in protecting the office above the Commonwealth's interest"; that the assistant assigned to Judge Diamond's courtroom was there "to protect the office, to essentially, like, object if someone said something bad for the office" and "should not do any investigation"; and that he "repeatedly threaten[ed] 'consequences' — clearly including termination — for attorneys who did not follow his instructions." That submission followed the Notice of Conflict of two supervisory

Assistant District Attorneys, Steven J. Wildberger and Katherine E. Ernst (Exhibit A), and three evidentiary hearings before Judge Diamond in July and August 2026. That is the Attorney General's reported position in another case; Judge Diamond has not ruled, and nothing in *Johnson* decides anything about Plaintiff's dockets. Plaintiff will file the CM/ECF copy by notice when obtained and asks the Court to notice only its existence and contents as a filing, Fed. R. Evid. 201, not the truth of any disputed matter in it.

2. ECF 29 asks this Court to enjoin three prosecutions by the same Office — MC-51-CR-0015343-2025 and CP-51-CR-0004295-2026 (Hon. Jeffrey K. Sprecher, specially assigned) and MC-51-CR-0000640-2026 (Hon. Christopher P. Mallios) — under the bad-faith exception to *Younger v. Harris*, 401 U.S. 37, 49 (1971), and requests an evidentiary hearing. Plaintiff's March 30, 2026 motion in state court to disqualify the Office and refer his dockets to the Attorney General under 71 P.S. § 732-205, and his July 22, 2026 Notice of Conflict and referral motion (Exhibit E), have not, to Plaintiff's knowledge, been decided; the Commonwealth has filed no response to the July 22 Notice in the forty-nine days since. (Judge Sprecher's April 24, 2026 order listed certain motions for May 21, 2026, and some were addressed or withdrawn that day; the July 22 Notice post-dates that listing.) Plaintiff's renewed § 455 disclosure motion was docketed September 8, 2026 (ECF 31). The state listings are September 14 (status, 11:00 a.m., Room 806) and September 24 (waiver trial). This supplement (a) places the Attorney General's reported submission and the Office's own supervisors' Notice before the Court; (b) corrects and sharpens the factual record with Plaintiff's declaration, which is confined to what he personally did, saw, received, and heard; (c) asks the Court to set a focused hearing and issue the process needed to put six witnesses under oath on facts that no document can resolve; (d) gives

notice of the institutional claim he will plead by amendment (Part V); and (e) corrects specific statements in ECF 29 (Part VI).

## II. THE FACTS THAT REQUIRE TESTIMONY

3. The *Dombrowski* inquiry is whether a prosecution is maintained "in bad faith" or "for the purpose of harassment," *Perez v. Ledesma*, 401 U.S. 82, 85 (1971), including where charges or their disposition are used to punish or extract the surrender of protected litigation. Plaintiff acknowledges that *Kugler*, 421 U.S. at 124–31, confines the exception narrowly and that the Court may decide a Rule 65 motion on papers, Fed. R. Civ. P. 43(c). He asks for testimony because the dispositive facts are communications made to him by lawyers about what prosecutors said, and communications among prosecutors, appointed counsel, and clinic staff that exist only in those persons' knowledge and files. Those facts are these.

4. **Disposition conditioned on abandoning litigation.** Plaintiff's declaration (¶¶ 6–12) sets out that in August 2025 his then-counsel, Adam Yee, Esq., in conversations about an outstanding warrant, possible arrest, an apology letter to the District Attorney's Office, and Accelerated Rehabilitative Disposition, linked Plaintiff's continued family-court litigation and federal claims to the prospect of ARD, and relayed that ADA Zakeosian had said, in substance, that had Plaintiff stayed silent about the seizure of his phone and his rights he would not have been arrested and would eventually have had the phone returned, and that because Plaintiff had brought attention to it the prosecutor had to act, to "protect the system" (Decl. ¶ 6); that Mr. Yee thereafter did not respond to Plaintiff's calls and text messages for approximately six weeks (Decl. ¶ 7); that on or about October 1, 2025, outside a courtroom, his subsequent counsel, Zak T. Goldstein, Esq., told him in substance that dropping the proposed federal civil-rights case against former Judge Sulman and stopping his efforts to regain access to his children would

enable him to receive ARD; that on September 22, 2025 Mr. Goldstein told him by telephone that he had received a call from ADA Brett Zakeosian following Plaintiff's statements at a hearing that day, and said, in substance, that whether Plaintiff was right did not matter; that Plaintiff's records reflect an ARD discussion on or about September 19, 2025, and that no ARD was thereafter extended to him; and that on October 22, 2025, before the Honorable Leanne Litwin in D-24-118413, Plaintiff described a recording of his criminal defense attorney and, after the court's privilege advisement, stated on the record, "I 100 percent waive it" (N.T. 10/22/25 at 11:12–18, 12:1–15; Exhibit I) — and that about twenty minutes after Plaintiff emailed the recording to chambers and to opposing counsel at Blank Rome, Mr. Goldstein texted that he was withdrawing from the criminal case because of the recording (id. at 36:13–22; Decl. ¶ 11). Who told Mr. Goldstein of the recording, within minutes, is a question only he and the recipients of that email can answer. Plaintiff does not swear which of those communications was a formal offer of the Commonwealth as opposed to counsel's assessment; that is the first fact the hearing would settle. A release-dismissal or ARD condition that requires surrender of civil-rights claims is enforceable, if at all, only on a case-specific showing of public interest, *Town of Newton v. Rumery*, 480 U.S. 386, 392–98 (1987); *Cain v. Darby Borough*, 7 F.3d 377, 380–83 (3d Cir. 1993) (en banc) (ARD conditioned on release of § 1983 claims); a demand that a parent abandon custody litigation as the price of a criminal disposition requires explanation and a case-specific public-interest justification, and none has been identified in this record. Whether such a condition was conveyed, by whom, and on whose instruction is known to Mr. Yee, Mr. Goldstein, and ADA Zakeosian.

5. **The prosecutor's July 17, 2025 letter.** With Plaintiff's phone seized in a Family Division courtroom on June 18, 2025 and no warrant until July 2, 2025, ADA Zakeosian, signing

for the Special Investigations Unit and copying Detective Leonard, wrote to Plaintiff on July 17, 2025: "You are currently under criminal investigation. As both a prosecutor and a member of the bar, I must advise you that anything you say to me can be used against you in any criminal proceeding" (Exhibit D). A criminal complaint was sworn on August 1, 2025 (COM-0003938-2025), and charges were docketed in August 2025. On July 16 and 17, 2025 — the day before and the morning of that letter — Plaintiff had written to ADA Zakeosian asking whether the phone was "being held under any formal investigation," whether it had been accessed, and when it would be returned, and objecting that the courtroom cell-phone policy invoked for the seizure had first been handed to him on July 14 (Exhibit D-2). The "under criminal investigation" letter was the answer, sent two hours after Plaintiff's July 17 email attributing the new policy to "public transparency efforts and documented due process concerns." In August 2025 Plaintiff further wrote that he was reporting misconduct by court officers and understood himself protected from retaliation (Decl. ¶¶ 4–5). Plaintiff does not contend that his August letter preceded the complaint; the retaliation he alleges is in what followed — the conditions communicated through counsel and the events of 2026 — not in the complaint's creation.

6. **The March 2, 2026 examination order.** Plaintiff was out of state on March 2, 2026, had received no notice of the listing, learned of it informally the preceding Friday, and could not reach his assigned counsel, Brian Johnson, Esq., who had not returned his calls; he left a voicemail that morning asking that the matters be continued (Decl. ¶¶ 14–16). A Teams status conference proceeded without him. Mr. Johnson's own account, in writing on April 15, 2026 (Exhibit G), is that the conference "was not a recorded hearing"; that he "mentioned to the judge that I would be requesting a competency exam, which he requested a written order for"; and that

"[a]fter our discussion, I saw that there was an order entered for you to have a competency examination." On April 2, 2026, Mr. Johnson told Plaintiff in a hallway that he had been asked to submit an examination order and had not done so (Decl. ¶ 19); on May 21, 2026 he told Judge Sprecher he "did not send any order" and "believe[d] it was Mr. Corrigan who brought that up" (Exhibit F-2, N.T. 5/21/26 at 18–19). ADA Corrigan, the same day, said he had first seen the vacatur the previous day and denied involvement in the clinic's rescheduling (id. at 38, 42–43) — a denial addressed to the rescheduling, not to the origin of the order. Joseph Kearney of the Office of Court Reporters, Digital Recorders, & Interpreters wrote to Plaintiff on March 3, 2026 that he "didn't see any audio files or logs yesterday in 406," that the docket showed "an out of county Judge" and that the matter "was handled on Microsoft teams," and that "I'm not sure if an actual record was taken down for that" (Exhibit J). (Mr. Johnson's April 15 email refers to MC-51-CR-1972-2026, a docket not among the three at issue in ECF 29; Plaintiff notes the discrepancy and does not rely on it.) Judge Sprecher vacated the order on April 24, 2026 because no hearing under 50 P.S. § 7402(d) had been held (Exhibit F-1). Four days later the clinic supervisor, copying ADA Corrigan, scheduled Plaintiff's evaluation for May 21 (Exhibit H), and on May 21 the clinic representative was present and was excused "since this order is also vacated" (Exhibit F-2 at 38:8–14). On May 12, 2026 Plaintiff had written to ADA Corrigan and the District Attorney objecting to the evaluation (Decl. ¶ 19) — notice of his objection, not proof of what Corrigan then knew of the vacatur. Section 7402 of the Mental Health Procedures Act permits an application by the Commonwealth, the accused, or counsel, or action by the court on its own motion, 50 P.S. § 7402(c)–(d); but where the accused or counsel objects, the court must hold a hearing and make a prima facie finding of incompetency before ordering an examination, § 7402(d), and the examination itself carries the protections of § 7402(e)(3). Plaintiff objected to

counsel in February; no hearing was held; Judge Sprecher so found. What remains unresolved is who applied under § 7402(c) or whether the court acted on its own motion, who drafted and transmitted the order, when each participant received the vacatur, and why the clinic scheduled a further appointment after it — questions Mr. Johnson's account (origin) and ADA Corrigan's account (rescheduling) each leave open. Matthew T. Nelson, Esq., Mr. Johnson's supervisor, raised a mental-health inquiry with Plaintiff on February 2, 2026 while stating he had not yet spoken to the prosecutor (Decl. ¶ 13). Those are questions for examination, not inference.

7. **Listing without an assigned judge.** Plaintiff's declaration (¶ 20) sets out what he observed on the public dockets: no judge was identified on the criminal docket for the March 2, 2026 listing until after the examination order had issued, as none was identified for the January 29, 2026 listing at which his matter was called before the recused former Judge Sulman, or for the March 12–13, 2026 Landlord-Tenant listing before Judge DiCicco. Plaintiff does not ask the Court to infer coordination from that observation; he asks for the dated docket versions, assignment records, and Teams invitation and attendance records that will show who set each listing and when.

8. **A prosecutor who is a party, and an Office that will not answer.** ADA Corrigan is a defendant here; his response, twice extended (ECF 19, 26), is due September 14, 2026 — the day of the state listing. He moved on January 13, 2026 to have Plaintiff's matters heard by an out-of-county judge and identified former Judge Sulman as a witness (Exhibit C); that motion, served on the Defender Association, was first shown to Plaintiff by Mr. Nelson on February 2, 2026, minutes before Plaintiff's arrest that day (Decl. ¶ 13). The Office's own supervisors have stated in this courthouse that the District Attorney "and in turn the DAO, has at least an apparent conflict of interest" and that they "repeatedly implored" him to refer a matter to the Attorney

General (Exhibit A); the Attorney General's submission, as reported (Exhibit B), characterizes the District Attorney's refusals to refer as reflecting "personal animus, not the interests of the Commonwealth." Plaintiff asked the same Office for the same referral on March 30 and July 22, 2026. It has not answered the July 22 Notice.

## III. THE COURT SHOULD HEAR THE WITNESSES — AND WHY *KUGLER* DOES NOT FORECLOSE IT

9. Rule 43(c) leaves the method to the Court, and a preliminary-injunction record may rest on affidavits and even hearsay, weighed in context; but where the decision turns on a disputed issue of fact, a hearing is ordinarily appropriate. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 718–19 & n.16 (3d Cir. 2004); *cf. Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175–76 (3d Cir. 1990) (no hearing required where the theory fails as a matter of law or the facts are undisputed). Plaintiff does not contend that testimony is mandatory. He contends that the material facts — what prosecutors told defense lawyers about the price of ARD, and who put a competency order in front of a judge at an unrecorded conference the defendant did not attend — are peculiarly within the witnesses' knowledge, have been the subject of inconsistent accounts, and cannot be resolved on declarations from a plaintiff who was, by design, not in the room. Plaintiff meets *Kugler* directly. There the Court reversed a Third Circuit remand for a federal evidentiary hearing on coercion and a declaration about the admissibility of evidence in the pending state trial, 421 U.S. at 123–31 — the merits of the prosecution, for which state process was adequate. Plaintiff asks for nothing about the admissibility of any evidence in his criminal cases. He asks for a limited record on a *Dombrowski* claim already pending here, on institutional facts — who put an examination order before a judge at a conference the defendant did not attend, and whether a prosecutor priced a criminal disposition at the surrender of federal and custody litigation — that Plaintiff has put to the state court and the Commonwealth without

result: a March 30, 2026 motion to disqualify and refer; a May 21, 2026 listing at which some motions were addressed or withdrawn, the prosecutor stated he had filed no response to any of them, and the clinic was still present on the vacated order; and a July 22, 2026 Notice of Conflict and referral motion that the Commonwealth has not answered. *Kugler* also involved alleged coercion by state judges and asked whether state safeguards were adequate, 421 U.S. at 125–29; here the state safeguard that exists — the § 7402(d) hearing — was never afforded, and the vacatur that followed did not restore it. The present injury is not cured by the April 24 vacatur: no § 7402(d) hearing was ever held on the original directive; the clinic scheduled a further evaluation four days after the vacatur, copying the prosecutor and attributing the evaluation to the vacating judge (Exhibit H); on May 21 Plaintiff stated on the record that he had never received the April 24 order and that the prosecutor had sought to have him evaluated on April 28 and again that day (Exhibit F-2 at 40:11–25), a statement the Commonwealth did not answer; the July 22 referral notice stands unanswered; and the September 14 status listing and September 24 waiver trial proceed while the prosecutor-defendant's federal response is due September 14. *Younger* deference presupposes a state forum in which the federal question can be raised and decided, *cf. Gibson v. Berryhill*, 411 U.S. 564, 577 (1973); Plaintiff cites *Gibson* for that principle, not to equate unanswered motions with adjudicative bias. If the Court decides the injunction request without testimony, Plaintiff asks for findings and conclusions under Fed. R. Civ. P. 52(a)(2).

10. **Privilege and recordings.** Four witnesses are Plaintiff's former lawyers. The privilege is his, and he waives it for this proceeding as to communications concerning (a) the terms on which ARD or any disposition was offered, discussed, or withdrawn; (b) the return of his seized phone; (c) the March 2, 2026 examination order and any evaluation of him; and (d)

any statement by a prosecutor or court officer concerning his family-court litigation or this action. Plaintiff discloses that on October 22, 2025 he made an intentional, on-the-record statement of waiver in a state proceeding as to one recorded conversation with counsel (Exhibit I); the effect of that prior disclosure in this proceeding is governed by Fed. R. Evid. 502(c), not by any order entered now, and Plaintiff asks the Court to determine it. Prospectively, he asks for an order under Rule 502(d) confining any waiver in this proceeding to the four subjects above; he acknowledges the scope is for the Court and that his waiver does not reach any privilege or work-product protection belonging to another person. Plaintiff submits no audio recording or machine transcript with this filing, and asks that any question of the lawfulness, authentication, and completeness of such material be resolved before it is offered, if it is offered.

## IV. WITNESSES AND THE FACT EACH CAN RESOLVE

Plaintiff asks the Court to secure the attendance of the following witnesses, each on the subject stated, and estimates one court day for all six:

(a) **ADA Vincent Corrigan (Defendant)** — whether he raised, requested, drafted, or transmitted the March 2, 2026 examination order; when he first received the April 24 vacatur; his communications with the clinic between April 24 and May 21; the January 13, 2026 motion and its service; and any instruction received concerning Plaintiff's dockets. Records: his communications with the Defender Association and the clinic, January 13–March 3 and April 24–May 21, 2026; and certified copies of every arrest warrant, bench warrant, and warrant application or affidavit issued in MC-51-CR-0015343-2025, CP-51-CR-0004295-2026, and MC-51-CR-0000640-2026, with their issuance, service, and lift records, which Plaintiff has requested and has not been furnished (Decl. ¶ 21).

(b) **ADA Brett Zakeosian (named as a defendant in this action; not yet served; Plaintiff proceeds by Rule 45)** — the July 17, 2025 letter; the June 18 seizure and July 2 warrant; the charging decision; whether he communicated to Mr. Yee or Mr. Goldstein any condition on ARD concerning Plaintiff's family-court or federal litigation; and whether he received a communication from former Judge Sulman on or about September 22, 2025. Records: any ARD offer, condition, or withdrawal in September–October 2025; his communications with Mr. Yee (August 2025) and Mr. Goldstein (September 22–23, 2025); and, as to Plaintiff's phone seized June 18, 2025, the complete chain-of-custody record, the July 2, 2025 warrant (No. 25-71-000056(A)) with its application, affidavit, return, and inventory, every forensic-extraction or examination report, and the identity of each person who accessed, examined, or received data from the device and when — none of which has been furnished to Plaintiff (Decl. ¶ 21).

(c) **Adam Yee, Esq. (Sequoyah Defense)** — what ADA Zakeosian or Detective Leonard communicated to him in August 2025 about the warrant, an apology letter, ARD, Plaintiff's litigation, and whether Plaintiff's silence would have avoided arrest; who proposed the apology and non-disparagement concession; what he relayed to Plaintiff; and why he did not respond to Plaintiff's calls and messages for approximately six weeks thereafter, and whether any communication from the Office bore on that. Records: his August–October 2025 messages and call entries with the Office and with Plaintiff.

(d) **Zak T. Goldstein, Esq.** — what he told Plaintiff outside court about ARD, the Sulman civil-rights case, and Plaintiff's children; the September 22, 2025 call from ADA Zakeosian and its content; whether he was relaying a prosecutorial condition or giving his own assessment; and who informed him, on October 22, 2025, of the recording Plaintiff had that morning emailed to chambers and to Blank Rome, prompting his withdrawal by text within about twenty minutes. Records: call entries and messages of September 22–23 and October 22, 2025, including any communication from Blank Rome LLP or the District Attorney's Office that day, and the ARD offer and withdrawal.

(e) **Matthew T. Nelson, Esq. (Defender Association, supervisor)** — receipt and routing of the January 13, 2026 motion and its disclosure on February 2; the basis of the mental-health inquiry he raised that day and any communication of it to Mr. Johnson or the prosecution. Records: assignment and routing entries, January 13–February 18, 2026.

(f) **Brian Johnson, Esq. (Defender Association, assigned counsel)** — the meeting of on or about February 18 or 19, 2026; who attended the March 2 conference and who convened it; the notice sent to Plaintiff and the basis for treating his presence as waived; the examination request and any order he prepared or saw; the basis for his May 21 attribution to ADA Corrigan; and his March 3, 2026 emails reporting that ADA Corrigan had confirmed there were no warrants in Plaintiff's CJC matters — a documented communication with the prosecutor whose subject and extent are for examination. Records: the Teams invitation and attendance list, the proposed order and its submission history, and notice and transmission messages, February 18–March 3 and April 24–May 21, 2026.

Plaintiff proposes that the Court proceed in sequence: a focused response identifying which of these facts Defendants dispute; production of the narrow records identified above (the March 2 order and its submission history; transmission and receipt records for the April 24 vacatur; clinic scheduling records for April 24–May 21; the ARD communications of August–October 2025), with authorization under Fed. R. Civ. P. 26(d)(1) to the extent discovery has not opened and a seven-day period to produce or object with a privilege log, since the ordinary thirty days of Rule 34(b)(2)(A) would outrun the hearing; and then testimony from the witnesses whose firsthand knowledge the records do not supply. Defendant Corrigan may be

examined as an adverse party, Fed. R. Evid. 611(c). Plaintiff will testify and submit to cross-examination. He does not ask to compel the District Attorney and reserves that request.

## V. THE INSTITUTIONAL DIMENSION — CUSTOM, NOT A NEW PARTY

11. Plaintiff does not by this Supplement add a party or a claim; a supplement to a motion cannot amend a complaint, and Plaintiff will seek leave under Rule 15(a)(2) separately. He gives notice that the facts the hearing would establish bear on a claim he intends to plead by that amendment: that the constitutional injuries alleged in ECF 29 were caused by a custom of the District Attorney's Office, for which the City of Philadelphia answers under *Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 694 (1978). A municipality is liable when a practice, though not formally adopted, is "so permanent and well settled as to constitute a custom," *id.* at 691, and the Third Circuit recognizes custom proved by the policymaker's knowledge of and acquiescence in the practice, *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996); *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 584 (3d Cir. 2003). Whether the Office acts for the City or the Commonwealth is decided function by function, *Carter v. City of Philadelphia*, 181 F.3d 339, 352–53 (3d Cir. 1999); the single function Plaintiff would plead is administrative — the Office's decision whether to request that the Attorney General assume a matter in which its own conduct has been placed at issue, after being asked in writing to do so. A municipality has no absolute or qualified immunity, but the plaintiff must still prove policy or custom and causation, *Leatherman v. Tarrant County*, 507 U.S. 163, 166 (1993); *Van de Kamp v. Goldstein*, 555 U.S. 335, 344–49 (2009), which immunizes individual supervisors for administrative acts tied to trial preparation, does not reach the municipality and does not describe a referral decision. The First Judicial District, its court reporters and clinic, and

the Defender Association are not the City, *Benn v. First Judicial District*, 426 F.3d 233, 240–41 (3d Cir. 2005), and Plaintiff would plead no act of theirs against it.

12. The custom Plaintiff would plead is a specific unconstitutional practice, not a motive: that when a defendant places the Office's own conduct at issue, the Office declines to act on referral requests and conditions disposition on the surrender of that litigation — retaliation for petitioning, pleaded as an affirmative practice rather than a failure to train or supervise, *Forrest v. Parry*, 930 F.3d 93, 105–06 (3d Cir. 2019). A custom may be pleaded without naming the responsible policymaker, and public materials describing comparable conduct in the same period may support it, *Estate of Roman v. City of Newark*, 914 F.3d 789, 798–800 (3d Cir. 2019). Two sources describe it. First, Plaintiff's own dockets: a referral motion of March 30, 2026 not decided to Plaintiff's knowledge and a Notice of Conflict of July 22, 2026 not answered; and disposition conditions, relayed through counsel, tied to abandoning litigation against the Office's own prosecution witness (Exhibit C; Parts II and IV). Second, the Office's own supervisors' Notice of Conflict in *Johnson v. Nickelson* and the Attorney General's reported submission of September 8, 2026 (Exhibits A, B), describing an instruction to "protect the office," a refusal to refer despite supervisors' repeated advice, and "consequences" for those who told the Court. Plaintiff pleads the second source only for what it is — allegations and a submission in another case, not adjudicated facts — and this Supplement adds no claim against any individual; Plaintiff has no personal knowledge of the District Attorney. The hearing is warranted on the *Dombrowski* question alone (Part III); the six witnesses are not offered to prove a *Monell* claim this motion does not make. Plaintiff notes only that the same record will bear on the institutional question, and that a damages claim against the City, if abstention applied to it, would be stayed rather than dismissed, *Deakins v. Monaghan*, 484 U.S. 193, 202–04 (1988).

## VI. CORRECTIONS TO ECF 29

13. So that one set of statements governs, Plaintiff corrects ECF 29 as follows and asks that these corrections be read into it. (a) The alternative request concerning removal of the state prosecutions under 28 U.S.C. § 1443(1) (ECF 29 Part IX and relief ¶ X(2)) is PRESERVED IN FULL and is corrected only as to procedure: removal of a criminal prosecution proceeds by notice under 28 U.S.C. § 1455, not § 1446(d); upon such a notice the Court must promptly examine it and, absent summary remand, hold a hearing, § 1455(b)(3)–(4), and no judgment of conviction may be entered in the state court unless the case is first remanded, § 1455(b)(5). Plaintiff expressly reserves, and gives notice of his intention to exercise, the right to file a notice of removal under §§ 1443(1) and 1455 as to CP-51-CR-0004295-2026 and MC-51-CR-0000640-2026 by separate filing, including before September 14, 2026 if the state court declines to continue that listing. Nothing in this Supplement waives, narrows, or abandons any request for relief in ECF 29 except as expressly stated in subparagraphs (b)–(j). (b) The statement that Defendant Corrigan was "in default" is WITHDRAWN; his time to respond was extended by orders at ECF 19 and 26 and runs to September 14, 2026. (c) The ARD chronology in ECF 29 is REPLACED by ¶ 4 above and Decl. ¶¶ 6–11. (d) *Fields v. City of Philadelphia*, 862 F.3d 353 (3d Cir. 2017), concerns recording police in public and is not cited for a right to record judicial proceedings; the courtroom-recording charge is addressed on its own terms. (e) 18 U.S.C. § 922(g)(8) defines a federal firearms disability; ECF 29 is not read to contend that its notice element by itself voids the state protection order or the prosecution under it. (f) *O'Shea v. Littleton*, 414 U.S. 488 (1974), is not authority that a conditioned offer is bad faith "as a matter of law"; the standard is *Dombrowski*, *Perez*, and *Kugler*, applied to facts. (g) The presumption of vindictiveness of *Blackledge v. Perry*, 417 U.S. 21 (1974), does not arise from timing alone in the pretrial setting, *United States v. Goodwin*, 457 U.S. 368 (1982); Plaintiff relies on the

evidence described above, not a presumption. (h) A Rule 1013 or Rule 600 argument does not make a prosecution cease to be pending; ECF 29 is not read to so contend. (i) *Lewellen v. Raff* and *Cullen v. Fliegner*, cited in ECF 29, are Eighth and Second Circuit decisions and are persuasive only. (j) The proposed order submitted with this Supplement governs the hearing request; ECF 29's request for interim injunctive relief remains pending for decision on the record made.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court:

1. GRANT leave to supplement ECF 29 with this filing, the accompanying declaration, and Exhibits A–J, and READ the corrections in Part VI into ECF 29;

2. DIRECT Defendants to respond to the factual disputes and witness proffer in Parts II and IV by the earlier of seven days or September 14, 2026 (the date set by ECF 26 for Defendant Corrigan's response), stating which facts they will stipulate to or address by declaration and the basis for any objection to testimony — a deadline separate from any response to the complaint;

3. SET an evidentiary hearing on ECF 29 at the earliest date after September 11, 2026 that the Court's calendar allows, and in any event before the September 24, 2026 waiver trial (the September 14 listing being a status listing), or, if the Court prefers, a short conference to fix the witnesses and scope;

4. DIRECT the attendance of Defendant Corrigan by order; AUTHORIZE the narrow records production identified in Part IV under Fed. R. Civ. P. 26(d)(1), including certified copies of all arrest and bench warrants and warrant applications in Plaintiff's three dockets with their issuance, service, and lift records, and the chain-of-custody, warrant-return, and forensic-examination records for Plaintiff's phone seized June 18, 2025, with production or objection and a privilege log due within seven days of service; and DIRECT the Clerk to issue signed subpoenas in blank to Plaintiff under Fed. R. Civ. P. 45(a)(3) for Adam Yee, Zak T. Goldstein, Matthew T. Nelson, Brian Johnson, and Brett Zakeosian (named but not yet served), each subject to the protections of Rule 45;

5. DETERMINE under Fed. R. Evid. 502(c) the effect, if any, of Plaintiff's October 22, 2025 state-court statement, and ENTER a prospective order under Rule 502(d) confining any waiver in this proceeding to the subjects identified in ¶ 10 and providing that disclosures made under it are not a waiver in any other federal or state proceeding;

6. DIRECT Defendant Corrigan, in his response, to state his position, as relevant to ECF 29, on whether the District Attorney's Office will request the Attorney General to assume

MC-51-CR-0015343-2025, CP-51-CR-0004295-2026, and MC-51-CR-0000640-2026 under 71 P.S. § 732-205(a)(3); and

7. GRANT such further relief as is just.

Respectfully submitted,

/s/ Chad Mark Franco Ferrari
Chad Mark Franco Ferrari
Plaintiff, Pro Se
1119 Wallace Street, 1st Floor
Philadelphia, PA 19123
(215) 483-1985 | chadferrari@me.com
Dated: September 9, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CHAD MARK FRANCO FERRARI,
Plaintiff,

Civil Action No. 2:26-cv-01866-GAW
Hon. Gail A. Weilheimer

v.

DANIEL LEONARD, et al.,
Defendants.

**DECLARATION OF CHAD MARK FRANCO FERRARI UNDER 28 U.S.C. § 1746**

I, Chad Mark Franco Ferrari, declare as follows. I make this declaration on personal knowledge. Where I describe what another person said to me, I am describing what I heard that person say to me, and I do not attribute those words to anyone else. I do not claim knowledge of private communications between other people except as they were reported to me, and I say so where that is the case.

1. I am the Plaintiff. I am the defendant in MC-51-CR-0015343-2025, CP-51-CR-0004295-2026, and MC-51-CR-0000640-2026.

2. On June 18, 2025, my phone was taken from me in a Family Division courtroom. I later learned that a search warrant issued on July 2, 2025.

3. On July 17, 2025, ADA Brett Zakeosian wrote to me, copying Detective Leonard, that I was "currently under criminal investigation." A true copy is Exhibit D-1; the full thread is Exhibit D-2.

4. On July 16 and 17, 2025 I wrote to ADA Zakeosian asking whether my phone was being held under any formal investigation, whether it had been accessed, and when it would be returned, and objecting that the cell-phone policy invoked for the seizure had first been handed to me on July 14, 2025; those emails and his July 17 reply are Exhibit D. In August 2025 I wrote to

ADA Zakeosian that I was reporting misconduct by court officers and attorneys in my family-court matters and that I understood I was protected from retaliation for doing so.

5. A criminal complaint against me was sworn on August 1, 2025 (COM-0003938-2025). I have not confirmed the exact date of my August letter from my records and do not swear to it here, or to whether it preceded or followed the complaint.

6. Adam Yee, Esq. represented me in August 2025. In conversations on or about August 12, 2025, we discussed an outstanding warrant, the possibility of arrest, an apology letter to the District Attorney's Office, and ARD. Mr. Yee told me he had worked with ADA Zakeosian before. My recollection is that he linked my continued family-court litigation and my federal claims to whether ARD would be available, and that he told me, in substance, that ADA Zakeosian had told him that if I had not made an issue of the seizure of my phone and of my rights, and had stayed silent, I would not have been arrested and would eventually have gotten the phone back, and that because I had brought attention to it he had to act, to "protect the system." I did not hear ADA Zakeosian say any of that; it is what I recall Mr. Yee telling me, and I ask that both be examined on it. I did not accept any disposition on those terms.

7. In the weeks that followed, in or about August through September 2025, Mr. Yee did not respond to my calls or my text messages for approximately six weeks. I retain those unanswered messages and will produce them. I do not know why he did not respond; I ask that he be examined whether any communication from the District Attorney's Office bore on it.

8. Zak T. Goldstein, Esq. represented me later in 2025. On or about October 1, 2025, outside the courtroom, he told me in substance that dropping the proposed federal civil-rights case against former Judge Sulman and stopping my efforts to regain access to my children would

enable me to receive ARD. This is my recollection of Mr. Goldstein's words to me; I did not hear a prosecutor say it.

9. On September 22, 2025, following a hearing that day at which I spoke about federal civil-rights litigation and the witness-intimidation allegation, Mr. Goldstein told me by telephone that he had received a call from ADA Zakeosian, and that former Judge Sulman had contacted ADA Zakeosian about what I had said. He told me, in substance, that he was not saying I was wrong but that it did not matter. What passed between Judge Sulman, ADA Zakeosian, and Mr. Goldstein is known to me only from Mr. Goldstein's account.

10. My records reflect an ARD discussion on or about September 19, 2025. No ARD was thereafter extended to me. I do not swear here whether that discussion was a formal offer of the Commonwealth or counsel's assessment; I ask that the lawyers and the prosecutor be examined on it.

11. On October 22, 2025, before the Honorable Leanne Litwin in D-24-118413, I told the court that I had emailed a tape of my criminal defense attorney "telling me that there is no due process" and that "[t]he law does not matter," and, after the court advised me of the attorney-client privilege, stated: "I 100 percent waive it" (N.T. 10/22/25 at 11:12–18, 12:1–15; Exhibit I). Later that day I told the court that, about twenty minutes after I emailed the recording to Judge Litwin's chambers and to opposing counsel at Blank Rome LLP (Michelle Piscopo and Mary Vidas), Mr. Goldstein texted me that because of my recording he was withdrawing from my criminal case (id. at 36:13–22). I refer to the certified transcript for its contents.

12. I have not submitted any audio recording or machine transcript with this declaration. I will testify to my own recollection.

13. On February 2, 2026, at the Criminal Justice Center, Matthew T. Nelson, Esq. of the Defender Association showed me ADA Corrigan's January 13, 2026 motion for an out-of-county judge, which identified former Judge Sulman as a witness. That was the first time I saw it. In that conversation Mr. Nelson raised a mental-health inquiry; he also told me he had not yet spoken to the prosecutor. I was arrested minutes after that conversation.

14. On or about February 18 or 19, 2026, in a conference room at the Criminal Justice Center, I met Brian Johnson, Esq. of the Defender Association, assigned to me. Within approximately the first minute, before any discussion of the facts of the charges, Mr. Johnson said in substance that the District Attorney's Office was monitoring my Instagram and that I needed a mental-health evaluation, and that the mental-health clearances I told him I already had did not count. I objected to any evaluation and told him so.

15. I was not present in Room 406 and did not participate remotely in the March 2, 2026 proceeding. I was out of state. I received no mailed or emailed notice of the listing. I learned of it informally on Friday, February 27, 2026, and called Mr. Johnson; my calls were not returned. On the morning of March 2, 2026 I left a voicemail with the court stating that I was out of state, had received no notice, had tried to reach the office, and asked that the matters be continued.

16. Mr. Johnson later told me the March 2 proceeding was administrative and that my presence had been waived. I never agreed to waive my presence at any proceeding concerning a competency examination, and no one asked me to.

17. On March 3, 2026, Joseph Kearney of the Office of Court Reporters, Digital Recorders, & Interpreters replied to my email (Exhibit J) that he did not see any audio files or logs for Room 406 the previous day, that the docket showed an out-of-county judge and that the matter was handled on Microsoft Teams, and that he was not sure whether an actual record was

taken down. On March 3, 2026, the Court Mental Health Clinic addressed a letter to me at 901 N. Penn Street under a probation number, PP# 1255302; I have never been on probation.

18. On April 2, 2026, in a family-court hallway, Mr. Johnson told me in substance that he had been asked to submit an examination order and had not done so. On April 15, 2026 he wrote to me the email reproduced as Exhibit G. On March 3, 2026 he had emailed me that information about warrants came from Mr. Corrigan, who confirmed there were none in my CJC matters but could not speak to PFA matters; when I asked about PFA matters, he replied that he could not obtain that information. I have not been furnished the signed March 2 examination order itself.

19. I did not receive the April 24, 2026 vacatur when it was entered. On April 28, 2026 I called the clinic to reschedule because of my mother's medical appointment and received the reply reproduced as Exhibit H, which copied ADA Corrigan. On May 12, 2026 I wrote to ADA Corrigan and the District Attorney under the subject "Mental Health Fraud — Chad Ferrari, PP #1255302," objecting to the evaluation; that email did not mention the April 24 order, which I had not yet received. On May 21, 2026 the clinic representative was present and was excused when the court noted the order was vacated; I stated on the record that day that I had never received the April 24 order (N.T. 5/21/26 at 40:11–25). The May 21 transcript's title page prints the year 2025; the hearing was May 21, 2026, and I have not altered the source.

20. I have reviewed the public dockets of my matters. No judge was identified on the criminal docket for the March 2, 2026 listing until after the examination order had issued. No judge was identified for the January 29, 2026 listing at which my matter was called before former Judge Sulman, or for the March 12–13, 2026 Landlord-Tenant listing before Judge DiCicco. I state what I observed on the dockets and ask for the records that will show who set those listings.

21. I have asked for, and have not been furnished, certified copies of the arrest warrants, bench warrants, and warrant applications or affidavits issued in my three dockets, with their issuance, service, and lift records. I have received only the July 23, 2026 order lifting the bench warrant on CP-51-CR-0004295-2026. I have likewise never been furnished the return or inventory on the July 2, 2025 warrant for my phone, any chain-of-custody record, or any report of what was extracted from the device, by whom, or when.

22. On September 8, 2026 I read the report reproduced as Exhibit B of the Attorney General's filing that day in *Johnson v. Nickelson*. I have not read the filing itself and will file it by notice when I obtain it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 9, 2026, at Philadelphia, Pennsylvania.

/s/ Chad Mark Franco Ferrari
Chad Mark Franco Ferrari



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHAD MARK FRANCO FERRARI,<br>Plaintiff, | Civil Action No. 2:26-cv-01866-GAW<br>Hon. Gail A. Weilheimer |

v.

DANIEL LEONARD, et al.,
Defendants.

**ORDER**

AND NOW, this ___ *day of* ____________, 2026, upon consideration of Plaintiff's Emergency Motion to Enjoin Bad-Faith State Prosecutions (ECF 29), Plaintiff's Supplement thereto and Motion for an Expedited Evidentiary Hearing, and any response, it is ORDERED:

1. Leave to supplement is GRANTED. The Supplement, Declaration, and Exhibits A–J shall be considered with ECF 29, and the corrections in Part VI of the Supplement are read into ECF 29. Nothing in this Order withdraws or decides Plaintiff's request in ECF 29 concerning removal under 28 U.S.C. § 1443(1), which is preserved for separate notice under 28 U.S.C. § 1455.

2. Defendants shall respond to the factual disputes and witness proffer identified in the Supplement by the earlier of seven (7) days from this Order or September 14, 2026, stating which facts they will stipulate to or address by declaration and the basis for any objection to testimony. This deadline is separate from the deadline set by ECF 26 for any response to the complaint.

3. An evidentiary hearing on ECF 29 is set for ____________, *2026 at __ in Courtroom* _____. Defendant Vincent Corrigan shall attend. Plaintiff may serve the narrow records requests identified in Part IV of the Supplement under Fed. R. Civ. P. 26(d)(1), including certified copies of all arrest and bench warrants and warrant applications in his three state dockets with issuance, service, and lift records, and the chain-of-custody, warrant-return, and forensic-examination records for the phone seized from him June 18, 2025; production or objection, with a privilege log, is due within seven (7) days of service, and any material objection will be resolved before the hearing. The Clerk shall issue to Plaintiff signed subpoenas in blank under Fed. R. Civ. P. 45(a)(3) for Adam Yee, Esq., Zak T. Goldstein, Esq., Matthew T. Nelson, Esq., Brian Johnson, Esq., and Brett Zakeosian, each of whom retains the protections of Rule 45.

4. The effect of Plaintiff's October 22, 2025 state-court statement is reserved for determination under Fed. R. Evid. 502(c). Prospectively, pursuant to Rule 502(d), any waiver of the attorney-client privilege in this proceeding is limited to the subjects identified in ¶ 10 of the Supplement, and disclosures made in this proceeding under this Order are not a waiver in any other federal or state proceeding. No recording shall be offered without further order.

5. Defendant Corrigan's response shall state his position, as relevant to ECF 29, on whether the District Attorney's Office will request the Office of Attorney General to assume MC-51-CR-0015343-2025, CP-51-CR-0004295-2026, and MC-51-CR-0000640-2026 under 71 P.S. § 732-205(a)(3).

6. This Order does not stay or enjoin any state proceeding and does not decide ECF 29.

BY THE COURT:

______________________________

GAIL A. WEILHEIMER, J.

## CERTIFICATE OF SERVICE

I certify that on September 9, 2026 I (1) submitted the foregoing Supplement, Declaration, proposed Order, and Exhibits A–J to the Clerk through the Court's Electronic Document Submission system for docketing, upon which the Court's CM/ECF system will give notice to all counsel of record; (2) served the same documents by email on counsel of record for Defendants as reflected on the docket, and on Vincent Corrigan (vincent.corrigan@phila.gov) and Brett Zakeosian (brett.zakeosian@phila.gov) at the Philadelphia District Attorney's Office, Three South Penn Square, Philadelphia, PA 19107; and (3) transmitted a copy by email, as notice of the witness proffer only and not as service of process, to Adam Yee, Esq. (adam@sequoyahdefense.com), Zak T. Goldstein, Esq. (ztg@goldsteinmehta.com), and Matthew T. Nelson, Esq. and Brian Johnson, Esq. (BJohnson@philadefender.org), Defender Association of Philadelphia, 1441 Sansom Street, Philadelphia, PA 19102. Courtesy copies (not as parties) by first-class mail to the Office of Attorney General, Criminal Law Division, 16th Floor, Strawberry Square, Harrisburg, PA 17120, and to the Chambers of the Hon. Jeffrey K. Sprecher and the Hon. Christopher P. Mallios.

/s/ Chad Mark Franco Ferrari
Chad Mark Franco Ferrari, Plaintiff, Pro Se
Dated: September 9, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CHAD MARK FRANCO FERRARI, Plaintiff, v. DANIEL LEONARD, et al., Defendants

Civil Action No. 2:26-cv-01866-GAW | Hon. Gail A. Weilheimer

# EXHIBITS A–J

**TO PLAINTIFF'S SUPPLEMENT TO HIS EMERGENCY MOTION TO ENJOIN BAD-FAITH STATE PROSECUTIONS (ECF 29) AND MOTION FOR AN EXPEDITED EVIDENTIARY HEARING, FOR PROCESS TO SECURE THE ATTENDANCE OF SIX WITNESSES, AND TO CORRECT THE RECORD**

Chad Mark Franco Ferrari, Plaintiff, Pro Se
1119 Wallace Street, 1st Floor, Philadelphia, PA 19123
(215) 483-1985 | chadferrari@me.com
September 9, 2026

# EXHIBIT INDEX

Page references are to the consecutive "Ex. Vol." number at the foot of each page. Each exhibit begins with a cover sheet identifying the document and its source; the source document follows.


| Ex. | Document / Source | Page |
|---|---|---|
| A | Notice of Conflict filed by ADAs Steven J. Wildberger and Katherine E. Ernst, Johnson v. Nickelson, No. 2:15-cv-04965 (E.D. Pa.) (Diamond, J.) | 3 |
| B | Ralph Cipriano, "A.G.: D.A. Krasner sought to 'protect the office' over his duty of candor to the court," Big Trial, September 8, 2026 | 7 |
| C | Commonwealth's Motion for Assignment of an Out-of-County Judge, filed by ADA Vincent Corrigan January 13, 2026, identifying former Judge Daniel Sulman as a witness, with verification and certificate of service on the Defender Association | 11 |
| D | D-1: Email of ADA Brett A. Zakeosian (Special Investigations Unit) to Plaintiff, cc Detective Daniel F. Leonard, July 17, 2025, 1:55 p.m.: "You are currently under criminal investigation"; D-2: the thread, including Plaintiff's July 16 and July 17, 2025 inquiries whether the phone was held under investigation and for its return | 19 |
| E | Defendant's Notice of Conflict and Motion for Referral to the Attorney General under 71 P.S. § 732-205, filed July 22, 2026, MC-51-CR-0015343-2025 | 23 |
| F | F-1: Order of April 24, 2026 (Sprecher, J.) vacating the March 2, 2026 examination order and listing motions for May 21, 2026; F-2: N.T. May 21, 2026 (excerpts): Johnson at 18–19; clinic excused at 38:8–14; Corrigan at 38, 42–43; Plaintiff at 40:11–25 (title page prints "2025"; hearing was May 21, 2026) | 33 |
| G | Email of Brian Johnson, Esq. (Defender Association) to Plaintiff, April 15, 2026, 8:55 p.m. | 43 |
| H | Email of Aneesha Shabazz, Mental Health Clinic Supervisor, to Plaintiff, cc ADA Vincent Corrigan, April 28, 2026, 12:37 p.m., scheduling evaluation for May 21, 2026 — four days after the April 24 vacatur | 45 |
| I | N.T. October 22, 2025, Ferrari v. Ferrari, D-24-118413 (Litwin, J.), Hearing Vol. 1, CRS Catalog ID 25101099 (Gary Copestake, O.C.R.) — excerpts at 11:10–25, 12:1–19, 36:13–25, 37:1–13 | 47 |
| J | Email of Joseph Kearney, Office of Court Reporters, Digital Recorders, & Interpreters, to Plaintiff, March 3, 2026, 2:11 p.m. EST, re Room 406 on March 2, 2026 (with Plaintiff's 1:36 p.m. inquiry) | 50 |

# EXHIBIT A

**Notice of Conflict filed by ADAs Steven J. Wildberger and Katherine E. Ernst, Johnson v. Nickelson, No. 2:15-cv-04965 (E.D. Pa.) (Diamond, J.)**

*CM/ECF copy as filed*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DENNIS JOHNSON,**<br>Petitioner,<br><br>v.<br><br>**SCOTT NICKELSON,** et al.,<br>Respondents. | :<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br><br><br><br><br>**No. 15-cv-4965** |

**NOTICE OF CONFLICT**

On June 5, 2026, Assistant District Attorneys Steven J. Wildberger and Katherine E. Ernst signed, along with others, the Motion to Withdraw Response, filed at ECF No. 118. Twenty days later, ADAs Wildberger and Ernst filed a Notice of Withdrawal of Appearances on behalf of Respondents due to conflicts of interest. ECF No. 123. ADAs Wildberger and Ernst also alerted the Court that they believe, "based on their best professional judgment, that the Philadelphia District Attorney's Office may have a conflict of interest in this case," but they "understand that the office is seeking to remedy this conflict." *Id.*

On July 17, 2026, this Court held a hearing on several topics, including the Motion to Withdraw Response and the conflict issues. At that hearing, an Assistant District Attorney in the Philadelphia District Attorney's Office ("DAO") participated in questioning witnesses. As a result, it has become apparent to ADAs Wildberger and Ernst that the conflict they perceive to be burdening the DAO has not been remedied, necessitating this Notice.

On the day the Commonwealth filed its Motion to Withdraw Response, June 5, 2026, ADAs Wildberger and Ernst, along with Law Division Supervisor David Napiorski and Federal Litigation Supervisor Peter Andrews, requested to District Attorney Lawrence Krasner ("DA Krasner") that the case be referred to the Office of Attorney General ("OAG"). In a series of

meetings thereafter, ADAs Wildberger and Ernst and others repeatedly implored DA Krasner to refer the case to the OAG.

ADAs Wildberger and Ernst requested that DA Krasner refer the case to the OAG because they believe, in their best professional judgment, that DA Krasner, and in turn the DAO, has at least an apparent conflict of interest. In short, ADAs Wildberger and Ernst (1) understand that DA Krasner has received litigation advice from ADA Matthew Stiegler about this case, advice DA Krasner then suggested to ADAs Wildberger and Ernst and others;[1] and (2) received instruction from DA Krasner to litigate the case in a manner to "protect the office," which they view as incompatible with their ethical obligations and the interests of the Commonwealth. As a result, ADAs Wildberger and Ernst believe they are conflicted, informed DA Krasner that they would not represent Respondents in this case, and repeatedly requested that DA Krasner refer the case to the OAG to ameliorate the DAO's conflict.

At a meeting on June 25, 2026, where ADA Wildberger and others once again requested that the case be referred to the OAG, DA Krasner stated that there would be "consequences" for anyone who notified the Court of the conflict issues. Notwithstanding, ADAs Wildberger and Ernst later that day alerted the Court to the conflicts.[2]

On July 17, 2026, ADAs Wildberger and Ernst were present for the hearing at which an Assistant District Attorney from the DAO represented the Respondents. Because ADAs

---

[1] ADAs Wildberger and Ernst view this advice as problematic because they believe ADA Stiegler has a clear conflict of interest in this case, and the advice suggested conduct they view as inappropriate for the person litigating the merits of this habeas case.

[2] When ADAs Wildberger and Ernst filed their Notice of Withdrawal of Appearances, they noted the conflicts as they perceived them without explanation. ADAs Wildberger and Ernst believed that the deliberative process privilege precluded them from saying more. ADAs Wildberger and Ernst have since been advised by an attorney that the deliberative process privilege does not apply under these circumstances.

Wildberger and Ernst believe the DAO has at least an apparent conflict of interest, should not be representing the Respondents in this case, and apparently has not ameliorated the conflict, they file this Notice with the Court.[1]

Respectfully submitted,

/s/
KATHERINE E. ERNST

/s/
STEVEN J. WILDBERGER

[1] ADAs Wildberger and Ernst feel that it is necessary to immediately notify the Court of the ongoing conflict. Consequently, this filing does not purport to contain all of the information relevant to the conflict. ADAs Wildberger and Ernst stand ready to testify as ordered by this Court.

# EXHIBIT B

**Ralph Cipriano, "A.G.: D.A. Krasner sought to 'protect the office' over his duty of candor to the court," Big Trial, September 8, 2026**

*Reproduced verbatim from the publisher's email edition received September 8, 2026, 4:35 p.m. EDT*

**Exhibit B**

# A.G.: D.A. Krasner sought to 'protect the office' over his duty of candor to the court

By Ralph Cipriano, Big Trial
September 8, 2026
*https://ralphcipriano.substack.com/p/ag-da-krasner-sought-to-protect-the*

A.G. urges Judge Diamond to disqualify the DAO from evaluating a convicted killer's appeal because Krasner has an 'actual conflict of interest'

The state attorney general has concluded that in evaluating whether a convicted killer deserves a new trial, D.A. Larry Krasner has an "actual conflict of interest."

The conflict: Krasner believed it was more important to "protect the office" than to fulfill his duty of candor to the court.

So in a 47-page brief filed today in the matter of whether convicted killer Dennis Johnson deserves a new trial, the A.G. advised U.S. District Court Judge Paul Diamond to disqualify Krasner's DAO from the case because of Krasner's conflict.

Johnson's appeal has been the subject of three evidentiary hearings held over the past two months in Judge Diamond's courtroom.

Hearings where the judge was investigating what went wrong with a faulty DAO concession granted to Johnson, as well as alleged conflicts of interest in Krasner's DAO.

During the hearings, the judge also stated from the bench that from the evidence he heard, crimes may have been committed by Krasner and his underlings.

Such as criminal conspiracy, perjury and obstruction of justice.

But before the judge gets around to determining whether any criminal acts transpired, His Honor wants to settle the question of whether Krasner's DAO should be disqualified from evaluating if convicted killer Johnson deserves a new trial.

The A.G., acting as a friend of the court, says the right thing to do is to disqualify Krasner's DAO.

In the A.G.'s "Proposed Finding of Facts and Conclusions of :aw, Chief Deputy A.G. Susan Affronti and Senior Deputy A.G. John Boscia write that when Krasner found out that the DAO concession granted to convicted killer Johnson was marred by "significant factual misrepresentations," the D.A. "did not contest that information or make any independent effort to investigate it."

"He [Krasner] knew that the concession, although drafted by [former ADA Jaclyn] Mason, had been closely reviewed and edited by [ADA Matthew Stiegler," the A.G. writes.

"Yet he [Krasner] prevented his attorneys from informing the Court of the full facts, and instead urged them to divert blame from Stiegler and put it completely on Mason," the A.G.'s brief states.

"He [Krasner] did so in order to protect Stiegler, who he had repeatedly hired and promoted, and avoid accountability," the A.G. states.

It was whistleblower Mason's contention that the faulty concession granted in the Johnson case was the work product of ADA Stiegler, after he colluded with the Pennsylvania Innocence Project, and Johnson's federal defenders.

"Indeed, this was precisely Mason's concern: that she would be asked to 'fall on her sword' as the DAO would 'prioritize protecting Mr. Stiegler over her professional reputation,' " the A.G. writes.

"Nor did this proposed strategy stop there," the A.G. writes, and then goes on to discuss Stiegler and Krasner's plan to scapegoat Mason for the faulty concession.

"DA Krasner passed on this suggestion to [ADAs] Ernst, Wildberger, Napiorski, and Andrews, stating that he received a 'great idea' from Stiegler to review Mason's [other] cases and find errors," the A.G. writes.

"Stiegler himself proposed this idea during a June 5, 2026 meeting with DA Krasner and others," the A.G. writes. "Of course, Mason has since resigned while Stiegler remains the Supervisor of the Conviction Integrity Unit and reports directly to DA Krasner."

"The interests of the Commonwealth would have been to fulfill its duty of candor to the Court," the A.G. concludes. "The DA placed his personal interest in protecting the office above the Commonwealth's interest."

"That same calculus was evidenced by DA Krasner's repeated exhortations to 'protect the office,' " the A.G. writes.

"Krasner said that we need to 'protect the office' and have 'somebody in the room so that they can control the proceedings,' " the A.G. writes, referring to the just concluded evidentiary hearings held in Judge Diamond's courtroom.

"DA Krasner explained that 'the person needed to be in the room to protect the office, to essentially, like, object if someone said something bad for the office.' "

An argument, the A.G. writes, that was understood by ADA Steven Wildberger to mean that Krasner "didn't want people poking around in what occurred."

Krasner, according to the A.G., "sealed the conflict question" by stating that the ADA assigned to handle the Johnson case in Judge Diamond's courtroom "should not do any investigation."

"Their only role was to "sit there and . . . object if OAG does something we don't like," the A.G. writes.

"He [Krasner] then doubled down by repeatedly threatening 'consequences' — clearly including termination — for attorneys who did not follow his instructions," the A.G. writes.

"These acts were directly contrary to the Commonwealth's duty and interest, which was to provide the Court with accurate information," the A.G. writes.

"DA Krasner's instructions, if followed, would have had the effect (and apparently the intent) of preventing the Commonwealth from carrying out that duty."

During the evidentiary hearings in Judge Diamond's courtroom, four of Krasner's supervisors testified that they had repeatedly urged Krasner to refer the Johnson appeal to the A.G.

But Krasner, the four supervisors testified, repeatedly refused because he argued that everybody who worked at the A.G.'s office were "Nazis."

"His [Krasner's] actions, and his words, thus demonstrate that he acted on the basis of personal animus, not the interests of the Commonwealth," the A.G. writes.

"For the foregoing reasons, OAG respectfully submits that DA Krasner has an actual conflict of interest, requiring that the DAO be disqualified from this case."

And that conflict is not undone, the A.G. concludes, if "the conflicted district attorney" decides to hire another supposedly independent lawyer to evaluate the case, which is exactly what Krasner has done.

Because that independent lawyer, the A.G. writes, still reports to Krasner.

Krasner has hired Jean Peters-Baker, a former Jackson County MO prosecutor who's been elected three times, to independently evaluate whether convicted killer Johnson deserves a new trial.

In her own submission to Judge Diamond, Peters-Baker writes that "following a full and independent review of the record in the Johnson case, I have determined that each of Petitioner's claims for relief should be denied."

Peters-Baker has submitted a current draft of her report under seal to Judge Diamond.

In court, the A.G.'s recommendation to disqualify Krasner's DAO from the Johnson case was opposed in a 46-page filing, entitled "Proposed Findings of Fact and Conclusions of Law," written by ADA Thomas Gaeta.

Gaeta turned out to be the "somebody" that Krasner wanted to be in Judge Diamond's courtroom to "protect the office."

According to Gaeta, Krasner has already dealt with any alleged conflicts of interest on the part of ADA Stiegler, who sought to scapegoat whistleblower Mason for the faulty concession.

"While ADA Stiegler may have competing interests that prevent him from representing the Commonwealth in this case, he has already been screened from further participation in the case," Gaeta writes.

In his brief, Gaeta takes a few swipes at Krasner's supervisors who testified against him during the evidentiary hearings held in Judge Diamond's courtroom.

"DA Krasner plainly did not appreciate the Law Division Supervisors' repeated, unsolicited, and wavering advice to refer this case to the OAG for two reasons," Gaeta writes.

"First, he [Krasner] believed they were legally incorrect with no rules or law offered to support their position that the DAO was conflicted and that referral was therefore not required," ADA Gaeta writes.

"Their inexpert and legally unsupported advice that it was necessary to refer the case to OAG directly conflicted with the clear and consistent advice of the ethics experts he [Krasner] consulted," Gaeta writes.

"Second, as the elected chief prosecutor, the decision on whether or not to refer the case was entrusted to him," Gaeta writes about Krasner. "It was not a decision for his employees to make or attempt to force him into making via unauthorized and legally inappropriate public pleadings."

"DA Krasner also expressed frustration," Gaeta writes, that "ADAs [Katherine] Ernst and [Steven] Wildberger felt compelled to repeatedly submit unauthorized legally baseless and therefore legally unreasonable pro se filings 'alerting' the Court to a supposed conflict."

"DA Krasner has taken no action inconsistent with his obligation to fairly represent the Commonwealth on behalf of the people of Philadelphia," Gaeta concludes, "despite the intemperate comments witnesses claimed he made."

Comments such as threatening Krasner's supervisors with "consequences" if they reported Krasner's conflict to Judge Diamond.

"There is no conflict here, and there never was," Gaeta concludes. So "it would be an abuse of discretion for the Court to disqualify the DAO."

ADA Gaeta may be the somebody that Krasner wanted in Judge Diamond's courtroom to be there, in the D.A.'s words, to "protect the office" and "control the proceedings."

But whenever Gaeta raised an objection, Judge Diamond swatted him down with extreme prejudice.

So this is an easy call: expect Gaeta to lose again, and the judge to disqualify Krasner's DAO.

*[Reproduced verbatim from the publisher's website as retrieved September 8, 2026; a printout with the browser's date/URL header may be substituted.]*

# EXHIBIT C

**Commonwealth's Motion for Assignment of an Out-of-County Judge, filed by ADA Vincent Corrigan January 13, 2026, identifying former Judge Daniel Sulman as a witness, with verification and certificate of service on the Defender Association**

*As filed (received stamp 01/13/2026 12:47 p.m.)*

MAR 16th
606 no judge

**DISTRICT ATTORNEY'S OFFICE**
By: ADA Vincent Corrigan
Three South Penn Square
Philadelphia, PA 19107
(215) 686-8754
vincent.corrigan@phila.gov

**IN THE MUNICIPAL COURT OF PHILADELPHIA COUNTY
CRIMINAL DIVISION**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | MC-51-CR-0015343-2025 |
| v. | : | |
| CHAD FERRARI | : | NCD 2/2/26 Rm. 606 |

**COMMONWEALTH'S MOTION TO APPOINT AN OUT-OF-COUNTY JUDGE**

TO THE HONORABLE JUDGE T. FRANCIS SHIELDS:

Lawrence S. Krasner, District Attorney of Philadelphia County, by his assistant, Vincent Corrigan, respectfully moves this Honorable Court to appoint an Out-Of-County Judge in the instant matter.

1. On August 19, 2025, Defendant Chad Ferrari was arrested on one charge of Recording in Court in the above captioned matter, scheduled in Courtroom 606 on Monday, February 2, 2026. The matter is scheduled for trial.

2. A witness in the above captioned matter is Hon Daniel Sulman duly elected and sitting Court of Common Pleas for the City and County of Philadelphia, assigned to Family Court at 1501 Arch Street.

3. The Defendant is alleged to have recorded proceedings before Judge Sulman as he took official judicial action in a Family Court matter in which the Defendant was a party.

4. The defendant has since communicated numerous times with Judge Sulman's chambers alleging that Judge Sulman and others are part of a conspiracy against him. The defendant continued to communicate with Judge Sulman's chambers after Judge Sulman recused himself from the case and the defendant was specifically instructed not to communicate with Judge Sulman or his staff.

5. The defendant's communications with Judge Sulman are frequently antisemitic in nature and strongly suggest that the defendant knows where Judge Sulman lives.

6. Pennsylvania Code of Judicial Conduct Rule 2.11 provides that a "judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]"

7. Though the Commonwealth recognizes that the Philadelphia Municipal Court bench can fairly adjudicate all matters properly before it, this motion is made out of an abundance of caution in order to avoid even the merest hint of impropriety and to eliminate any potential appellate issues should the Commonwealth carry its burden.

**WHEREFORE, the Commonwealth respectfully requests that the above captioned matters be presided over by a Judge who is not an elected Judge sitting in the City and County of Philadelphia[1].**

**Respectfully submitted,**

***/s/Vincent Corrigan***

**Vincent Corrigan**
**Assistant District Attorney**

**Date: January 13, 2026**

**VERIFICATION**

The facts set forth in the foregoing are true and correct to the best of the undersigned's knowledge, information and belief and are verified subject to the penalties for unsworn falsification to authorities under the Pennsylvania Crimes Code Section 4904, 18 Pa. C.S.A.

/s/Vincent Corrigan

Vincent Corrigan
Assistant District Attorney

Date: January 13, 2026

## CERTIFICATION OF SERVICE

**I, Assistant District Attorney Vincent Corrigan, hereby certify that a true and correct copy of the herein Certification was electronically filed and served upon the following by the First Judicial District's e-Filing system and the methods listed below:**

**By email to:**

**Defense Attorney for Chad Ferrari: Defender Assoc of Philadelphia, Kevin Yao**

***/s/Vincent Corrigan***

**Vincent Corrigan**
**Assistant District Attorney**

**Date: January 13, 2026**

RECEIVED
01/13/2026 12:47:11 PM
By: J. STO

**IN THE MUNICIPAL COURT OF PHILADELPHIA COUNTY**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | MC-51-CR-0015343-2025 |
| v. | : | |
| CHAD FERRARI | : | NCD 2/2/26 Rm. 606 |

**ORDER**

On this ________ day of January, 2026, upon consideration of the Commonwealth's Motion to Appoint an Out-Of-County Judge, it is hereby **ORDERED** and **DECREED** that Judge ____________________________, __________________ County is appointed as an out-of-county Judge to preside over the captioned matter and all proceedings thereunder.

BY THE COURT:

________________________________

THE HONORABLE T. FRANCIS SHIELDS

# EXHIBIT D

**D-1: Email of ADA Brett A. Zakeosian (Special Investigations Unit) to Plaintiff, cc Detective Daniel F. Leonard, July 17, 2025, 1:55 p.m.: "You are currently under criminal investigation"; D-2: the thread, including Plaintiff's July 16 and July 17, 2025 inquiries whether the phone was held under investigation and for its return**

*Native email as received (D-1); thread typed verbatim from the native (D-2)*

*Exhibit D-1 — Zakeosian email, July 17, 2025, 1:55 p.m. (native, as received)*

Outlook

**Re: Cell Phone Policy – New Handout Issued After June 18 Court Hearing**

From Brett Zakeosian <Brett.Zakeosian@Phila.gov>
Date Thu 7/17/2025 1:55 PM
To CHAD FERRARI <chadferrari@me.com>
Cc Daniel F Leonard <Daniel.F.Leonard@phila.gov>

Dear Mr. Ferrari,

You are currently under criminal investigation. As both a prosecutor and a member of the bar, I must advise you that anything you say to me can be used against you in any criminal proceeding. I cannot answer the questions you have posed to myself and Detective Leonard. You should seek the assistance of legal counsel.

Respectfully,

**Brett A. Zakeosian**
Assistant District Attorney
Special Investigations Unit
Philadelphia District Attorney's Office
3 S. Penn Square
Philadelphia, PA 19107
(215) 686-5705
(215) 512-5698 (c)

From: CHAD FERRARI <chadferrari@me.com>
Sent: Thursday, July 17, 2025 11:54 AM
To: Brett Zakeosian <Brett.Zakeosian@Phila.gov>
Cc: daniel.leonard@phila.gov <daniel.leonard@phila.gov>

**Exhibit D-2 — The thread: Plaintiff to Zakeosian, July 16, 2025, 2:53 p.m. and July 17, 2025, 11:54 a.m.; Zakeosian reply, July 17, 2025, 1:55 p.m. (typed from the native thread)**

**From:** Brett Zakeosian <Brett.Zakeosian@Phila.gov>
**To:** CHAD FERRARI <chadferrari@me.com>
**Cc:** Daniel F Leonard <Daniel.F.Leonard@phila.gov>
**Date:** Thu, 17 Jul 2025 13:55:05 -0400 [= Thursday, July 17, 2025, 1:55 PM EDT]
**Subject:** Re: Cell Phone Policy – New Handout Issued After June 18 Court Hearing

```
Dear Mr. Ferrari,

You are currently under criminal investigation. As both a prosecutor and a
member of the bar, I must advise you that anything you say to me can be used
against you in any criminal proceeding. I cannot answer the questions you have
posed to myself and Detective Leonard. You should seek the assistance of legal
counsel.

Respectfully,
Brett A. Zakeosian
Assistant District Attorney
Special Investigations Unit
Philadelphia District Attorney's Office
3 S. Penn Square, Philadelphia, PA 19107

From: CHAD FERRARI <chadferrari@me.com>
Sent: Thursday, July 17, 2025 11:54 AM
To: Brett Zakeosian <Brett.Zakeosian@Phila.gov>
Cc: daniel.leonard@phila.gov
Subject: Cell Phone Policy - New Handout Issued After June 18 Court Hearing

Hi Brett,
```

I wanted to confirm for the record that the attached "Cell Phone Statement" handout was never distributed prior to the June 18, 2025 hearing before Judge Sulman in Philadelphia Family Court.

Monday July 14th was the first time I received this written policy, and it was read aloud by staff as if it had always been in place. That is incorrect.

This new document appears to have been created after my June 18 appearance, likely in direct response to public transparency efforts and documented due process concerns. I am preserving this email to clarify that:
- No such policy was presented to me on or before June 18, nor were there any signs in the court room like I was told there was by detective Leonard in late June.
- Any enforcement of it retroactively would constitute a due process violation

Can I please have my cell phone back this week? How do I go about doing that? I already have in my possession the transcript from the June 18th hearing.

Respectfully,
Chad Mark Franco Ferrari

On Jul 16, 2025, at 2:53 PM, CHAD FERRARI <chadferrari@me.com> wrote:

Dear Mr. Zakeosian,

I'm writing to respectfully request an update on the status of my personal cell phone, which was taken from me by Judge Daniel Sulman, in family court proceedings June 18th and I corresponded in person at the DA front desk intake with Det. Leonard a few days later.

The reason provided at the time was that a sign was posted in the courtroom prohibiting recording. However, I was back in that same courtroom on Monday, July 15, and Judge Sulman stated on the record that no such sign was posted then or now. I wanted to clarify whether the original basis for the seizure still stands.

Additionally, I was asked to send certified mail to your office, which I did, but I never received a receipt or confirmation. I would appreciate a status update on both that and the phone itself.

I'd also like to know:
1. Whether the device has been accessed or reviewed in any way
2. Whether it is being held under any formal investigation
3. If and when I can expect its return

This has created significant disruption, and I hope we can resolve this cooperatively. If needed, I'm happy to schedule a time to come in or provide any further details.

Thank you so much in advance for your attention.

Sincerely,
Chad Mark Franco Ferrari

*[Reproduced verbatim from the native email; the native file will be produced on request.]*

# EXHIBIT E

## Defendant's Notice of Conflict and Motion for Referral to the Attorney General under 71 P.S. § 732-205, filed July 22, 2026, MC-51-CR-0015343-2025

*As filed; the Commonwealth has filed no response*

**IN THE MUNICIPAL COURT OF PHILADELPHIA COUNTY**

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA — CRIMINAL DIVISION**

**COMMONWEALTH OF PENNSYLVANIA :**

**: No. MC-51-CR-0015343-2025**

**v. :**

**: NCD: July 22, 2026 · 9:00 A.M.**

**CHAD MARK FRANCO FERRARI, :**

**Defendant, Pro Se. :**

**NOTICE OF CONFLICT**

**(and Motion for Referral to the Pennsylvania Office of Attorney General pursuant to 71 P.S. § 732-205)**

1. Defendant Chad Mark Franco Ferrari, appearing pro se, respectfully submits this Notice of Conflict. Based on the documented facts set forth below, the continued prosecution of this matter by the Philadelphia District Attorney's Office ("DAO") presents an institutional conflict that is irreconcilable and fatal to the appearance of neutrality. Defendant therefore moves for referral of this case to the Pennsylvania Office of Attorney General pursuant to 71 P.S. § 732-205, for the entry of a litigation hold preserving all electronically stored information and related evidence, and for such other relief as the Court deems just.

2. [DOCUMENTED] The documented chronology is as follows:

a. On June 18, 2025, Defendant's cellular telephone was seized during a Family Court proceeding before Judge Daniel Sulman. [Ex. A].

b. On July 17, 2025, at 11:54 a.m., Defendant emailed ADA Brett A. Zakeosian (copying Detective Daniel Leonard) regarding the "Cell Phone Policy – New Handout Issued After June 18 Court Hearing," seeking information about the post-June-18 policy and the handling of his seized phone. [Ex. B].

c. On the same day, July 17, 2025, at 5:55 p.m., ADA Zakeosian replied by email, stating verbatim: "You are currently under criminal investigation. As both a prosecutor and a member of the bar, I must advise you that anything you say to me can be used against you in any criminal proceeding. I cannot answer the questions you have posed to myself and Detective Leonard. You should seek the assistance of legal counsel." [Ex. C]. [1]

d. In a recorded telephone conversation with Detective Leonard on August 5, 2025, Detective Leonard made the following admissions: when asked if a warrant had been issued, he responded "Yes. ... issued August 1st"; when asked "So you filed a warrant and you already searched it?" he answered "Yes." Detective Leonard further stated that the first access to the phone's contents "would have been probably the week after it was seized" — i.e., in late June 2025, weeks before the August 1 warrant was issued — and confirmed that the warrant was sought "after the recording was discovered on the phone." Detective Leonard acknowledged that ADA Zakeosian was tied to or had signed off on the warrant. During the same call, Defendant stated that he was being retaliated against for standing up to Judge Sulman and was protected under federal whistleblower rights. [Ex. D]. [2]

e. On August 7, 2025, in a further recorded call, Detective Leonard reversed his account, stating "It was some date after we got the warrant signed," directly contradicting his August 5 admission. [Ex. E].

f. On August 19, 2025, Defendant was arrested on the instant charge of recording in court (M2). The Commonwealth, through ADA Vincent Corrigan's motion of January 13, 2026, anchors this prosecution to that date. [Ex. F].

g. On January 13, 2026, the Commonwealth, by motion authored by ADA Corrigan to appoint an out-of-county judge, expressly named Judge Daniel Sulman as a Commonwealth witness in this case. [Ex. G].

h. On June 29, 2026, Judge Sulman testified under oath that he "recused myself, even though, honestly, legally, there was no basis to do it, but I did it anyway." [Ex. H]. [3]

3. [ATTRIBUTED] The DAO's own institutional record, now a matter of public federal filings, documents a directive that mirrors the posture ADAs Zakeosian and Corrigan have exhibited toward Defendant. In *Johnson v. Nickelson*, No. 15-cv-4965 (E.D. Pa.), former ADAs Wildberger and Ernst filed a Notice of Conflict (ECF 118/123) stating that District Attorney Krasner instructed litigation to "protect the office" and warned of "consequences" during a June 25, 2026 meeting for anyone who alerted the court to the conflict. On July 17, 2026, former ADA Jaclyn Mason testified before Judge Diamond that she was directed to "protect the office" and to be a "pawn"; she resigned on June 2, 2026. [Attributed to the filings and testimony in *Johnson v. Nickelson*].

4. [DOCUMENTED] The conflict is no longer merely institutional; it is now a matter of formal, docketed adversity. Defendant has pending federal civil-rights litigation arising directly from the facts of this matter. In *Ferrari v. Leonard*, No. 2:26-cv-01866-GAW (E.D. Pa.), Detective Daniel Leonard — who by his own recorded admission conducted the pre-warrant search of Defendant's telephone and who tied ADA Zakeosian to the warrant — is a named defendant. Defendant has further asserted claims under 42 U.S.C.

§ 1983 for retaliation against ADAs Corrigan and Zakeosian and District Attorney Krasner arising from the conduct described herein. Defendant additionally states that ADA Corrigan has not responded to the federal summons and that Defendant intends to seek default. A prosecutor who is a defendant in the accused's civil-rights action cannot simultaneously and neutrally prosecute that same accused. [5]

5. [DOCUMENTED as to appointment and withdrawal; DEFENDANT'S ACCOUNT — INFERENCE as to coordination] The adversarial safeguard itself has failed on this docket. Brian Johnson, Esq., Assistant Defender of the Defender Association of Philadelphia, was appointed to represent Defendant on this docket and on MC-51-CR-0001972-2026. Defendant moved to disqualify the Defender Association and to proceed pro se; the Defender Association moved to withdraw on or about May 21, 2026. [Ex. I]. It is Defendant's account, which he is prepared to prove at an evidentiary hearing, that from approximately February through May 2026 his own appointed defender and ADA Corrigan coordinated to Defendant's detriment. That account is the mirror image of the conduct former ADA Jaclyn Mason described under oath in *Johnson v. Nickelson*: a District Attorney's Office coordinating with the Pennsylvania Innocence Project and the Federal Defenders to advance a narrative rather than the truth. [Attributed to the Mason testimony.] In each instance, prosecution-side and defense-side actors aligned to protect the institution rather than the client and the truth. In each instance, the adversarial system collapsed. [6]

6. [ATTRIBUTED] The same office that now presses an M2 recording charge against Defendant withdrew all charges — including F1 aggravated assault and F2 strangulation — against a sitting Philadelphia judge, Michael Fanning, on July 16, 2026, in cases docketed MC-51-CR-0004241-2026 and MC-51-CR-0004242-2026. The matter was presided over by the same specially assigned Senior Judge Sprecher, who, according to the Philadelphia Inquirer of July 16, 2026, "did not ask." [Ex. J]. [4]

7. [DOCUMENTED/ATTRIBUTED] The selectivity of this prosecution is corroborated outside this case. Urve Maggitti, a fellow pro se litigant, was jailed for audio-recording in Philadelphia Family Court — the same conduct charged against Defendant here — after she came to suspect fraud involving attorney Enrico Pagnanelli and the Obermayer firm; she is now a federal civil-rights litigant under 42 U.S.C. § 1983. Ms. Maggitti's account of the underlying fraud is her own and is cited here for posture only. What is independently verifiable is the pattern: in this District, the recording-in-court prohibition has been enforced against litigants who were, at the time, reporting suspected fraud in the very courts where the recording occurred.

8. [DEFENDANT-VERIFIED] The entanglement extends to the bench Defendant is actively challenging. Defendant has pending Judicial Conduct Board complaints, filed April 20–22, 2026, and federal claims against multiple judges of the First Judicial

District, including Judge Ourania Papademetriou. Judge Papademetriou's daughter and son-in-law are Assistant District Attorneys in the same office now prosecuting Defendant. [Ex. K] The prosecuting office is thus entangled, by family relationship, with a judicial officer Defendant is actively challenging before the Judicial Conduct Board and in federal court.

9. [DOCUMENTED] On April 20–22, 2026, Defendant filed four Verified Complaints with the Pennsylvania Judicial Conduct Board concerning Judges Sulman, Papademetriou, Kristiansson, and Fanning. [Ex. L]. Defendant is therefore a documented, active adversary of First Judicial District judges. The office prosecuting him has named one of those judges its witness, is related by family to a second, and withdrew felony charges against a third. This bears directly on the office's motive to prosecute.

10. [DEFENDANT'S ACCOUNT — PREPARED TO PROVE] Defendant maintains, and is prepared to prove at an evidentiary hearing, that he uncovered and reported what he believed to be a money-laundering scheme and improper conduct in Philadelphia Family Court, as well as documented defects in service. After he pressed those concerns — including the July 17, 2025 email to ADA Zakeosian and his expressed concern that Judge Sulman's digital court reporter (Cassi Segulin) was monitoring his social media — the Commonwealth's response, within hours, was the declaration that he was "under criminal investigation." Defendant contends this sequence is precisely the kind of retaliation for protected whistleblowing activity that the DAO's own former prosecutors have described under oath.

11. [LIMITED WAIVER — COUNSEL CHARACTERIZATION, NOT ADMISSIONS] In support of his good-faith basis for the instant Notice, Defendant offers recordings of his own former counsel, Adam Sequoyah Yee, Esq., and Zak T. Goldstein, Esq., under a limited waiver of the attorney-client privilege confined to those consultations and for the sole purpose of demonstrating the institutional posture recounted herein. In those recordings, Mr. Yee conveyed that had Defendant not asserted his due-process and constitutional rights, he would eventually have recovered his phone, but because he did assert those rights, the system "had to protect the system." At Defendant's first hearing, Mr. Goldstein conveyed that if Defendant would drop his family-court fight and forgo a federal Section 1983 action against Judge Sulman, he would receive Accelerated Rehabilitative Disposition (ARD); Defendant declined. On or about September 22, 2025, Mr. Goldstein further conveyed that Judge Sulman had again contacted ADA Zakeosian and that Defendant would face five months' incarceration for "witness intimidation." These statements are offered solely as counsel's characterization of the Commonwealth's posture and as Defendant's good-faith basis for asserting the institutional conflict; they are not, and are not offered as, admissions by any prosecutor or judicial officer.

12. On the basis of the foregoing documented facts, the DAO cannot neutrally prosecute this matter. The conflict is rooted in circumstances that no reassignment of line prosecutors can cure: (a) the DAO has named Judge Sulman — the judicial officer at the center of the conduct Defendant reported — as its own witness in this prosecution; (b) the documented institutional directive to "protect the office," with "consequences" for those who expose misconduct, now of federal record, is the very posture ADAs Zakeosian and Corrigan have exhibited toward Defendant — the same-day pivot from responsive discourse to a declared criminal investigation, the warrantless search sequence predating any warrant, and the overture that ARD would follow abandonment of his challenges; (c) the office withdrew F1 and F2 felony charges against an insider judge before the same specially assigned judge, without inquiry, while pressing an M2 recording charge against Defendant — selectivity independently corroborated by the Maggitti matter; (d) the office and its personnel are now Defendant's formal adversaries in pending federal civil-rights litigation — Detective Leonard is a named defendant in *Ferrari v. Leonard*, and, subject to caption confirmation, ADAs Corrigan and Zakeosian and District Attorney Krasner are named in Defendant's § 1983 retaliation action; (e) on Defendant's account, the adversarial safeguard itself failed when his appointed defender aligned with the prosecution — the mirror image of the alignment former ADA Mason described under oath; and (f) the office is entangled by family relationship with a judge Defendant is actively challenging, and Defendant's four Verified Judicial Conduct Board complaints make him a documented adversary of the District's judiciary. Each circumstance independently defeats the appearance of neutrality. Together, they defeat its reality.

WHEREFORE, Defendant respectfully requests that this Court:

a. Refer this prosecution to the Pennsylvania Office of Attorney General under 71 P.S. § 732-205 on the ground that the Philadelphia District Attorney's Office is laboring under an unconstitutional and disqualifying conflict of interest;

b. Enter a litigation hold directing all law enforcement and prosecutorial agencies to preserve all electronically stored information, investigative notes, internal communications, and recordings relating to this matter and to Defendant's underlying reports of misconduct, including all communications between the District Attorney's Office and the Defender Association of Philadelphia concerning Defendant, and all communications between the District Attorney's Office and any judicial officer concerning Defendant;

c. Schedule an evidentiary hearing at which Defendant stands ready to prove the facts set forth in this Notice; and

d. Grant such other and further relief as the Court deems equitable and just.

Respectfully submitted,

Chad Mark Franco Ferrari

Defendant, Pro Se

Email: chadferrari@me.com

**VERIFICATION**

I, Chad Mark Franco Ferrari, hereby verify that the facts set forth in the foregoing Notice of Conflict are true and correct to the best of my knowledge, information, and belief, and that I understand that any false statements made herein are subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Chad Mark Franco Ferrari

Dated: July 22, 2026

**PROPOSED ORDER**

AND NOW, this 22nd day of July, 2026, upon consideration of Defendant's Notice of Conflict, it is hereby ORDERED as follows:

1. This case is REFERRED to the Pennsylvania Office of Attorney General for investigation and prosecution under 71 P.S. § 732-205.

2. The Philadelphia District Attorney's Office and all law enforcement agencies involved in this matter shall immediately preserve all electronically stored information, notes, correspondence, recordings, and other evidence pertaining to the investigation and prosecution of Defendant and to Defendant's reports of misconduct referenced in the Notice, including all communications between the District Attorney's Office and the Defender Association of Philadelphia concerning Defendant, and all communications between the District Attorney's Office and any judicial officer concerning Defendant.

3. An evidentiary hearing on the issues raised in the Notice shall be scheduled for the next available date.

BY THE COURT:

______________________________

Hon. Jeffrey K. Sprecher, Senior Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of July, 2026, I caused a true and correct copy of the foregoing Notice of Conflict, together with the Verification and Proposed Order, to be served upon the following counsel for the Commonwealth by the First Judicial District's electronic filing system and by electronic mail at the address noted below:

Vincent Corrigan, Esq.

Brett A. Zakeosian, Esq.

Office of the District Attorney

Philadelphia County

3 S. Penn Square

Philadelphia, PA 19107

Chad Mark Franco Ferrari

Defendant, Pro Se

**Footnotes:**

[1] The same-day transformation of Defendant's administrative inquiry into a declaration that he was "under criminal investigation" is, on its face, the very species of retaliation-by-prosecution that former Assistant District Attorneys described in *Johnson v. Nickelson*, No. 15-cv-4965 (E.D. Pa.), where the directive was to "protect the office" and those who crossed the office faced "consequences." [Attributed to ECF 118, 123, and Mason testimony].

[2] Detective Leonard's admission that the phone was searched "the week after it was seized" — well before the August 1 warrant — and his subsequent August 7 reversal, are documented contradictions that independently warrant an independent review. The sequence indicates a pre-warrant search conducted at the direction or with the knowledge of an ADA, compounding the conflict.

[3] Judge Sulman's sworn statement that he had "no legal basis" to recuse, yet did so, sits incongruently with the Commonwealth's decision to name him as a material witness. That a judicial officer who, by his own account, had no legal reason to step aside from a family court matter involving the same defendant is now the Commonwealth's witness underscores the collapse of ordinary prosecutorial distance.

[4] The withdrawal of all charges against Judge Fanning — including F1 aggravated assault and F2 strangulation — on July 16, 2026, in the same courtroom and before the same

**specially assigned judge, without inquiry, places the DAO's continued pursuit of Defendant's M2 recording charge in sharp relief. The selectivity speaks for itself.**

**[5] The adversity is structural, not rhetorical. A district attorney's office that must defend itself and its line prosecutors against the accused in federal court occupies a position irreconcilably adverse to that accused in the criminal matter. The conflict does not depend on the outcome of the civil action; it exists the moment the same actors appear on opposite sides of two captions.**

**[6] When the office prosecuting a defendant and the office appointed to defend him serve the same institutional interest, the courtroom retains the appearance of adversariness without its substance. Defendant's pro se status is the record of that collapse.**

**EXHIBIT INDEX**

- **Exhibit A** — Record of the June 18, 2025 seizure of Defendant's cellular telephone at the Family Court proceeding before Judge Daniel Sulman.

- **Exhibit B** — Defendant's July 17, 2025 email (11:54 a.m.) to ADA Brett A. Zakeosian, copying Detective Daniel Leonard, re "Cell Phone Policy – New Handout Issued After June 18 Court Hearing".

- **Exhibit C** — ADA Brett A. Zakeosian's July 17, 2025 email reply (5:55 p.m.) stating Defendant is "currently under criminal investigation".

- **Exhibit D** — Recorded telephone call with Detective Daniel Leonard, August 5, 2025 (warrant-timing and pre-warrant-search admissions).

- **Exhibit E** — Recorded telephone call with Detective Daniel Leonard, August 7, 2025 (contradictory account).

- **Exhibit F** — Record of Defendant's August 19, 2025 arrest on the instant charge.

- **Exhibit G** — The Commonwealth's January 13, 2026 Motion to Appoint an Out-of-County Judge (ADA Vincent Corrigan), naming Judge Daniel Sulman a Commonwealth witness.

- **Exhibit H** — Transcript of the June 29, 2026 proceeding (Judge Sulman's sworn "no legal basis" recusal testimony).

- **Exhibit I** — Record of the appointment and withdrawal of the Defender Association of Philadelphia (Brian Johnson, Esq.) as Defendant's counsel.

**- Exhibit J — Certified dockets in Commonwealth v. Fanning, MC-51-CR-0004241-2026 and MC-51-CR-0004242-2026, and the Philadelphia Inquirer article of July 16, 2026.**

**- Exhibit K — Confirmation of the familial relationship between Judge Ourania Papademetriou and Assistant District Attorneys of the Philadelphia District Attorney's Office.**

**- Exhibit L — Defendant's four Verified Complaints to the Pennsylvania Judicial Conduct Board (filed April 20–22, 2026).**

# EXHIBIT F

**F-1: Order of April 24, 2026 (Sprecher, J.) vacating the March 2, 2026 examination order and listing motions for May 21, 2026; F-2: N.T. May 21, 2026 (excerpts): Johnson at 18–19; clinic excused at 38:8–14; Corrigan at 38, 42–43; Plaintiff at 40:11–25 (title page prints "2025"; hearing was May 21, 2026)**

*Certified order; official transcript (condensed format)*

FILED

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

AM 11: 13

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| v. | : | MC-51-CR-15343-2025 |
| | : | MC-51-CR-1972-2026 |
| CHAD FERRARI | : | |

**ORDER**

AND NOW, this 24th day of April, 2026, upon review of Defender Association's Motion to Withdraw as Counsel in the above referenced matters, and the *pro se* motions for relief filed by the Defendant on March 30, 2026 and March 31, 2026, with the exception of Defendant's *pro se* motion to disqualify the Honorable Tiffany Palmer from presiding over the matter listed under docket number MC-51-CR-640-2026, it is hereby ORDERED and DECREED that a hearing on all said Motions is scheduled for May 21, 2026 at 1:00PM.

It is further ORDERED and DECREED that Defendant's *pro se* motion to disqualify the Honorable Tiffany Palmer from presiding over the matter listed under docket number MC-51-CR-640-2026 is denied for lack of jurisdiction. Any motions for disqualification or recusal must be brought to the judge whose impartiality is being questioned. *See,* 207 Pa. Code Rule 2.11.



9350043701

It is further ORDERED and DECREED that the Court's March 2, 2026 Order directing the Defendant to submit to an Examination for Incompetency is VACATED. *See,* 50 P.S. §7402(d) (requiring a hearing to determine whether the court may order an examination for incompetency whenever there is an objection made "by the person charged with a crime or by his counsel.").

**BY THE COURT:**

Honorable Jeffrey Sprecher

THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

---

COMMONWEALTH : MC 51-CR-1976-2026
v. :
CHAD FRANCO FERRARI :

---

May 21, 2025
Via Zoom
Philadelphia, Pennsylvania

---

B E F O R E:

THE HONORABLE JEFFREY SEBECHER, J.

---

---

Reported by: Stephanie Goffredo, RPR
Official Court Reporter



A P P E A R A N C E S:

BRIAN JOHNSON, ESQUIRE
COUNSEL FOR DEFENDANT

VINCENT CORRIGAN, ESQUIRE
ASSISTANT DISTRICT ATTORNEY
COUNSEL FOR COMMONWEALTH



INDEX

WITNESS DR. CR. RDR. RCR.

(NO EXHIBITS MARKED.)



---

THE COURT: We are ready to proceed and we have our clerk.

Would you please swear in Mr. Ferrari?

---

CHAD MARK FRANCO FERRARI, after having been duly sworn, was examined and testified as follows:

---

THE COURT OFFICER: All right. State your full name and spell your last.

MR. FERRARI: Chad Mark Franco Ferrari, F-E-R-R-A-R-I.

THE COURT OFFICER: All right. Lower your hand. You're sworn.

THE COURT: Mr. Ferrari, you have, of course, filed a motion to confirm your pro se status and also disqualify the Public Defender's Association and, of course, defense counsel has also filed a motion to withdraw as counsel. So I'm going to ask you a few questions from the petition that was filed — the motion that was filed by the Public Defender's Office.

of the relationship between Mr. Ferrari — and I wouldn't say just between myself but probably with the Defender Association as a whole safe for one attorney that he feels he had a brief decent interaction with and I believe that was only for one court date where not much of anything happened.

The final point that I'm going to make is that Mr. Ferrari has placed the Defender Association and myself in a position where the only way I can defend ourselves against his accusations, which, you know, we would defend ourselves against — at the current moment he is still my client. I'm not going to — I'm not going to betray my client's confidence or say anything that would get someone to raise my former client at this time in any type of, you know, hot water or anything like that. I think that relationship is sacrosanct, but he is putting us in a position where we may have to defend ourselves and I think at that point — because as an organization, you know, it wouldn't just be me, it would be the organization who would possibly be defending me or defending myself, you know, we can't



represent someone who we either are or may have to or has made threats where we have to defend ourselves against them. I think that's an inherent conflict within itself.

Given the fact that we are still in a pretrial statue that this will not delay trial at all, I believe that removal at this time is probably the most expeditious way to get these cases resolved. I believe that it would be best for Mr. Ferrari and for the Court and for the Commonwealth because I don't think these issues are going to be going anywhere any time soon, so with that I would ask Your Honor to permit us to withdraw.

I believe at this point most of Mr. Ferrari's issues have been dealt with. Your Honor, we saw Your Honor's order yesterday that the mental health exam for now has been canceled. We ask that Mr. Ferrari knows we had asked to be removed before any request was made. I believe it was Mr. Corrigan who had brought up the fact that I had suggested that might be my request and that's how it got ordered. Your Honor had asked for an order to be sent to Your Honor to have signed. I never



sent that order because I wanted the counsel issue to be resolved before any mental health exam was ordered so that was maybe an administrative error or an error on our part, but I believe it was Mr. Corrigan who brought that up, but I did inform the Court that would be my request if we were still counsel, but I did not send any order to your house, which is how I believe that was to be dealt with, because I wanted the status of counsel to be resolved before any request for a mental health exam was to be made.

MR. FERRARI: With that being said —

MR. JOHNSON: Mr. Ferrari, you really need to let me finish.

MR. FERRARI: Okay.

MR. JOHNSON: So with that, I don't think this is a position where the Defender Association can continue to represent and, like I said, I think it's best for everyone for Mr. Ferrari to either represent himself or have new counsel. I don't believe Mr. Ferrari would like the Defender Association to be his backup counsel should he go pro se. Again, there's a large court-appointed list that the Court can



draw on with many qualified attorneys who can serve as either backup or lead counsel in this matter.

THE COURT: All right. Well, thank you. I certainly understand your position.

Now, Mr. Ferrari, I just want to ask you maybe ten questions having to do with labor of counsel. There's a whole section under the Rule of Criminal Procedure regarding counsel. You may be familiar with it. So I'll just ask you some of these. First of all, you have four basic choices. You could — Number 1, you have the right to hire the attorney of your choice and if you cannot afford counsel, one would be appointed for you free of charge provided that you're eligible. Well, you have shown that you are eligible and you do have Public Defender representation, but you, of course, have the right to be represented by counsel. You don't have the choice of whom you're going to determine is going to represent you from — as a free lawyer, in other words, you can choose who you wish to as far as hiring an attorney, but as far as free lawyer is concerned, you are entitled to a free lawyer and, of course,

MR. CORRIGAN: Your Honor, in that case he's also charged with terroristic threats, stalking, and harassment.

THE COURT: All right. And will you be filing an amendment motion with regard to the information — the charging document with regard to that to correct the specific section of the Crimes Code, Mr. Corrigan?

MR. CORRIGAN: Generally speaking, in here we just amend orally. I'm just doing that now just to put Mr. Ferrari on notice. It's simply a typographical error. It's the same section. It's just 4953.1, instead of 4953. It's just retaliation against a different person. 4953 is retaliation against victims or witnesses. If Your Honor would like me to put it in writing, I will, but, of course, we'd have to have a preliminary hearing for that and if the Court finds when we do have the preliminary hearing that the elements of those offenses are made out, then at that point Bills of Information will be created, a CP number will be given, and we will proceed however we proceed at that point. But if Your Honor wants me to put in writing the amendment, I'll



certainly do it.

WENDY DANIELS: I can take care of the amendment today. Your Honor, if that's okay with you, I can take care of the amendment.

THE COURT: Well, that would be great. You'll write on the — you write the amendment. That amendment is granted at this time.

MR. CORRIGAN: Thank you, Your Honor.

THE COURT: And thank you for that information. And you understand the permissible sentences and the fines for each of these offenses, Mr. Ferrari?

MR. FERRARI: The ones I'm accused of?

THE COURT: Yes.

MR. FERRARI: Yes, sir.

THE COURT: Okay. Most importantly, you will be waiving the right — if you waive the right to counsel, you will still be bound by all the normal rules of procedure that counsel would be familiar with, in other words, you'd still have to play by the same rules that anyone else would be playing by whether they have an attorney who understands all of this or they don't have an attorney who doesn't understand these rules and regulations? You



understand that?

MR. FERRARI: Absolutely. Yes, sir.

THE COURT: And you understand that there are possible defenses to these charges that by having counsel, counsel might be aware of those and would be aware of those, and if the defenses are not raised at trial by you, they may be lost permanently, just like it would be a waiver if counsel does not raise those issues? You understand that?

MR. FERRARI: Yes, sir, Your Honor. I've tried to have my previous counsel raise those issues with the DA and not one of them has done that, so I have no choice but to go pro se. None of them will stand up to the DA and fight for my case with the facts.

THE COURT: And you also understand that there are additional defenses and there are rights, of course, that you have to be aware of and that an attorney would be aware of and all these rights and all those defenses would be lost permanently, and if errors occurred and are not timely objected to by you, as it would be by an attorney, if they're not objected to when the error is made, those errors that



normally would be able to be included in your defense will be lost permanently? You understand all that?

MR. FERRARI: Yes, sir.

THE COURT: Okay. Is there anything else, Mr. Corrigan, that you'd like to note or ask Mr. Ferrari with regard to this waiver of counsel?

MR. CORRIGAN: Well, Your Honor, first of all, I would just like to say that what we're dealing with here are those two MC numbers that I talked about, 1972-2026 and the number from 2025. We're not dealing with 640 of 2026. That's a PFA violation in Family Court. It's going to be tried in Family Court, held in Family Court. That's nothing to do with these cases at all. Up to this point Mr. Ferrari has been filing what we call pro se correspondence because he's represented and we cannot attack the representation unless and until Your Honor decides he can represent himself, and that if he is filing motions going forward, he should either file them for the two MC numbers that we talked about for the recording case and for the ethnic intimidation and retaliation case and

not for the PFA case, which has nothing to do with either one of these.
MR. FERRARI: Objection. All three are completely related. And I'm looking to combine the three cases. On January 13, the DA filed a motion to name Judge Dan Sulman as a material witness, which has never happened in Philadelphia County before —
MR. CORRIGAN: It didn't happen then and he don't understand any of the things that —
THE COURT: Excuse me. The third case you're speaking of is 640 of 2026?
MR. CORRIGAN: Asking to disqualify Judge Tiffany Palmer —
THE COURT: I have no authority over that case. That case is not before me at this time, so we will go from there. We'll see what happens.
MR. FERRARI: Thank you, Your Honor.
MR. CORRIGAN: Your Honor, I might just help and correct some of Mr. Ferrari's misunderstanding of what's happened. He's been filing all these motions constantly claiming that one of the witnesses and the victim in the second case is quote, unquote a material



witness —
THE COURT: I think it would be best that we not get into any of that at this point. At this point unless there's anything else that should be stated by Mr. Johnson, perhaps, nothing —
MR. JOHNSON: Your Honor, I have nothing at this time. I would just ask for our motion to be granted.
THE COURT: Then I will enter the following order.
And now this — I believe it's the 21st today, isn't it?
MR. CORRIGAN: Yes.
THE COURT: — the 21st day of May, it is hereby ordered after a hearing in this matter conducted that the Philadelphia Defender Association and Brian Johnson, assistant defense counsel, and their request to withdraw as counsel is granted. It is further ordered that defendant Chad Ferrari's motion to waive counsel has also been granted and that this granting of — that this waiver of counsel is freely, knowingly, and voluntarily, and intelligently given by defendant and defendant



may proceed with legal counsel as standby counsel. We will appoint standby counsel and whether or not you utilize a standby counsel is entirely up to you, Mr. Ferrari.
So that takes care of the first two matters and I think —
MR. CORRIGAN: Just so — just so I understand and it's clear, Your Honor is granting the motion filed by Mr. Johnson and the Defender Association?
THE COURT: Yes.
MR. CORRIGAN: So there's no need to reach the motion filed by Mr. Ferrari then?
THE COURT: Well, I don't know. I put them together.
MR. CORRIGAN: The motion filed by Mr. Ferrari contains a number of shall we say factual inaccuracies and irrelevancies that I don't think we need to get into, so if the judge is going to grant the motion, I ask that you grant the Defender motion and then you don't need to reach Mr. Ferrari's motion.
THE COURT: I granted both motions and they're combined in the same order and we'll deal with some other matters that are also in



need of resolution at this time. Now, you have asked that we vacate the mental health order that we entered and we already did that. You also asked for consolidation. We have no authority to do that and that's been covered by the previous order and your disqualification request of Judge Palmer is also one that would be denied. This Court not having the authority to do so.
So now, we can deal with your request for — let me just look over here and see exactly what it says — request for independent prosecutorial review under Section 71 P.S. 732. Now, what is it that you're asking for in this case?
MR. FERRARI: Thank you, Your Honor. I believe that the District Attorney of Philadelphia is compromised and that's why they've reached out for an outside county judge and since then they've been withholding any and all discovery, my cell phone from last August. They will not answer a single email or communicate with me. And I'm asking for Judge Dave Sunday to take over the prosecution. One of the Judicial Conduct Board complaints I

filed was against Eleni Papademetriou from February 20, 2024. On transcript she mentioned that she spoke or saw my wife's attorney that week and said to say hello and that her granddaughter was born and Ms. Papademetriou's daughter and son-in-law are both in the same division in the district attorney's office that's prosecuting my case right now and there seems to be that Larry Krasner is going on line and timing posts directly to my arrest. On January 10, he posted eff around and find out the very minute that I was arrested and in the paddy wagon I posted a video of my landlord trying to sneak into my house and then shortly thereafter the district attorney filed a motion to name Judge Dan Sulman as a material witness. Judge Dan Sulman was in cahoots in talks with this former Temple Law classmate Richard Williamson my landlord. They were working together to destabilize my living situation and I have that all written out and I have that ready to present when need be.

THE COURT: Excuse me. Mr. Johnson, as far as I'm concerned, I don't know if there's any reason you need to continue to be involved



in this case. You do not need to be present, but you certainly may continue to be present if you wish to.

MR. JOHNSON: Thank you. I was just waiting for a moment to ask for leave. I don't want to butt in. So may I be excused?

THE COURT: Yes.

ANEESHA SHABAZZ: I'm sorry, Your Honor. This is Aneesha from the mental health court clinic, and since this order is also vacated, may I also be excused?

THE COURT: Sure.

ANEESHA SHABAZZ: Thank you.

THE COURT: Okay. Thank you.

Mr. Corrigan, is there any response to -- have you filed a response to the motion, by the way?

MR. FERRARI: Zero.

MR. CORRIGAN: No, because there's no hybrid representation and he was represented by the Defender until he wasn't and so the -- even the motions that Your Honor has ruled on, a lot of them are moot. No, I haven't filed any response. The idea the grandiose notion that the DA has any idea who Mr. Ferrari is and is



timing his social media posts to coincide with events in Mr. Ferrari's cases does in my mind call into question his mental stability and the idea that because somebody went to Temple Law School or because somebody was a member of the inner court -- we have many of those in Philadelphia -- that somehow everybody is engaged in a conspiracy against him and that is what a lot of these motions have been -- the vast majority of the motions he filed I've looked at and I've not written any responses to them and a lot of them are fairly a little incoherent and clearly constructed using AI and ChatGPT and sites to cases that don't exist because AI tells you things that you want to hear and not things that are actually real, so we're precluded from using them, for example, and --

THE COURT: How about -- excuse me.

MR. CORRIGAN: So I have not responded to any of these because he was not representing himself. And also I would ask that prior -- every day it's really given this, the time that's gone by the rule is excludable because all of the delay has been caused by Mr. Ferrari



refusing to go forward with the attorneys that were appointed for him, and as an indigent individual, as Your Honor has pointed out, he does not get to pick who his lawyer is.

MR. FERRARI: I was assaulted by the last attorney, Mr. Corrigan. That was incorrect.

THE COURT: Mr. Ferrari, could you just tell us what you mean by defendant's motion for a written finding of facts with cross-docket evidentiary value?

MR. FERRARI: I never received your order, Your Honor, from 4-24. I believe that the DA's office was hiding it up until yesterday and holding it off. You filed that on 4-24 and it was never in the docket -- in the Philadelphia docket, so when I filed my March 30 motion to vacate the MHE, I filed a motion to recuse Your Honor, because on April 27 I had an MHE the very next day and nobody answered that vacate as far as I was concerned. Then Mr. Corrigan tried to have me -- Mr. Corrigan tried to have me have an MHE on April 28 and then he again -- after Mr. Shabazz said that there was no availability, Mr. Corrigan tried to have me have another MHE today when your motion on

April 24 clearly said that it vacated — that you vacated that MHE. There has not been one instance of anything that I've done that has warranted an MHE and that's why I did that.

THE COURT: Are you willing to withdraw this motion at this time?

MR. FERRARI: Which one are we talking about?

THE COURT: The motion for written findings of fact — entry of written findings of fact with cross-docket administrative referral to President Judge of Philadelphia Court of Common Pleas advanced notice coordination —

MR. FERRARI: I filed that, Your Honor, because I was looking to get oversight into my family case where I'm having very similar situations. So this particular motion, Your Honor, I read a little bit about your background. I knew that you were from outside the area and I filed that to see if you could not only help me with the criminal case, but if you could also be an assistance overseeing the integrity of the Family Court dockets, which have been an absolute disaster.



THE COURT: Will you withdraw this at this time, if not, I'll just deny it?

MR. FERRARI: Yes. I will withdraw it.

MR. CORRIGAN: Your Honor, in fairness to Mr. Ferrari — and I want to be as fair as I possibly can — the order that he's talking about, which clearly shows that —

THE COURT: I'd rather not go into it. I'm sorry. I just want to finish this up today.

MR. CORRIGAN: I just want to say, Your Honor, I didn't see it until yesterday either.

THE COURT: Okay.

MR. CORRIGAN: And it does not appear in the Philadelphia dockets. I don't know why. I found it in e-file, which I don't think Mr. Ferrari would have access to, and I only found it yesterday, so it's not — I think that he is not being difficult. He really didn't see that because I didn't see it either.

THE COURT: Thank you for that.

MR. FERRARI: Can we please, Your Honor, implement a situation where moving forward when you file something that there's maybe a doublecheck in place on the Philadelphia side



to make sure we get that, because they were trying to push a MHE on me now twice after you mentioned vacate several days before.

MR. CORRIGAN: Your Honor, again — and I don't want to keep doing this, but Mr. Ferrari doesn't understand how this works at all and Your Honor is from a different jurisdiction. All of the emails that Mr. Ferrari forwarded about the mental health exam that was ordered were the people in the mental health clinic basically saying — I wasn't involved in it at all. I just saw the orders after the fact. Well, you had an order for a hearing on this day. Thanks for telling us you can't come. We will arrange it for a different day, in fact, we'll put it on 5-21 because you're supposed to be in court anyway. They didn't understand this was a virtual hearing. So the DA had nothing to do with that. It was just that your office —

THE COURT: I think the only remaining matter that is before me is your Rule 600 speedy trial right motion and I think that this is something for the future because you say the motion does not yet seek dismissal. It seeks



three things. Entry of documented clock finding as to which delay periods are Commonwealth attributable and the Court standing order that no further delay period is excludable without this Court's affirmation. So would you agree this is really not before me at this time? You're always free as defense counsel, yourself, pro se to file your speedy trial motion, at which time it will be given the attention it needs to be given; am I correct on that?

MR. FERRARI: Yes, sir.

THE COURT: So you'll withdraw this as well?

MR. FERRARI: That one, yes, sir.

THE COURT: Without prejudice. I mean, you're free to file either one of these at a future time.

MR. FERRARI: It makes complete sense why you suggested that.

THE COURT: Okay. All right.

MR. FERRARI: How about is the Brady one still pending, the Brady violation?

THE COURT: I'm not sure what that — I didn't remember seeing anything about that. So

I'm ready to wrap this up by dictating three orders — three orders or one order that combines all three, which I will enter, and now this 21st day of May of 2026, it is further ordered — people are trying to reach me, so —

(Off the record.)

(Pause.)

MR. FERRARI: They still think you're retired, Your Honor.

THE COURT: Okay. May order — request for independent prosecutorial review and structured prosecutorial conflict is — and the defendant's motion for written findings of facts with — a written findings of fact and entry of — excuse me — and administrative referral to President Judge of Philadelphia and advanced notice coordination, as well as the third motion for a Rule 600 speedy trial motion are all withdrawn at this time without prejudice to refile should the issue become ripe and I believe that will conclude this entire matter at this time and now what we have to do is we have to have a status in order to determine — make sure that we have standby counsel appointed, which that will take care of



that and also to deal with whatever the next issue is — is the next issue you believe, Mr. Corrigan, the preliminary hearing, perhaps?

MR. CORRIGAN: We just ask that we do it this way around. That we give dates to both of these matters —

THE COURT: I'm sorry.

MR. CORRIGAN: That we give dates for hearings to both the preliminary hearing and the trial for recording. The trial for recording is older, although my position is that all of the time between — for all of this is excludable. He was under ARD consideration. His lawyer dropped him, he got a new lawyer, and he dropped that lawyer, so all of the delay will be attributable to the defense, so we can do either one first. I guess it's up to the Court, perhaps, Mr. Ferrari which one would he like to do first? Would he like to do the preliminary hearing matter or the recording trial matter? I don't know if you want to list it at the same time —

THE COURT: Recording trial matter, you're talking about — oh, you're talking about a preliminary hearing for both?



MR. CORRIGAN: No.

THE COURT: Okay.

MR. CORRIGAN: The recording and court matter is simply a trial. All discovery has been provided to the Public Defender and I would just ask that the Public Defender pass the discovery to Mr. Ferrari.

MR. FERRARI: I haven't received the discovery yet.

MR. CORRIGAN: No, your lawyer gets the discovery. And when I talk to the judge, you don't talk to the judge. I don't talk to you, you don't talk to me when we're in front of the judge. When we're not in front of the judge, you may.

But I would ask the Court order the Defender to provide Mr. Ferrari the complete discovery for 15343 of 2025, which is the recording —

THE COURT: Defense counsel? You want the defendant —

MR. CORRIGAN: The Defender Association to provide the discovery to Mr. Ferrari.

MR. FERRARI: He told me today that he did not have that. So you're saying, Your Honor,



Mr. Corrigan is saying that the Defender does have discovery on this?

THE COURT: I don't know. I mean, I would hope that they would have discovery by this time.

MR. CORRIGAN: Yes, they do, but I will — look, I don't need to explain this. You're your own lawyer. For the preliminary hearing, again I'd ask the Defender Association to pass the PARS. That's a preliminary hearing. That's all he gets.

THE COURT: Okay. Good point. So we're talking about two things. The preliminary hearing is, of course, as you know, it's before the judge of initial jurisdiction, myself, Magister of District Judge out of the counties, Municipal Court Judge in Philadelphia County, to determine if there's enough evidence to hold you. Is there likely — is there enough evidence to establish the offenses and is there a likelihood that you committed those offenses. It's a probable cause hearing. So we can schedule that. We will schedule that.

The other is a trial. It will be a trial conducted and that's on the case for the

# EXHIBIT G

**Email of Brian Johnson, Esq. (Defender Association) to Plaintiff, April 15, 2026, 8:55 p.m.**

*Email as received; reproduced in full*

**Exhibit G — Brian Johnson to Plaintiff — April 15, 2026, 8:55 p.m. EDT**

**From:** Brian Johnson <BJohnson@philadefender.org>
**To:** CHAD FERRARI <chadferrari@me.com>
**Date:** Wed, 15 Apr 2026 20:55:00 -0400 [= Wednesday, April 15, 2026, 8:55 PM EDT]
**Subject:** Case Update

Good Evening Mr. Ferrari:

I am writing to update you on the status of MC-51-CR-1972-2026 and MC-51-CR-15343-2025. As we discussed when I last saw you in family court, I requested that the Defender Association be removed as counsel from these matters at the 3/2/26 status conference, which was not a recorded hearing. I also mentioned to the judge that I would be requesting a competency exam, which he requested a written order for. After our discussion, I saw that there was an order entered for you to have a competency examination.

The Judge requested that I submit a written motion to be removed as counsel. I will be filing that motion and will send you a copy of it via email once filed. In that motion, you will see that I am both asking to be withdrawn as counsel and supporting your pro se motion to have us removed.

Please let me know if you have any questions - I will be more than happy to answer them. If you choose to respond, please do not attach any other parties (i.e., any Assistant District Attorney, the Mayor, etc. . ..) as that breaks attorney/client privilege. While I am well aware that you do not want the Defender Association as counsel, we are still the counsel of record as of right now, and privilege does exist.

Thank you,

BRIAN JOHNSON, ESQUIRE
ASSISTANT DEFENDER
DEFENDER ASSOCIATION of PHILADELPHIA
PHONE: (267) 765-6327 | FAX: (267) 765-6968
1441 SANSOM STREET | PHILADELPHIA, PA | 19102
BJOHNSON@PHILADEFENDER.ORG

*[Reproduced verbatim from the native email; the native file will be produced on request.]*

# EXHIBIT H

**Email of Aneesha Shabazz, Mental Health Clinic Supervisor, to Plaintiff, cc ADA Vincent Corrigan, April 28, 2026, 12:37 p.m., scheduling evaluation for May 21, 2026 — four days after the April 24 vacatur**

*Email as received; headers reproduced*

**Exhibit H — Shabazz to Plaintiff, cc Corrigan — April 28, 2026, 12:37 p.m. EDT (header 16:37 UTC)**

**From:** "Shabazz, Aneesha" <aneesha.shabazz@courts.phila.gov>
**To:** "Verdier, Cheryl" <cheryl.verdier@courts.phila.gov>, CHAD FERRARI <chadferrari@me.com>, cheryl.verdier@phila.gov
**Cc:** THE Ferrari Tribunal <ferraritribunal@gmail.com>, vincent.corrigan@phila.gov, "Carassai, Christine" <Christine.Carassai@courts.phila.gov>, "Northeran, Traci" <Traci.Northeran@courts.phila.gov>
**Date:** Tue, 28 Apr 2026 16:37:32 +0000 [= Tuesday, April 28, 2026, 12:37 PM EDT]
**Subject:** RE: Confirming 4/28/26 8:45 AM Call to Reschedule MHE — Family Medical Emergency — Chad Ferrari, PP #1255302

Good afternoon Mr. Ferrari

My name is Aneesha Shabazz, Mental Health Clinic Supervisor. Ms. Verdier forwarded me your email.

Thank you for reaching out to the clinic this morning. Cancelling your appointment ahead of time allowed us to add an emergency evaluation to our schedule. I want to let you know that I scheduled you for evaluation on the same day as your court date, May 21, 2026. We see clients on a first come first basis starting at 11AM. Please report to your courtroom at your scheduled time and provide your attorney with the necessary medical documentation as Ms. Northeran advised (or bring copies in case you are representing yourself).

Although this clinic will NOT issue a bench warrant for not appearing today we do not have the authority to tell the Judiciary what to do. However, I will advise His Honor that you contacted our office and you have an appointment for evaluation scheduled.

Lastly, I removed the Chief of Probation, Chief Palmer-Briscoe as she will not be able to assist with rescheduling this appointment. I added Director Carassai in case you need to follow up with my superior in the future. I will also email Honorable Specher as he ordered the the evaluation. I will send the email closer to the listing date, which is our standard practice.

I hope everything went well with your mother today! Have a great day and we will see you on the 21st.

Aneesha

*[Reproduced verbatim from the native email; the native file will be produced on request.]*

# EXHIBIT I

## N.T. October 22, 2025, Ferrari v. Ferrari, D-24-118413 (Litwin, J.), Hearing Vol. 1, CRS Catalog ID 25101099 (Gary Copestake, O.C.R.) — excerpts at 11:10–25, 12:1–19, 36:13–25, 37:1–13

*Typed transcription of the certified transcript (CRS 25101099), verbatim with page and line numbers; not a facsimile; certified pages available on request*

**Exhibit I — N.T. 10/22/25 (typed transcription of excerpts)**

**[Page 11]**
[10] MR. FERRARI: I've also --
[11] THE COURT: All right.
[12] MR. FERRARI: -- e-mailed you a nine
[13] minute tape to Ms. Diane regarding my criminal
[14] defense attorney telling me that there is no due
[15] process.
[16] THE COURT: All right. Sir, hold on.
[17] MR. FERRARI: The law. The law does
[18] not matter.
[19] THE COURT: Hold on one second. No.
[20] MR. FERRARI: And Judge Sulman tried to
[21] --
[22] THE COURT: Hold on, please.
[23] MR. FERRARI: -- throw me in jail for
[24] months.
[25] THE COURT: Please. Please. Hold on.
**[Page 12]**
[1] Any communication between you and an attorney is
[2] attorney/client privilege. And this Court is not
[3] going to listen to it, unless you waive the
[4] privilege. And unless it is relevant to this
[5] proceeding.
[6] MR. FERRARI: Yes, Your Honor.
[7] THE COURT: And --
[8] MR. FERRARI: It is relevant.
[9] THE COURT: -- and.
[10] MR. FERRARI: It is 100 percent
[11] relevant.
[12] THE COURT: And.
[13] MR. FERRARI: And, Your Honor, I 100
[14] percent waive it. It is absolutely horrific,
[15] what's on that tape.
[16] THE COURT: All right. So I am. I am
[17] going to deal with the issue that is in front of
[18] me today. And that is a motion to compel
[19] discovery in a divorce case.
* * *
**[Page 36]**
[13] MR. FERRARI: -- somewhere between me
[14] sharing that with you, right before we convened -
[15] -
[16] THE COURT: Mhm.
[17] MR. FERRARI: -- and twenty minutes
[18] later, I got a text message from my -- from the
[19] top criminal attorney, defense attorney in
[20] Philly, Dr. Zak Goldstein. And he said, "Because
[21] of your secret recording, I am pulling out of

[22] your Court case. Good luck in Court tomorrow."
[23] How did? How did Zak Goldstein find
[24] out about this thing that's supposed to be
[25] confidential and secret, Michelle?

**[Page 37]**

[1] THE COURT: Well this is not your
[2] opportunity, number one, to ask questions. ...
[10] MR. FERRARI: So we're not going to
[11] talk about Zak Goldstein firing me in-between our
[12] hearing?
[13] THE COURT: We are not.

# EXHIBIT J

## Email of Joseph Kearney, Office of Court Reporters, Digital Recorders, & Interpreters, to Plaintiff, March 3, 2026, 2:11 p.m. EST, re Room 406 on March 2, 2026 (with Plaintiff's 1:36 p.m. inquiry)

*Email thread as received (forwarded to Plaintiff's archive April 27, 2026); reproduced verbatim*

**Exhibit J — Joseph Kearney to Plaintiff — March 3, 2026, 2:11 p.m. EST**

**From:** "Kearney, Joseph" <Joseph.Kearney@courts.phila.gov>
**To:** CHAD FERRARI <chadferrari@me.com>
**Date:** Tue, 3 Mar 2026 14:11:00 -0500 [= Tuesday, March 3, 2026, 3:11 PM EDT]
**Subject:** RE: Yo brother room 406 thx

Hey Chad,
I didn't see any audio files or logs yesterday in 406. I checked the docket, and it says it was an out of county Judge, and it was handled on Microsoft teams.
We definitely don't handle anything on teams, so I'm not sure if an actual record was taken down for that.

Joseph Kearney.
Office of Court Reporters, Digital Recorders, & Interpreters.
100 South Broad Street, Second Floor. Philadelphia, PA. 19110.
Email: Joseph.Kearney@courts.phila.gov & Transcripts@courts.phila.gov.
Phone: 215-683-8000.

From: CHAD FERRARI <chadferrari@me.com>
Sent: Tuesday, March 3, 2026 1:36 PM
To: Kearney, Joseph <Joseph.Kearney@courts.phila.gov>
Subject: Yo brother room 406 thx

Any chance you can pull this shady transcript from yesterday? Top two cases combined on that there. Thx

Chad Ferrari
(215) 483-1985